**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,               :
                                :
      Plaintiff              :
                                :
  v.                            :   No. 1:CV-00-0315
                                :
KENNETH D. KYLER, individually, and :   (Judge Rambo)
in his official capacity, et al., :
                                :   (Magistrate Judge Smyser)
      Defendants             :

FILED
HARRISBURG
MAR 20 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO PERMIT THE PLAINTIFF TO COMMUNICATE WITH AN INMATE AT CAMP HILL PRISON**

**PROCEDURAL HISTORY OF THE CASE AND STATEMENT OF FACTS**

This is a civil rights action brought by an inmate formerly housed at the State Correctional Institution at Camp Hill. Following the close of discovery, the defendants moved for summary judgment and subsequently filed a brief and documents in support of the motion. Plaintiff has not yet responded to the motion, and has been granted an enlargement of time to submit his brief until May 4, 2001.

Plaintiff has filed a motion for an order requiring the defendants to permit the plaintiff to communicate with an inmate at SCI-Camp Hill, Norman Johnson, to obtain an affidavit from him. Defendants oppose the motion as premature.

**STATEMENT OF QUESTION INVOLVED**

Should the motion seeking an order directing defendants to permit plaintiff to communicate with another inmate be denied where plaintiff has failed to show that he is unable to communicate with this inmate?

## ARGUMENT

## THE MOTION SEEKING AN ORDER DIRECTING DEFENDANTS TO PERMIT PLAINTIFF TO COMMUNICATE WITH ANOTHER INMATE SHOULD BE DENIED BECAUSE PLAINTIFF HAS FAILED TO SHOW THAT HE IS UNABLE TO COMMUNICATE WITH THIS INMATE.

The Department of Corrections does not absolutely prohibit communication between inmates. Department of Corrections Administrative Directive 803 permits correspondence upon special approval of the superintendent. Likewise, upon approval by the superintendent, an inmate may make a telephone call to another inmate. Administrative Directive 818. Relevant portions of these directives are attached hereto.

As a means of preventing inmates of different institutions from planning or carrying out concerted action to disrupt correctional institutions, such inmates are generally prohibited from communicating. The Department of Corrections, however, recognizes certain exceptions where inmates must communicate to pursue legal actions. In that case, the inmate should contact his counselor and explain the need for communication. The counselor will then forward the request to the superintendent. Upon approval of the superintendent, the inmates may correspond. Communication, where permitted, is usually limited to correspondence. In an emergency situation, a phone call may be permitted. Any correspondence, of course, must be limited to matters involving the legal proceeding.

Before the plaintiff asks this Court to intervene, he should follow Department procedure to obtain permission to correspond with another inmate. Until that procedure is exhausted, his motion is premature. It should, therefore, be denied.

2

## CONCLUSION

For the foregoing reasons, the motion to direct defendants to allow the plaintiff to communicate with another inmate should be denied.

                                      **Respectfully submitted,**

                                      **D. MICHAEL FISHER**
                                      Attorney General

BY: _____
          **MICHAEL L. HARVEY**
          Senior Deputy Attorney General

          **SUSAN J. FORNEY**
          Chief Deputy Attorney General
          Chief, Litigation Section

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 783-6896
FAX: (717) 772-4526

DATE: March 20, 2001

3



| | |
|---|---|
| | **POLICY STATEMENT**<br>Commonwealth of Pennsylvania • Department of Corrections |

| Policy Subject:<br>INMATE MAIL AND INCOMING PUBLICATIONS | Policy No.:<br>DC-ADM 803 |
|---|---|
| **Date of Issue:**<br>August 14, 1998 | **Authority:**<br>Martin F. Horn<br>Secretary | **Effective Date:**<br>October 1, 1998 |

## I. AUTHORITY

The authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of the Department of Corrections to establish policy and procedures that govern inmate mail privileges and incoming publications.[1]

## III. APPLICABILITY

This policy applies to all inmates and employees, volunteers, and contract vendors who reside or work in facilities under the jurisdiction of the Pennsylvania Department of Corrections (DOC) with the exception of the Bureau of Community Corrections.

## IV. DEFINITIONS

A. **Approved Inmate Name**

The committed name and/or a name change that is in accordance with Department of Corrections Policy, Vol. 11.5.1, Chapter (2), Section (III) (K), entitled "Inmates Who Regularly Use Names Different from the Name on the Commitment Form".

B. **Bulk Mail**

Advertising materials, catalogs and fliers mailed at less than first or second class mail rates.

C. **CDCC/MDCC**

Camp Hill Diagnostic and Classification Center; Muncy Diagnostic and Classification Center.

---

[1] ACA Standard 1-ABC-5D-01; 1-ABC-5D-04; 2-CO-5D-01

DC-ADM 803

    P. **Publications**

        Publications include newspapers, magazines, hard or paperback books, newsletters, pamphlets or any other written or printed material that is distributed for the purpose of conveying information.

    Q. **Reasonable Quantity**

        A reasonable quantity will not exceed the total storage space requirement permitted by the facility. This may include any cell storage cabinets, cell shelves, footlockers and/or record boxes. This space is not to exceed 9.8 cubic feet of storage space or the equivalent of one (1) footlocker and two (2) record boxes.

