ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RICHARD JAE, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 1:CV-00-0315 |
| | : | |
| KENNETH D. KYLER, | : | |
| individually, and in his official | : | (Judge Rambo) |
| capacity, et al., | : | |
| | : | (Magistrate Judge Smyser) |
| Defendants | : | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CORRESPOND WITH ANOTHER INMATE

### INTRODUCTION

This is a civil rights action brought *pro se* by John Richard Jae, an inmate currently incarcerated at the State Correctional Institution at Greene (SCI-Greene). Defendants are various present and former officials at the State Correctional Institution at Camp Hill (SCI-Camp Hill).

The complaint and supplemental complaint allege violations of the First, Eighth and Fourteenth Amendments, as well as state law claims. Plaintiff's constitutional claims are based upon allegations that he had been denied legal materials and religious literature, that he had been denied showers and exercise and that he had been subjected to poor ventilation and excessive heat in his cell

(Complaint ¶¶ 1,10-16, 17-19, 20-21, 23-27; Supplemental Complaint ¶¶ 4-18).

Defendants moved for summary judgment and filed a memorandum and documents in support of their motion in December, 2000. Since then, the Court has extended the time within which plaintiff must oppose defendants' motion three times. Order of December 27, 2000; Order of March 7, 2001; Order of April 17, 2001. Plaintiff's response is presently due as of the date of this memorandum.

Since December, the Court also extended the time for the parties to complete discovery. The discovery period expired on June 11. Order of April 17, 2001.

On February 28, 2001, plaintiff moved the Court to require defendants to permit him to correspond with an inmate incarcerated at SCI-Camp Hill. Defendants opposed the motion as premature because plaintiff had not demonstrated that he had utilized internal prison procedures for obtaining permission to correspond with another inmate. The Court denied plaintiff's motion. Order of April 17, 2001, p. 9.

On June 1, 2001, plaintiff renewed his motion for an order requiring defendant Dragovich and the Superintendent of SCI-Greene to permit him to correspond with Norman Johnston, and inmate at SCI-Camp Hill. Plaintiff alleges

that he sought the Superintendent's permission to correspond with inmate Johnston for the purposes of this action but that permission was denied because inmate Johnston is not a party to this action. Pl. Motion and Brief, p. 4.[1] Plaintiff further contends that he must correspond with inmate Johnston in order to send him an affidavit to be signed and returned for use in responding to defendants' motion for summary judgment. Pl. Motion and Brief, p.3. According to plaintiff, inmate Johnston was housed in the RHU at SCI-Camp Hill at the same time as plaintiff during period relevant to the allegations in the complaint. Plaintiff contends that inmate Johnston has information relevant to the case which will show that defendants are lying in their submissions on summary judgment.

Plaintiff does not offer further information about why inmate Johnston's affidavit is necessary to oppose the motion for summary judgment. He did not attach the affidavit he wishes inmate Johnston to sign nor does he otherwise explain what facts he expects inmate Johnston to dispute. In addition, plaintiff does not contend that the information he seeks from inmate Johnston is otherwise unavailable.

Defendants submit this memorandum in opposition to plaintiff's motion.

---

[1] A true and correct copy of plaintiff's request and the staff response is attached hereto.

3

## ARGUMENT

### I. THE POLICY PROHIBITING INMATES FROM CORRESPONDING WITH EACH OTHER IS REASONABLE AND FURTHERS LEGITIMATE PENOLOGICAL PURPOSES.

The Department of Corrections prohibits communications between inmates incarcerated at different institutions except where the Superintendent of the institution has specifically approved the communication. DC- ADM 803.[2] This regulation is a reasonable means of preventing inmates from different institutions from planning or carrying out concerted action to disrupt the institutions or to facilitate escapes.

Prison regulations which are reasonably related to legitimate penological interests are permitted even where they have some incidental effect on an inmate's constitutional rights. *Turner v. Safely,* 482 U.S. 78, 89-90 (1987). In evaluating the regulation the objective is to determine whether the regulation is reasonable give the penological concerns it furthers and the inmates interest in engaging in constitutionally protected activity. *DeHart v. Horn,* 227 F.3d 47, 59 (3d Cir. 2000).

In this case, the Department of Corrections has a legitimate

---

[2] A true and correct copy of the relevant provisions of DC-ADM 803 are appended to this memorandum.

