IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA



COPY 130

LAW CLERK'S ~~JUDGE'S~~ COPY

JOHN RICHARD JAE,
　　Plaintiff,

vs.

KENNETH D. KYLER, et al.,
　　Defendants

No. 1:CV-00-0315

U.S. District Judge Rambo
Magistrate Judge Smyser

FILED
HARRISBURG
JUN 27 2001
MARY E. D'ANDREA, CLERK
Per ___ DEPUTY CLERK

PLAINTIFF'S ~~████~~ BRIEF IN REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CORRESPOND WITH ANOTHER INMATE

COMES NOW, the Plaintiff & Pro Se Counsel in the above-entitled case, John Richard Jae, as a layman unlettered in the Arts & Sciences of Legal Procedures within the United States, & who, now pursuant M.D. L.R. 7.7, of this Court, files his Plaintiff's Brief In Reply to Defendants' Memorandum In Opposition to Plaintiff's Motion to Correspond With Another Inmate, herein, & who, avers, deposes & states:

　　On or about June 1, 2001, Plaintiff filed his Motion Requiring Defendant-Dragovich And SCI-Greene Superintendent Conner Blaine to permit this Plaintiff to communicate and write to Inmate Norman Johnston at SCI-Camp Hill, & Brief In Support, herein this above-entitled Civil Rights Action.

　　On or about June 18, 2001, Defendants, by Counsel, filed Memorandum In Opposition to Plaintiff's Motion to Correspond with Another Inmate, herein this case.

　　This here is the Plaintiff's Brief In Reply to Defendants' Memorandum In Opposition to Plaintiff's Motion to Correspond with Another Inmate.

ARGUMENTS

I. THE PA. DOC POLICY PROHIBITING INMATES FROM CORRESPONDING WITH EACH OTHER, WHILE REASONABLE AND WHILE FURTHERING LEGITIMATE PENOLOGICAL PURPOSES IN GENERAL, IS NOT ...

inmates incarcerated at different institutions except where the Superintendent of the institution has specifically approved the communication. DC-ADM. 803. This regulation is a reasonable means of preventing inmates from different institutions from carrying out concerted action to disrupt the institutions or to facilitate escapes."

However, by way of reply to such, the Plaintiff avers & submits while true in general, is not true herein this instant case & is "not" even applicable herein, as the Plaintiff does "not" herein to communicate with Inmate Norman Johnston for purpose of carrying out any concerted action to disrupt the institutions or to facilitate any escapes at all, but rather this Plaintiff is to correspond with Inmate Norman Johnston only for the purpose of obtaining the Affidavit from for use in enabling him to now oppose Defendants' Motion For Summary Judgment (for use in this Civil Rights Action, as is this Plaintiff's right to do under § 14th Amendments of the U.S. Constitution and under Fed.R.Civ.P. & which is thus protected activity rendering the DOC Policy (DC-ADM #803.VI.A.2.a.) as limiting inmates from corresponding with inmates unreasonable & unconstitutional in as far as such can be to prohibit this Plaintiff from obtaining legal information- the Affidavit from Inmate Norman Johnston in this case.

In n. 2, of their Memorandum In Opposition to Plaintiff's Motion To Correspond With Another Inmate, Defendants aver:

"A true and correct copy of the relevant provisions of DC-ADM 803 are appended to this memorandum."

However, in reply to such, the Plaintiff avers & submits the DC-ADM. 803 which the Defendants have attached to the Memorandum is "not" a true & correct copy of the present 803 in effect now & such has been repealed & superseded by DC-ADM. #803, effective on February 19, 2001, which is Defendants' next claim & argue, that:

"In this case the Department of Corrections has a legitimate penological interest in restricting communication among inmates. The Department has a duty of care for its inmates to prevent escapes and..."

In reply to the Plaintiff directs this Court's attention to...

While what the Defendants claim &argue here, may be true in a general sense, such is "not" true here in this instant case, the Defendants do "not" have any penological nor legitimate interest nor reason in preventing this Plaintiff from communicating with Inmate Newman Johnston for the purpose of obtaining an Affidavit from to use to oppose Defendants' Motion for Summary Judgment in this matter.

Defendants next claim &argue that:

> In this case, plaintiff alleges he sought permission to communicate with inmate Johnston for the purpose of having him sign an affidavit. He does not allege that he explained what facts he hoped to establish through the affidavit or how those facts were necessary to oppose summary judgment. In short, plaintiff did not demonstrate that his need to communicate with inmate Johnston overcame the Department's general policy prohibiting communications between inmates.
>
> Thus, the policy restricting inmate communications is reasonable both on its face and as applied in this case.