    R. **Undeliverable Mail**

        Mail that cannot be identified for delivery due to incomplete or incorrect information.

V. **POLICY**

It is the written policy of the Department of Corrections to provide inmates access to communication with members of society at large through the established public mail system and to govern the inspection of mail, determine the types of publications allowed, and how they will be reviewed.[3] Restriction to access shall be related directly to institutional order and security and obscenity criterion.[4]

VI. **PROCEDURES**

    A. **Mail Privileges**

        1. Inmates shall be permitted to correspond with the general public, their attorney, and public officials.

        2. There shall be no limit to the number of correspondents to whom an inmate may send or from whom an inmate may receive mail.[5]

        3. Inmates are prohibited from:

            a. Corresponding with inmates, former inmates, parolees, probationers, co-defendants, or victims of the inmates' criminal acts except with the written approval of the Superintendent;

            b. Corresponding with current or former employees, current or former volunteers, or current or former contract employees except with the written approval of the Superintendent;

            c. Sending or receiving correspondence containing threatening or obscene materials, as well as correspondence containing criminal solicitations or furthering a criminal plan or misconduct offense;

---

3 ACA Standard 1-ABC-5D-04; 1-ABC-5D-07
4 ACA Standard ACI 3-4429; ACI 3-4432; 1-ABC-5D-02
5 ACA Standard ACI 3-4430

DC-ADM 803

    d.    Using the institution address to fraudulently identify him/herself as an employee, agent or representative of the institution. For example:

> Theodore Smith, Paralegal
> SCI Mahanoy
> 301 Morea Road
> Frackville, PA 17932

    e.    Writing to individuals who have stated in writing that they do no wish to receive correspondence from the inmate. These individuals must have written to the Department of Corrections, Office of Victim Services or to the institution in which the inmate is housed. This restriction is not to be interpreted to infringe on the right of inmates to correspond with public officials with regard to the performance of their official duty;

    f.    Corresponding with prohibited parties directed through a third party.

    g.    Sending or receiving battery-operated greeting cards;

    h.    Sending or receiving "bill-me-later" or free gift transactions.

4.    Each inmate will be permitted, without cost, to mail ten (10) one-ounce, first-class letters per month.[6]

5.    There will be no limit on the number of letters that an inmate may send at his/her own expense.[7]

6.    No obscene material or contraband shall be written or drawn on, or contained in, the mail. Such mail will be opened, returned to the sender, or disposed of at the inmate's expense.

7.    Outgoing, non-privileged correspondence may be opened and inspected if there is reason to believe that the security of the institution may be impaired or this directive is being violated.[8]

8.    All outgoing mail shall include on the envelope the full approved inmate name, DOC inmate number, and return address printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. Envelopes not bearing this information will be opened and returned to the inmate if identified.

9.    All outgoing correspondence will be stamped **"Inmate Mail - PA. DEPT. OF CORRECTIONS"**.

10.    Inmates shall seal and place all outgoing correspondence in the collection boxes provided in each housing unit and/or other designated locations.

11.    All inmates are prohibited from receiving nude photographs.

12.    In accordance with 18 Pa. C.S.A. §5903, the Department will not disseminate obscene or explicit sexual materials to inmates under the age of 18. Any inmate under the age of 18 found to be in possession of explicit sexual materials will be subject to a misconduct in accordance with DC-ADM 801, "Inmate Disciplinary and Restricted Housing Procedures".

---

[6] ACA Standard ACI 3-4431; 1-ABC-5D-03
[7] ACA Standard 1-ABC-5D-02
[8] ACA Standard 1-ABC-5D-05



**POLICY STATEMENT**
Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject: AUTOMATED INMATE TELEPHONE SYSTEM | Policy No.: DC-ADM 818 |
|---|---|
| Date of Issue: July 9, 1997 | Authority: [signature] | Effective Date: November 1, 1997 |

## I. AUTHORITY

The authority of the Commissioner of Corrections to direct the operation of the Department of Corrections (DOC) is promulgated by Sections 201, 206, 506 and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended and the Wiretapping and Electronic Surveillance Act, 18 Pa. C.S. §5701 et. seq.

## II. PURPOSE

It is the purpose of this policy to promulgate rules, regulations and procedures governing inmate telephone privileges and the electronic surveillance of inmate phone calls.

## III. APPLICABILITY

This policy applies to all correctional facilities, regional correctional facilities, the motivational boot camp, or any other DOC facility as identified by the DOC.

## IV. DEFINITIONS

A. **Attorney** - For the purpose of this policy, any person licensed to practice law in any state or federal court and who represents an inmate.

B. **Automated Inmate Telephone System (AITS)** - A computer based telephone system which enables the DOC to control the use of inmate telephones.

C. **Call Blocking** - Placing a restriction on a specific number or series of numbers which prohibits calling those numbers.

D. **Called Number Frequency** - The ability to place a limit on the number of times an individual number may be called in any given period of time.

E. **Electronic Surveillance** - The interception, recording, monitoring, and/or divulging of inmate telephone calls.

F. **Facility Authorized Telephone Call** - Telephone calls placed for inmates by staff on the facility's regular telephone system.