4

penological reason to restrict communications among inmates. The Department has an interest in preventing inmates from engaging in coordinated activity to disrupt the prisons or to plan escapes.

Nonetheless, the policy does provide for an exception where the inmate demonstrates a clear need to communicate with another inmate. The inmate may seek the permission of the Superintendent to communicate with another inmate by writing or over the telephone. DC-ADM 803, VI A 3 a; DC-ADM 818 IV C 2 h.[3]

In this case, plaintiff alleges he sought permission to communicate with inmate Johnston for the purpose of having him sign an affidavit. He does not allege that he explained what facts he hoped to establish through the affidavit or how those facts were necessary to oppose summary judgment. In short, plaintiff did not demonstrate that his need to communicate with inmate Johnston overcame the Department's general policy prohibiting communications between inmates.

Thus the policy restricting inmate communications is reasonable both on its face and as applied in this case.

---

[3] The relevant excerpt of DC-ADM 818 is appended to this memorandum.

5

## II. PLAINTIFF HAS NOT DEMONSTRATED THAT COMMUNICATION WITH ANOTHER INMATE IS NECESSARY TO PERMIT HIM TO OPPOSE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

In seeking relief from this Court, plaintiff asserts that he requires inmate Johnston's affidavit to oppose defendants' motion for summary judgment, but he does not explain with any specificity why this is so. The most he says is that inmate Johnston has information showing that defendants' submissions on summary judgment are lies. Pl. Motion and Brief, p.2.

Plaintiff does not provide an offer of proof as to the facts he hopes to establish through inmate Johnston's affidavit. Nor does he assert the inmate Johnston is the only source from which these facts can be derived.

In short, plaintiff has not established a right to the relief he seeks from the Court. Accordingly, his motion to compel defendants to permit him to correspond with inmate Johnston should be denied.

6

## **CONCLUSION**

For all of the preceding reasons, the Court should deny plaintiff's motion for leave to correspond with inmate Norman Johnston.

               **Respectfully submitted,**

               **D. MICHAEL FISHER**
               Attorney General

       BY: *[signature]*
               MICHAEL L. HARVEY
               **Senior Deputy Attorney General**

               **SUSAN J. FORNEY**
               **Chief Deputy Attorney General**
               **Chief, Litigation Section**

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 783-6896
FAX: (717) 772-4526

DATE: June 18, 2001

JUN.18.2001  1:42PM                                          NO.131  P.2

"Second Request"

| Form DC-135A | Commonwealth of Pennsylvania |
| --- | --- |
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |
|  | INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| 1. To: (Name and Title of Officer) | 2. Date: |
| --- | --- |
| MR. Harris, Corrections Counselor | 8-01-01 |
| 3. By: (Print Inmate Name and Number) | 4. Counselor's Name |
| MR. John R. Joe, BQ-3219 | MR. Harris |
| *John R. Joe* — Inmate Signature | 5. Unit Manager's Name |
|  | MR. Capozza |
| 6. Work Assignment | 7. Housing Assignment |
| None | HB9 |

8. Subject: State your request completely but briefly. Give details.

As you and I discussed during your weekly rounds in HB Pod on Wednesday May 16, 2001, I need you to answer this Request Form and advise me back in writing as to the date I had requested you to contact Supt. Blaine here & attempt to obtain permission for me to communicate with Inmate Norman Johnston to the SCI-Camp Hill RHU for purposes of my obtaining an affidavit from him for my court case, Joe v. Lyknowski civ. No. 1:CV-01-0315-asb, which he is a witness to the facts acting therein; & the date such was denied by Supt. Blaine & thanks.

---

Mr. Joe

According to DC ADM 803 — Inmates are prohibited from corresponding with inmates, former inmates, etc. except with the written approval of the Facility Manager. This exception is granted when it is a verified co-defendant of the inmate requesting such permission.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
| --- | --- |

Staff Member Name  M. Capozza / M. [signature]   Date 6-1-01



| Policy Subject: | Policy No.: |
|---|---|
| INMATE MAIL AND INCOMING PUBLICATIONS | DC-ADM 803 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| August 14, 1998 | Martin F. Horn, Secretary | October 1, 1998 |

## I. AUTHORITY

The authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of the Department of Corrections to establish policy and procedures that govern inmate mail privileges and incoming publications.[1]

## III. APPLICABILITY

This policy applies to all inmates and employees, volunteers, and contract vendors who reside or work in facilities under the jurisdiction of the Pennsylvania Department of Corrections (DOC) with the exception of the Bureua of Community Corrections.