However, in Reply to such, the Plaintiff herein &submits that, DC's argument here above, "is" factually frivolous &spectious, as in the first place, the Plaintiff is proceeding Pro Se without the benefit of nor aid of a lawyer in this case sub judice and he did not know that he was to allege such in the second place DC-ADM. ___ ___ v. ___ a place a written DOC policy which this plaintiff has any copy of states and requires that plaintiff must allege such in order for the Superintendent to consider &decide the request to communicate with and that in any in the third place, in making this request of his counselor & the Superintendent for the permission to communicate with inmate, this plaintiff "did" explain to his counsel what facts he hoped to through the affidavit & how these facts were necessary to oppose summary judgment in this case.

Furthermore, Defendant have failed to show that it was necessary for this plaintiff to allege what facts he hoped through the affidavit in order for his request to be considered by Superintendent and they have furthermore failed to show in this instant case, where this plaintiff seeks only to

...municate with Inmate Johnston solely to obtain the a[ffidavit] from him, their policy prohibiting inmates at different instituti[ons from] communicating, in order to prevent the inmates from eng[aging] in coordinated activity to disrupt the prisons or to plan e[scapes] can or would be reasonable on its face and as applied in th[is case.]

In short, defendants have clearly failed to demonstra[te that] they have a legitimate penological ~~interest~~ interest in preven[ting] this plaintiff from communicating with Inmate Johnston f[or the] sole purpose of obtaining the legal affidavit from him in thi[s] case, and, this is they ~~must~~ must, by law, do/show.

Furthermore, the Defendants, herein, argue that their r[ule] prohibiting communication between inmates in curre[nt at] different institutions is reasonable both on its face and as [applied] in this case, however, it has been held by several federal [courts] that prison officials who argue that a prison rule or practi[ce should] be upheld as reasonably related to penological objectives [must] submit evidence to that effect, and not just any unsupporte[d claim.] v. Sumner, 917 F.2d 382, 386-87 (4th Cir. 1990); H[unter v. Dunn,] F.2d 4613 (7th Cir. 1990); Swift v. Lewis, 901 F.2d 730[, 732 (9th] and Presley v. Brown, 754 F.Supp. 112, 117 (W.D. Mich. 1[990.)] this the Defendants, herein this instant case, have clearly f[ailed to do.]

Furthermore, Defendants' reliance upon Turner v. Safley, 4[82 U.S. 78, 91-93, 107 S.Ct. 2254 (1987)] is misplaced, as the Regu[lation] upheld in Turner, did not forbid correspondence concerni[ng legal] matters, so Turner did not directly address this issue.

Finally, in this, in Elrod v. Spellman, 654 F.2d 1349, [1355] (9th Cir. 1981) the court held that a complete prohibition o[n] correspondence with a prisoner's "written" violated the Fir[st Amendment.]

Given the above & foregoing facts & arguments, the [Plaintiff] Plaintiff avers & submits, that, while the DOC regul[ation] prohibiting communication between prisoners ma[y very] well be reasonable on its face, it is not reasonable as applied herein this instant case.

II. PLAINTIFF "HAS" DEMONSTRATED THAT COMMUNICATION WITH ANOTHER INMATE IS NECESSARY TO PERMIT HIM TO OPPOSE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

Defendants claim & argue, that:

In seeking relief from this Court, plaintiff asserts that he requires Inmate Johnston's affidavit to oppose defendants' motion for summary judgment, but he does not explain with any specificity why this is so. The most he says is that Inmate Johnston has information showing that defendants' submissions on summary judgment are false. Pl. Motion and Brief, p. 2.

Plaintiff does not provide an offer of proof as to the facts he hopes to establish through Inmate Johnston's affidavit. Nor does he assert that Inmate Johnston is the only source from which these facts can be derived.

In short, plaintiff has not established right to the relief he seeks from the Court. Accordingly, his motion to compel defendants to permit him to correspond with Inmate Johnston shall be denied. 4/

However, in reply to the above, this Plaintiff avers & that, he is proceeding pro se without the benefit or se of a lawyer here in this case sub judice, and he was'nt that he had to state with any specificity why he requires Johnston's affidavit to oppose defendant's motion for summary judgment, nor was this plaintiff aware that he had to offer of proof as to the facts he hopes to establish throu Johnston's affidavit, nor was this plaintiff aware that h assert that Inmate Johnston is the only source from wh facts can be derived. The U.S. Supreme Court h [illegible] courts are to hold pro se complaints to less stringent s than formal pleadings drafted by lawyers. See Hughes v. [illegible] v. S.Ky, 101 S.Ct. 173 (1980), citing Haines v. Kerner, 404 U.S. [illegible] 92 S.Ct. 594 (1972). See also Boag v. MacDougall, [illegible] 901 F.2d 646 (9th Cir. 1990) (Inmate is obligated to articulate his pro and afford plaintiff benefit of any doubt in pro-se pleadings [illegible]

than pleadings drafted by attorneys.