DC-ADM 818

G. **Facility Manager** - The superintendent of a facility or regional correctional facility, commander of a motivational boot camp, director of a community corrections center or director of the training academy.

H. **Immediate Family Member** - Immediate family members are defined as spouse, children, parents, grandparents, brothers, sisters or an aunt or uncle with whom the inmate has made his or her home. Such relationships must be verifiable in the inmate's facility records.

I. **Inmate Personal Identification Number (IPIN)** - The unique set of six (6) digits assigned to individual inmates which enables them to access the AITS.

J. **Inmate Telephone Authorization** - A DOC form (DC-8) completed by inmates listing the name, relationship, telephone number and address of individuals with whom the inmate is requesting to maintain telephonic communications.

K. **Inmate Telephone Authorization Supplement** - A DOC form (DC-9) completed by inmates requesting changes to their approved telephone list (DC-8).

L. **Minor** - Any person under 18 years of age.

M. **North American Calling Plan** - The area includes all 50 states, Canada and parts of the Caribbean Islands (area code 809) composed of the Bahamas, Bermuda, Jamaica, Puerto Rico and the Virgin Islands.

N. **Three Way Calling** - A telephone company service which adds a third party with a different telephone number to an existing conversation.

V. **POLICY**

It is the policy of the DOC to grant inmates the ***privilege*** of maintaining legitimate telephone communications with individuals in the community, while at the same time protecting society from harm including but not limited to criminal activity, harassment, threats, and intimidation through the use of the inmate telephone system.

IV. **PROCEDURES**

A. **Scope of System**

The inmate telephones may only be used to place collect calls to a telephone number in the North American Calling Plan.

B. **General Access**

1. Telephone system call frequency and duration are based on Custody Level for general population inmates. Custody Level 4 inmates are permitted a maximum of three fifteen (15) minute calling blocks of time per week. Custody Level 3 inmates are permitted a maximum of one fifteen (15) minute calling block every day. Multiple calls per time block are permitted. Facilities may limit calling frequency below the maximum if the number of inmate telephones available does not allow for sufficient calling blocks of time, and for other operational reasons. Custody Level 2 and 1 inmates are authorized more frequent use of the telephone system consistent with the individual facility's custody level incentive policies and/or practices.

2. Calling schedules will be determined by the facility.

DC-ADM 818

3. Telephone privileges for inmates in Restricted Housing Units (RHU), Special Management Units (SMU), and any other specialized housing unit will be governed by DC-ADM 801, "Inmate Disciplinary and Restricted Housing Procedures" DC-ADM 802, "Administrative Custody Procedures", Bulletins 802-3, 6.5.1-3, "Administration of the Restricted Housing Unit" and local policy governing specialized housing units.

4. Inmate telephone calls are a **privilege** which can be curtailed or rescinded for administrative or disciplinary reasons by the hearing examiner, facility manager or designee.

C. **Restrictions**

1. All calls on the AITS will be initially announced to the called party as originating from a correctional facility and subject to monitoring. Announcements may be made periodically during telephone conversations.

2. Prohibited Inmate Initiated Calls

    a. Any employee of the DOC unless requested in writing by the employee and approved in writing by the facility manager(s).

    b. Any judge, criminal justice official, prosecutor or court administrator without their prior written approval.

    c. Any minor unless approved in writing by a parent or legal guardian.

    d. Any victim of the crime for which the inmate is incarcerated unless requested in writing by the victim and approved by the facility manager.

    e. Any codefendant of the inmate.

    f. Any member of the general public who requests in writing to have their telephone number call blocked.

    g. All toll-free and emergency numbers, e.g., 911.

    h. Any local, county, state or federal correctional facility, or an inmate housed there without the prior written approval of officials at both facilities. Such calls shall be monitored.

    i. Three-way calling and call forwarding.

    j. Calls through multiple long distance carriers.

3. Use of any office telephone or other telephone not specifically designated for inmates is prohibited except as otherwise provided for under this policy.

4. Telephone numbers which the facility has reason to believe are being used to violate DOC/local policy or regulations will be call blocked.

5. Use of the same telephone numbers on multiple IPIN lists at individual facilities is prohibited unless a family relationship can be established. Such exceptions must be approved in writing by the facility manager or designee.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RICHARD JAE, | : |
| Plaintiff | : |
| v. | : No. 1:CV-00-0315 |
| KENNETH D. KYLER, individually, and in his official capacity, et al., | : (Judge Rambo) |
| | : (Magistrate Judge Smyser) |
| Defendants | : |

## CERTIFICATE OF SERVICE

I, Michael L. Harvey, Senior Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing, Defendants' Brief in Opposition to Plaintiff's Motion to Permit the Plaintiff to Communicate with An Inmate at Camp Hill Prison by depositing a copy of the same in the United States Mail, postage prepaid, in Harrisburg, Pa., addressed to the following:

John Richard Jae, BQ-3219
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370-2902

MICHAEL L. HARVEY
SENIOR DEPUTY ATTORNEY GENERAL

DATE: March 20, 2001