## IV. DEFINITIONS

### A. Approved Inmate Name

The committed name and/or a name change that is in accordance with Department of Corrections Policy, Vol. 11.5.1, Chapter (2), Section (III) (K), entitled "Inmates Who Regularly Use Names Different from the Name on the Commitment Form".

### B. Bulk Mail

Advertising materials, catalogs and fliers mailed at less than first or second class mail rates.

### C. CDCC/MDCC

Camp Hill Diagnostic and Classification Center; Muncy Diagnostic and Classification Center.

---

[1] ACA Standard 1-ABC-5D-01; 1-ABC-5D-04; 2-CO-5D-01

DC-ADM 803

D. **Child Pornography**

The presentation of sexually explicit behavior involving or depicting children, as in a photograph, intended to arouse sexual excitement.

E. **Contraband**

An item that an inmate is prohibited from possessing or an item that an inmate is permitted to possess, but which has been altered or is being used for something other than its intended purpose.

F. **Explicit Sexual Material**

Pursuant to 18 Pa. C.S.A. §5903 explicit materials include: any book, pamphlet, magazine, printed matter however reproduced, which contains any picture, photograph, drawing or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors. Explicit sexual material also includes that which contains detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sadomasochism abuse and which, taken as a whole, is harmful to minors.

G. **Incoming Publications Review Committee (IPRC)**

A committee of institution personnel, selected by the Superintendent at each facility, that review incoming publications that may contain prohibited topics. See Section VI (F) (4).

H. **Indigent Inmate**

An inmate shall be deemed indigent if the combined balances of his institutional account and any other accounts are $10.00 or less at all times during the thirty (30) days preceding the date on which the inmate submits a request to a person designated by the Superintendent. Any inmate who refuses available work, although he/she is physically able and is not precluded from work by virtue of his/her housing status, is not indigent for the purposes of this policy and is not eligible for free stationery or to anticipate for postage. Inmates who are self-confined may also be considered as refusing available work although physically able as determined by the Program Review Committee (PRC). Any inmate who has funds in another account, which if deposited in his institutional account would bring his balance to more than $10.00, is not eligible. Any inmate who has not made a good faith effort to manage his money so as to be able to pay the necessary costs of litigation himself is not eligible.

I. **Institution Mail Distribution System**

A mail system where mail is delivered to and picked-up from inmates within an institution.

J. **Nude Photographs**

As defined in 18 Pa. C.S.A. §5903, nude means "showing the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or showing the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple". A photograph is an image of a person, place or object made using a camera or device which exposes a photo-sensitive surface to light. For purposes of this policy, pictures in a magazine or other publication of general circulation shall not be considered photographs.

DC-ADM 803

K. **Obscene Material**

The definition of obscene contained in 18 Pa. C.S.A. §5903, is "any material or performance, if:

1. the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

2. the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section (sexual conduct is defined as patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals); and

3. the subject matter as a whole, lacks serious literary, artistic, political, educational or scientific value".

L. **Opaque**

Opaque refers to something dense, impervious to the passage of light. So obscure as to be unintelligible.

M. **Privileged Correspondence**

Mail received from, or addressed to, the following shall be considered privileged correspondence and shall not be opened outside the presence of the inmate[2] except as provided for in Section VI (D) (2):

1. Elected or appointed federal, state, or local officials: One to whom the inmate has petitioned to redress a grievance. The term elected or appointed official includes, but is not limited to, the courts, the President of the United States, the Governor, the Attorney General and the District Attorney. The term elected or appointed official **does not** include the Veterans Administration, Bureau of Motor Vehicles, Social Security Administration, Department of Education, the Pennsylvania Prison Society, the Pennsylvania Board of Probation Parole or to agencies to whom the inmate has applied for benefits.

2. Attorney: Any person authorized under applicable law to practice law and who is engaged in an attorney/client relationship with the inmate addressee. All correspondence from attorneys must be clearly marked with the correspondent's full name on law firm printed letterhead or the full name and address of the law firm on printed letterhead for it to be considered privileged.