Furthermore,

Pro se pleadings are to be construed liberally and held to less stringent standard than formal pleadings drafted by lawyers. If plaintiff can possibly find pleadings to state valid claim on which plaintiff could prevail, it should be so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction or litigants unfamiliarity with pleading requirements. See Spann v. Federal Election Commissioners, 990 F.2d 643 (D.C. Cir. 1993); ____ v. ____, 960 F.2d 594 (9th Cir. 1993); ____ v. MacDougall, 454 U.S. ___, 102 S. Ct. 700 (1982) and Haines v. Kerner, 404 U.S. 519 (1972), 594 (1972).

Furthermore, this plaintiff did "not" do it deliberately on purpose fail to ~~____~~ do so and he now does so herein below.

Defendants claim & argue that in seeking relief from this plaintiff asserts that he requires inmate Johnston's affidavit to defendants' motion for summary judgment, but he does not explain specifically why this is so, and plaintiff avers & submits he does so herein below in Para.

Plaintiff Jae avers & submits, that he needs inmate Johnston's affidavit to oppose Defendants' motion for summary judgment because 1) Fed. R. Civ. P. 56(c) & (e), require the plaintiff to submit affidavits opposing the motion for summary judgment; 2) Inmate Johnston's affidavit will set forth facts showing that the ____ and Ben C. Livingood "lie" in Defendants' Memorandum In Support of Motion For Summary Judgment and in the unsworn Declaration of Ben C. Livingood, which Defendants offer in support of Motion For Summary Judgment. Specifically, Re Inmate Johnston's affidavit with aver facts that Defendants did not permit the inmates in the SCI-Camp Hill RHU to have their own personal softcover books or newspapers or receive a Bible or Quran in their RHU cells in November 1999, and for most of January 2000 and that they ____

Plaintiff Jae did not have the opportunity to obtain his legal books from his stored property in November, 1999, that Inmate Johnston's affidavit will show facts that Defendants Rubendall & Rager "did" deny Plaintiff Jae's legal & religious materials to him in April & May, 2000, that Inmate Johnston's affidavit will show facts that, the RHU officials developed an ongoing practice of denying RHU inmates showers & outside exercise in November & December, 1999, had developed a practice of placing a plexiglass shield on RHU inmate's cell doors and that Defendants Kyler, Palakovich & Rhoades were all personally aware of such & failed to do anything about such, and that Inmate Johnston's affidavit will show facts that, it was excessively hot in the RHU in November and December, 1999, and that there was a problem with the heating system in the RHU in November & December, thereby also supporting what this Plaintiff states in his initial, amended & supplemental complaints herein this matter, and 3) that without Inmate Johnston's affidavit, this Plaintiff will be unable to adequately and effectively oppose counsel for Defendants' Motion for Summary Judgment and memorandum in support, herein this case sub judice and thus, he will be denied his rights to necessary evidence to enable him to and as a consequence, he will be denied his rights to due process of the law under the 14th Amendment of the United States Constitution and will be denied his rights under Article I, Section 9 of the Pennsylvania State Constitution as well.

Defendants also claim & argue, that Plaintiff does not provide proof as to the facts he hopes to establish through Inmate Johnston's Affidavit, nor does he assert that Inmate Johnston is the only source from which the facts can be derived, and the Plaintiff avers & submits that, he has provided an offer of proof as to the facts he hopes to establish through Inmate Johnston's affidavit, as is stated above & supra at p. 6 herein, & that, that given the fact that this Court previously

illegally denied Plaintiff's Motion for Order Requiring Prison Chaplain Rev. Vogel and Officer Cnetz to Sign Affidavit for the Plaintiff, herein this case sub judice, Inmate Norman Johnston is the only source from which these facts can be derived.

## CONCLUSION

Based upon the above & foregoing, herein suit and upon the papers & files in this case, this Plaintiff has established a right to the relief he seeks, & in that & in the interests of fundamental fairness, equal & due process of law, it would be a manifest miscarriage of justice if this Court does not entertain order granting this Plaintiff's Motion for An Order Requiring Defendant Dragovich And SCI-Greene Superintendent Conner Blaine to permit this Plaintiff to Communicate with and Write to Inmate Norman Johnston At SCI-Camp Hill RHU, herein, in that if this Court denies this Motion this Plaintiff "will" be unable to obtain such Affidavit re Norman Johnston & thus, he will be illegally denied relevant & necessary evidence which he must have to combat counter & adequately & effectively dispose Defendants' Motion for Summary Judgment and Memorandum in support herein this case sub judice.

(W)HEREFORE, for all of the preceding reasons, as well as all of that set forth in this Plaintiff's Motion for An Order Requiring Defendant Dragovich And SCI-Greene Superintendent Conner Blaine to permit this Plaintiff to Communicate with and Write to Inmate Norman Johnston At SCI-Camp Hill RHU And Brief in Support, by reference hereunto the same, this Court should grant Plaintiff's Motion =

RESPECTFULLY SUBMITTED,

Date: = 21st JUNE 2001 =    (s) John Richard Smith
                                John Richard Smith
                                #BQ-2319
                                SCI-Greene LMU
                                175 Progress Drive
                                Waynesburg, PA 15370-