N. **Prurient**

Obsessively interested in sexual matters; marked by an obsessive interest in sex; arousing or appealing to an obsessive interest in sex.

O. **Public Mail Systems**

The United States Postal Service and private carriers who serve the general public with systems to move pieces of mail from one location to another.

---

[2] ACA Standard ACI 3-4434

DC-ADM 803

P. **Publications**

Publications include newspapers, magazines, hard or paperback books, newsletters, pamphlets or any other written or printed material that is distributed for the purpose of conveying information.

Q. **Reasonable Quantity**

A reasonable quantity will not exceed the total storage space requirement permitted by the facility. This may include any cell storage cabinets, cell shelves, footlockers and/or record boxes. This space is not to exceed 9.8 cubic feet of storage space or the equivalent of one (1) footlocker and two (2) record boxes.

R. **Undeliverable Mail**

Mail that cannot be identified for delivery due to incomplete or incorrect information.

V. **POLICY**

It is the written policy of the Department of Corrections to provide inmates access to communication with members of society at large through the established public mail system and to govern the inspection of mail, determine the types of publications allowed, and how they will be reviewed.[3] Restriction to access shall be related directly to institutional order and security and obscenity criterion.[4]

VI. **PROCEDURES**

A. **Mail Privileges**

1. Inmates shall be permitted to correspond with the general public, their attorney, and public officials.

2. There shall be no limit to the number of correspondents to whom an inmate may send or from whom an inmate may receive mail.[5]

3. Inmates are prohibited from:

    a. Corresponding with inmates, former inmates, parolees, probationers, co-defendants, or victims of the inmates' criminal acts except with the written approval of the Superintendent;

    b. Corresponding with current or former employees, current or former volunteers, or current or former contract employees except with the written approval of the Superintendent;

    c. Sending or receiving correspondence containing threatening or obscene materials, as well as correspondence containing criminal solicitations or furthering a criminal plan or misconduct offense;

---

3 ACA Standard 1-ABC-5D-04; 1-ABC-5D-07
4 ACA Standard ACI 3-4429; ACI 3-4432; 1-ABC-5D-02
5 ACA Standard ACI 3-4430



**POLICY STATEMENT**
Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject: AUTOMATED INMATE TELEPHONE SYSTEM | Policy No.: DC-ADM 818 |
|---|---|
| Date of Issue: July 9, 1997 | Authority: *[signature]* | Effective Date: November 1, 1997 |

## I. AUTHORITY

The authority of the Commissioner of Corrections to direct the operation of the Department of Corrections (DOC) is promulgated by Sections 201, 206, 506 and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended and the Wiretapping and Electronic Surveillance Act, 18 Pa. C.S. §5701 et. seq.

## II. PURPOSE

It is the purpose of this policy to promulgate rules, regulations and procedures governing inmate telephone privileges and the electronic surveillance of inmate phone calls.

## III. APPLICABILITY

This policy applies to all correctional facilities, regional correctional facilities, the motivational boot camp, or any other DOC facility as identified by the DOC.

## IV. DEFINITIONS

A. **Attorney** - For the purpose of this policy, any person licensed to practice law in any state or federal court and who represents an inmate.

B. **Automated Inmate Telephone System (AITS)** - A computer based telephone system which enables the DOC to control the use of inmate telephones.

C. **Call Blocking** - Placing a restriction on a specific number or series of numbers which prohibits calling those numbers.

D. **Called Number Frequency** - The ability to place a limit on the number of times an individual number may be called in any given period of time.

E. **Electronic Surveillance** - The interception, recording, monitoring, and/or divulging of inmate telephone calls.

F. **Facility Authorized Telephone Call** - Telephone calls placed for inmates by staff on the facility's regular telephone system.

DC-ADM 818

G. **Facility Manager** - The superintendent of a facility or regional correctional facility, commander of a motivational boot camp, director of a community corrections center or director of the training academy.

H. **Immediate Family Member** - Immediate family members are defined as spouse, children, parents, grandparents, brothers, sisters or an aunt or uncle with whom the inmate has made his or her home. Such relationships must be verifiable in the inmate's facility records.

I. **Inmate Personal Identification Number (IPIN)** - The unique set of six (6) digits assigned to individual inmates which enables them to access the AITS.

J. **Inmate Telephone Authorization** - A DOC form (DC-8) completed by inmates listing the name, relationship, telephone number and address of individuals with whom the inmate is requesting to maintain telephonic communications.

K. **Inmate Telephone Authorization Supplement** - A DOC form (DC-9) completed by inmates requesting changes to their approved telephone list (DC-8).

L. **Minor** - Any person under 18 years of age.

M. **North American Calling Plan** - The area includes all 50 states, Canada and parts of the Caribbean Islands (area code 809) composed of the Bahamas, Bermuda, Jamaica, Puerto Rico and the Virgin Islands.

N. **Three Way Calling** - A telephone company service which adds a third party with a different telephone number to an existing conversation.

V. **POLICY**

It is the policy of the DOC to grant inmates the *privilege* of maintaining legitimate telephone communications with individuals in the community, while at the same time protecting society from harm including but not limited to criminal activity, harassment, threats, and intimidation through the use of the inmate telephone system.

IV. **PROCEDURES**

A. **Scope of System**

The inmate telephones may only be used to place collect calls to a telephone number in the North American Calling Plan.

B. **General Access**

1. Telephone system call frequency and duration are based on Custody Level for general population inmates. Custody Level 4 inmates are permitted a maximum of three fifteen (15) minute calling blocks of time per week. Custody Level 3 inmates are permitted a maximum of one fifteen (15) minute calling block every day. Multiple calls per time block are permitted. Facilities may limit calling frequency below the maximum if the number of inmate telephones available does not allow for sufficient calling blocks of time, and for other operational reasons. Custody Level 2 and 1 inmates are authorized more frequent use of the telephone system consistent with the individual facility's custody level incentive policies and/or practices.

2. Calling schedules will be determined by the facility.

DC-ADM 818

3. Telephone privileges for inmates in Restricted Housing Units (RHU), Special Management Units (SMU), and any other specialized housing unit will be governed by DC-ADM 801, "Inmate Disciplinary and Restricted Housing Procedures" DC-ADM 802, "Administrative Custody Procedures", Bulletins 802-3, 6.5.1-3, "Administration of the Restricted Housing Unit" and local policy governing specialized housing units.

4. Inmate telephone calls are a **privilege** which can be curtailed or rescinded for administrative or disciplinary reasons by the hearing examiner, facility manager or designee.

C. **Restrictions**

1. All calls on the AITS will be initially announced to the called party as originating from a correctional facility and subject to monitoring. Announcements may be made periodically during telephone conversations.

2. Prohibited Inmate Initiated Calls

    a. Any employee of the DOC unless requested in writing by the employee and approved in writing by the facility manager(s).

    b. Any judge, criminal justice official, prosecutor or court administrator without their prior written approval.

    c. Any minor unless approved in writing by a parent or legal guardian.

    d. Any victim of the crime for which the inmate is incarcerated unless requested in writing by the victim and approved by the facility manager.

    e. Any codefendant of the inmate.

    f. Any member of the general public who requests in writing to have their telephone number call blocked.

    g. All toll-free and emergency numbers, e.g., 911.

    h. Any local, county, state or federal correctional facility, or an inmate housed there without the prior written approval of officials at both facilities. Such calls shall be monitored.

    i. Three-way calling and call forwarding.

    j. Calls through multiple long distance carriers.

3. Use of any office telephone or other telephone not specifically designated for inmates is prohibited except as otherwise provided for under this policy.

4. Telephone numbers which the facility has reason to believe are being used to violate DOC/local policy or regulations will be call blocked.

5. Use of the same telephone numbers on multiple IPIN lists at individual facilities is prohibited unless a family relationship can be established. Such exceptions must be approved in writing by the facility manager or designee.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE, :
:
      Plaintiff :
:
v. : No. 1:CV-00-0315
:
KENNETH D. KYLER, :
individually, and in his official : (Judge Rambo)
capacity, et al., :
: (Magistrate Judge Smyser)
      Defendants :

## CERTIFICATE OF SERVICE

I, Michael L. Harvey, Senior Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing, **Memorandum in Opposition to Plaintiff's Motion to Correspond With Another Inmate** by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, Pa., addressed to the following:

John R. Jae, #BQ-3219
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370-2902

_____
MICHAEL L. HARVEY
SENIOR DEPUTY ATTORNEY GENERAL

**DATE: June 18, 2001**