JUDGE'S COPY

(139)
copy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
HARRISBURG, PA

**JOHN RICHARD JAE,**        :

         **Plaintiff**        :

        :

        **v.**        :    **No. 1:CV-00-0315**

        :

**KENNETH D. KYLER, individually, and** :    **(Judge Rambo)**
**in his official capacity, et al.,**        :

        :    **(Magistrate Judge Smyser)**

        **Defendants**        :

JUL 1 7 2001

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR COURT ORDER REQUIRING PRISON OFFICIALS TO RETURN PLAINTIFF'S LEGAL MATERIALS AND PROVIDE HIM WITH WRITING MATERIALS

### PROCEDURAL HISTORY OF THE CASE

This is a civil rights action brought pro se by John Richard Jae, an inmate currently incarcerated at the State Correctional Institution at Greene (SCI-Greene). Defendants are various present and former officials at the State Correctional Institution at Camp Hill (SCI-Camp Hill), where Jae was previously incarcerated.

The complaint and supplemental complaint allege violations of the First, Eighth and Fourteenth Amendments, as well as state law claims. Plaintiff's constitutional claims are based upon allegations that he had been denied legal materials and religious literature, that he had been denied showers and exercise and that he had been subjected to poor ventilation and excessive heat in his cell when he

was housed at SCI-Camp Hill.    (Complaint ¶¶1, 10-16, 17-19, 20-21, 23-27; Supplemental Complaint ¶¶4-48).

Defendants moved for summary judgment, and subsequently filed a memorandum and documents in support of their motion on December 5, 2000.

Jae has made several requests for more time to conduct discovery and to respond to the summary judgment motion. On April 17, 2001, this Court ordered that discovery be completed by June 11, 2001, and that plaintiff file his opposition to defendants' motion for summary judgment by June 18, 2001. Jae has not yet filed a response to the motion for summary judgment. On June 8, 2001, however, Jae filed an unopposed motion to stay his obligation to respond to the summary judgment motion until July 18, 2001. That motion to stay has not yet been ruled upon.

On June 8, 2001, Jae filed a motion with supporting brief "for Order of Court Requiring SCI-Greene Prison Officials to Return to this Plaintiff All His Legal Materials, Court Case Files and Law Books and to Provide Him with Enough Paper, Carbon Paper and Envelopes to Enable Him to Meet Court Deadlines, Inter Alia, Petition for Writ of Mandamus."

In his brief in support of the motion, Jae alleges that he had three upcoming court deadlines:  (1)  a brief in this matter, presumably in opposition to defendants' motion for summary judgment, due June 18, 2001;  (2) a brief in *Jae v.*

-2-

*Lester*, No. 01-CV-41 (M.D. Pa.) due on June 23, 2001; and a petition for writ of

certiorari seeking review of his state criminal conviction due in the United States

Supreme Court on June 23, 2001. Jae claims that on May 3, 2001, he sent an inmate

request form to Mark Capozza, who was the unit manager for the SCI-Greene special

management unit where Jae is housed, asking Mr. Capozza to make arrangements to

allow Jae 1 ½ hours to check through all his property boxes -- normally kept in

storage -- the next time Jae visited the special management unit mini law library.

According to Jae, Mr. Capozza denied that request on May 31, 2001. Jae also claims

that the SCI-Greene librarians have not supplied Jae with sufficient paper and carbon

paper to prepare his briefs and petition, and to supply him with any large envelopes.[1]

 Jae requests that this Court order prison officials at SCI-Greene to give

Jae all his legal material presently in storage. It is unclear whether he merely wishes

to have the opportunity to examine the papers in his other boxes, or if he wants the

court to order the boxes out of storage to be placed permanently in Jae's cell contrary

---

[1]Jae also contends that he was deprived of any legal material from May 2,
2001 and May 9, 2001 and thus was unable to file a timely motion for
reconsideration of this court's order denying him leave to file a brief 38 pages in
length. This appears to be a moot point, however, because Jae acknowledges that
this total deprivation of legal papers ended on May 9, 2001 and, in any event,
again moved for leave to file a brief in excess of the 15 page limit, which was
granted on June 21, 2001.

to Section VI.D.5. of DC-ADM 801, which limits his legal and religious materials to what can be placed in one records center box. Jae also requests an order directing SCI-Greene officials to provide him with enough paper, carbon paper and envelopes to prepare the papers due in this case, the matter of *Jae v. Lester* and Jae's petition to the United States Supreme Court. Jae, however, does not state how many additional pieces of paper, carbon paper, and envelopes he requires to complete these documents.

This brief is submitted in opposition to Jae's motion.


## STATEMENT OF FACTS

As set forth in DC-ADM 803.VI.C.1.d(2), an indigent inmate is entitled to 50 sheets of paper and 5 sheets of carbon paper. Should the quantity of paper provided prove to be insufficient, the inmate may submit a request for one more additional packet of paper and carbon paper per month. An inmate obtains the supplies by submitting a request to his unit manager who confirms that the inmate is indigent and then forward the request to the librarian. Any requests for additional paper or carbon paper must be approved by the Superintendent.

An inmate is also entitled to 10 free standard legal-sized envelopes per month regardless of indigency. These envelopes are supplied by the mailroom. An

inmate is permitted to purchase with his own funds additional paper, carbon paper, and envelopes at the commissary. Large manila envelopes can also be purchased at the commissary. This policy is set forth in DC-ADM 803.VI.A.4 and 5.

John R. Jae made requests for paper and carbon paper on April 16, 2001, April 24, 2001, May 14, 2001, and June 18, 2001. Jae received paper and carbon paper on April 18, 2001, May 21, 2001, and June 26, 2001.

Jae did not obtain the paper and carbon paper he requested on April 24, 2001 — even though the request was approved by the acting unit manager — because Jae had already obtained his 50 sheets of paper and 5 sheets of carbon paper for the month of April. Jae had not obtained approval from the Superintendent of SCI-Greene, and the librarian was not authorized to issue to him additional sheets of paper and carbon paper.

On May 1, 2001, Jae began a course of misbehavior which resulted in his removal from his cell to a security cell and placed on property restriction. On May 1, 2001, Jae verbally abused and threatened a corrections officer. That evening Jae ate staples in front of a staff member and claimed that he had cut his wrist. Jae was then removed to the security cell without his property to prevent him from hurting himself. On May 2, 2001, Jae continued to use abusive language to staff and

to make death threats. He threw liquid medication on a member of staff. He used his

food tray to break the light in his cell and threw his feces and urine around the cell.

To curb this behavior, Jae was placed on property restriction which

prohibited him from having any of his own property, including legal materials. On

May 8, 2001, a meeting was held with various staff members to develop a behavior

management plan for Mr. Jae. Jae was present at the meeting and accepted the terms

of the plan. The plan provided that Jae's property would be gradually returned to him

as long as he continued to demonstrate appropriate behavior. On May 9, 2001, his

box of legal materials was returned to him.

As a consequence of this action, Jae did not have access to his legal

materials from May 2, 2001, to May 8, 2001. The purpose in taking these materials

from him was to prevent him from using them to hurt himself — by eating staples

from the documents or otherwise — and to provide an incentive for Jae to improve

his behavior.

On May 30, 2001, Jae's unit manager, Mark Capozza, received a written

request from John Jae asking that he either permit Jae to have an hour and 15 minutes

to go through his stored property boxes or that the boxes be placed in the SMU mini-

law library for his review on his next visit there. Jae said the reason he needed this

time to go through his boxes was because he could not find his legal papers needed

to prepare a petition for writ of certiorari to the United States Supreme Court in his criminal case.

Capozza denied the request because Jae had been given an hour to go through his stored boxes on May 22, 2001, eight days prior to this request. Jae's request showed that Jae knew about his June 23, 2001, deadline since March 23, 2001, the date the Third Circuit entered its order for which Jae was seeking Supreme Court review. Capozza believes that Jae should have known what documents he needed on May 22, 2001, and obtained them from his property box then. Jae had also had an opportunity to review his stored legal material earlier on April 26, 2001.

Under DC-ADM 803, an inmate is permitted to obtain legal material not more than once every thirty days except upon special approval. Such requests are a drain on prison staff resources because a staff member must stay with the inmate while he reviews his property. Because of the imposition Jae's request made on staff time and the likelihood that the request was not necessary, Capozza denied Jae's request.

## **ARGUMENT**

Presumably, Jae's request that this Court direct SCI-Greene officials — who are not parties to this action — to allow him access to all his legal papers and

-7-

provide him with large manila envelopes and additional paper and carbon paper is based upon the All Writs Act, 28 U.S.C. §1651(a).  The Act provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The Third Circuit has stated that "[t]he power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice . . .." *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306, 325 (1981).

The order requested by Jae is inappropriate for two reasons.  First, the relief sought by Jae is not authorized by the All Writs Act.  It appears the reason Jae seeks this relief is to prepare a writ of certiorari to be filed with the Supreme Court and not to prepare filings in this case.  To the extent Jae seeks to obtain relief to allow him to pursue other matters not before this Court, the order sought would not be "necessary or appropriate in aid of [this Court's] respective jurisdiction[]."

In his motion, Jae contends that "he is unable to meet all three of these court deadlines" due to his inability to gain access to his materials in storage.  In Jae's request to Mr. Capozza (Capozza Declaration, Exhibit D), Jae states that he needs access to his boxes only to prepare a petition for certiorari.  Nothing in his request

suggests that he needs to gain access to his stored property in order to pursue this litigation. Certainly, in view of Jae's numerous filings in this case, it appears that he has not been prevented from pursuing his claim here.

Therefore, as an initial matter, because Jae does not clearly state that he is complaining about his inability to pursue this matter, this Court does not have the authority under the All Writs Act to provide the relief plaintiff seeks.

More importantly, this Court intervention is not required because Jae's opportunity to pursue his claim in this Court has not been unreasonably burdened by SCI-Greene officials. As recognized in *Turner v. Safley*, 482 U.S. 78, 89 (1987), prison regulations which may impinge on an inmate's First Amendment rights are constitutional if they are "reasonably related to legitimate penological interests." Indeed, the rights of prisoners "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbot*, 490 U.S. 401, 407 (1989) (*quoting Turner*, 482 U.S. at 85). The prison policies followed in this case are reasonably related to legitimate penological interests and should be upheld.

Jae complains of four instances where SCI-Greene officials interfered with his ability to pursue legal actions. First, he claims he was denied sufficient paper and carbon paper. The record shows, however, that Jae was provided 50 sheets

-9-

of paper and 5 sheets of carbon paper on April 18, 2001, May 21, 2001, and June 26, 2001. (Sebek Declaration, ¶6, Exhibit C). He was denied a request for paper and carbon paper on April 24, 2001, because it exceeded his monthly allotment of paper free-of-charge. Jae could have sought authorization from the superintendent for additional paper (Sebek Dec., ¶3), or purchased paper with his own funds (Sebek Dec., ¶4). Under these circumstances, SCI-Greene officials did not unreasonably deny Jae sufficient free paper and carbon paper to pursue the matter.

Jae also complains that he was not given large manila envelopes free-of-charge. He is entitled to 10 free regular legal envelopes per month, and may purchase manilla envelopes with his own funds. (Sebek Dec., ¶4). This is also a reasonable accommodation of inmate legal needs.

Jae also complains that his legal materials were taken from him from May 1, 2001 until May 8, 2001. As set forth in the declaration of Mark Capozza, these materials were taken from Jae to prevent him from harming himself and to provide an incentive for Jae to control his behavior. (Capozza Dec., ¶¶ 3, 5). Given Jae's severely abusive and self-destructive conduct, this was a reasonable action. (*See* Capozza Dec., ¶¶ 3-4).

Finally, Jae complains that he was not permitted access to his stored legal materials when requested on May 30, 2001. Denial of this request was not

unreasonable since Jae had spent an hour going through his boxes in storage eight days earlier, and had known about a June 23, 2001 deadline as of about March 23, 2001. (Capozza Dec., ¶8). Normally, an inmate in restricted housing is permitted access to his stored legal material once every thirty days. Each time an inmate reviews his stored materials, staff time is taken up because a staff member must stay with the inmate when he reviews his property. (Capozza Dec., ¶9). Given the burden on staff time, limiting the opportunity to review property in storage once every thirty days is not unreasonable.

## CONCLUSION

For the foregoing reasons, Jae's motion for order requiring SCI-Greene prison officials to return to plaintiff his legal materials and provide him with paper, carbon paper and envelopes, should be denied.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

BY: _____

**Office of Attorney General**
**Litigation Section**
**15th Fl., Strawberry Square**
**Harrisburg, PA 17120**
**(717) 783-6896**

**MICHAEL L. HARVEY**
**Senior Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**DATE: July 17, 2001**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,        :
                        :

      **Plaintiff**        :
                        :

      v.              :      No. 1:CV-00-0315
                        :

KENNETH D. KYLER, individually, and :     (Judge Rambo)
in his official capacity, et al.,    :
                        :     (Magistrate Judge Smyser)
      **Defendants**    :

### UNSWORN DECLARATION OF SHARON A. SEBEK

I, **Sharon A. Sebek,** hereby declare under penalty of perjury that the following is true and correct based upon my personal knowledge:

1.    I am the acting librarian for the State Correctional Institution at Greene.

2.    As librarian, I am familiar with the Department of Corrections policies regarding inmate writing supplies.

3.    As set forth in DC-ADM 803.VI.C.1.d(2), an indigent inmate is entitled to 50 sheets of paper and 5 sheets of carbon paper. Should the quantity of paper provided prove to be insufficient, the inmate may submit a request for one more additional packet of paper and carbon paper per month. An inmate obtains the supplies by submitting a request to his unit manager who confirms that the inmate is indigent and then forward the request to the librarian. Any requests for additional paper or carbon paper must be approved by the Superintendent.

4.    An inmate is also entitled to 10 free standard legal-sized envelopes per month regardless of indigency. These envelopes are supplied by the mailroom. An inmate is permitted to purchase with his own funds additional paper, carbon paper, and envelopes at the commissary.

Large manila envelopes can also be purchased at the commissary. This policy is set forth in DC-ADM 803.VI.A.4 and 5. Relevant portions of DC-ADM 803 are attached hereto as **Exhibit A**.

5.       According to prison records, John R. Jae made requests for paper and carbon paper on April 16, 2001, April 24, 2001, May 14, 2001, and June 18, 2001. Attached hereto as **Exhibit B** are Jae's requests slips with the disposition of each request.

6.       According to a tracking log which I maintain, Jae received paper and carbon paper on April 18, 2001, May 21, 2001, and June 26, 2001. Attached hereto as **Exhibit C** is a true and correct copy of log entries for April, May, and June of 2001.

7.       Jae did not obtain the paper and carbon paper he requested on April 24, 2001 — even though the request was approved by the acting unit manager — because Jae had already obtained his 50 sheets of paper and 5 sheets of carbon paper for the month of April. Because Jae had not obtained approval from the Superintendent of SCI-Greene, I was not authorized to issue to him additional sheets of paper and carbon paper. Attached hereto as **Exhibit D** is a true and correct copy of a grievance submitted by Jae about the denial of his request for paper and carbon paper and the response.

Executed on *July 17, 2001*                     *Sharon A. Sebek*
                                                **SHARON A. SEBEK**

- 2 -

# EXHIBIT A

**POLICY STATEMENT**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| **Inmate Mail and Incoming Publications** | **DC-ADM 803** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| January 22, 2001 | **Martin F. Horn** | February 19, 2001 |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of the Department of Corrections to establish policy and procedures that govern inmate mail privileges and incoming publications. [1]

## III. APPLICABILITY

This policy applies to all inmates and employees, volunteers, and contract vendors who reside or work in facilities under the jurisdiction of the Department with the exception of the Bureau of Community Corrections.

## IV. DEFINITIONS

### A. Approved Inmate Name

The committed name and/or a name change that is in accordance with Department policy, **11.5.1, "Records Office Operations."**

---

[1] 1-ABC-5D-01; 1-ABC-5D-04; 2-CO-5D-01

## V.  POLICY

It is the written policy of the Department to provide inmates access to communication with members of society through the established public mail system and to govern the inspection of mail, determine the types of publications allowed, and how they will be reviewed.[3]  Restriction to access shall be related directly to facility order and security and obscenity criterion.[4]

## VI.  PROCEDURES

### A.  Mail Privileges

1.  Inmates shall be permitted to correspond with the general public, their attorney, and public officials.

2.  There shall be no limit to the number of correspondents to whom an inmate may send or from whom an inmate may receive mail.[5]

3.  Inmates are prohibited from:

    a.  corresponding with inmates, former inmates, parolees, probationers, co-defendants, or victims of the inmates' criminal acts except with the written approval of the Facility Manager;

    b.  transferring or receiving through any means whatsoever, negotiable instruments, money, or items of monetary value to or from any other inmate, former inmates, parolees, probationers, co-defendants, or victims of the inmates' criminal acts or their immediate families without prior written approval of the Facility Manager;

    c.  corresponding with current or former employees, current or former volunteers, or current or former contract employees except with the written approval of the Facility Manager;

    d.  sending or receiving correspondence containing threatening or obscene materials, as well as correspondence containing criminal solicitations or furthering a criminal plan or misconduct offense;

    e.  using the facility address to fraudulently identify him/herself as an employee, agent or representative of the facility; For example:

    > Theodore Smith, Paralegal
    > SCI Mahanoy
    > 301 Morea Road
    > Frackville PA 17932

---

[3]  1-ABC-5D-04; 1-ABC-5D-07
[4]  3-4429; ACI 3-4432; 1-ABC-5D-02
[5]  3-4430

f.  writing to individuals who have stated in writing that they do not wish to receive correspondence from the inmate. These individuals must have written to the Departments, Office of Victim Services (OVS) or to the facility in which the inmate is housed. This restriction is not to be interpreted to infringe on the right of inmates to correspond with public officials with regard to the performance of their official duty;

g.  corresponding with prohibited parties directed through a third party;

h.  sending or receiving battery-operated greeting cards;

i.  sending or receiving "bill-me-later" or free gift transactions; and

j.  inmates are prohibited from receiving correspondence or homemade artwork in correspondence that has any item affixed to it with glue or other types of adhesives, including tape, are used. Unaltered commercially manufactured greeting cards will be permitted in accordance with Section VI A (3)(h) above, which prohibits battery-operated greeting cards.

4.  Each inmate will be permitted, without cost, to mail 10 one-ounce, first-class letters per month.[6]

5.  There will be no limit on the number of letters that an inmate may send at his/her own expense.[7] Envelopes are available for purchase through Commissary. In the event an inmate has purchased envelopes prior to a transfer to another facility, the inmate shall be allowed a one-on-one exchange of envelopes upon arrival at the new facility.

6.  No obscene material or contraband shall be written or drawn on, or contained in, the mail. Such mail will be opened, returned to the sender, or disposed of at the inmate's expense.

7.  Outgoing, non-privileged correspondence may be opened and inspected if there is reason to believe that the security of the facility may be impaired or this directive is being violated.[8]

8.  All outgoing mail shall include on the envelope the full-approved inmate name, DOC inmate number, and return address printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. Envelopes not bearing this information will be opened and returned to the inmate if identified.

9.  All outgoing correspondence will be stamped "**Inmate Mail - PA. DEPT. OF CORRECTIONS.**"

---

[6] 3-4431; 1-ABC-5D-03
[7] 1-ABC-5D-02
[8] 1-ABC-5D-05

10. Inmates shall seal and place all outgoing correspondence in the collection boxes provided in each housing unit and/or other designated locations.

11. All inmates are prohibited from receiving nude photographs.

12. In accordance with 18 Pa. C.S.A. § 5903, the Department will not disseminate obscene or explicit sexual materials to inmates under the age of 18. Any inmate under the age of 18 found to be in possession of explicit sexual materials will be subject to a misconduct in accordance with **DC-ADM 801, "Inmate Discipline."**

## B. Privileged Correspondence

1. Mail addressed to an inmate that is identified as privileged correspondence shall only be opened and inspected for contraband in the presence of the inmate except as provided for in Section VI (D)(2).

2. In order to be considered outgoing privileged correspondence, the inmate's approved name and DOC number shall be printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. The letter must be addressed to a specific attorney, law firm or elected or appointed federal, state, of local official as specified in the definition of "Privileged Correspondence."

## C. Stationery, Pen, and Postage for Indigent Inmates

Upon written request, inmates who have no money in their accounts shall be provided with stationery and a pen, and will be able to anticipate the cost for postage to file papers necessary to the good-faith pursuit of legal remedies.[9]

1. No-Cost Stationary and Pens

   a. An inmate who needs no-cost stationery may submit a request to the Facility Business Manager or designee. The request shall contain:

      (1) the date of the request;

      (2) the approximate quantity of paper needed to prepare the legal documents;

      (3) whether a pen or the use of a pen is needed;

      (4) the current balance in his or her inmate facility account, if known; and

      (5) the case/docket number, type of case, and location of filing.

   b. The Business Manager/designee shall review the information contained in the request slip and verify that the inmate has insufficient funds to purchase the needed material. This determination will be based on the definition of "Indigent Inmate" contained at the beginning of this policy.

---

[9] 3-4262; 3-4264; 1-ABC-5D-06

    c.  The Business Manager/designee shall respond to the request within five working days of receipt.

    d.  Upon approval, the inmate shall be provided free of charge:

        (1) the use or permanent possession of a common type of stick ball pen; and

        (2) a packet of fifty sheets of clean paper and five sheets of carbon paper. Paper must be 8 1/2 x 11 inches in size. Should the quantity of paper or carbon paper provided prove to be insufficient, the inmate may submit a request for one more additional packet per month.

    e.  Inmates housed in the L5 Unit may request a legal pack, (a reasonable amount of paper, carbon paper and a flex pen) for the purpose of preparing legal documents. The Unit Manager/Officer-In-Charge shall permit the inmate to order the required items through the commissary. If the inmate is indigent, the Unit Manager/Officer-In-Charge shall forward the request to the Facility Business Manager in order for the inmate's indigent status to be verified. In the event the Business Manager determines the inmate is not indigent, the inmate's request for indigent status shall be denied and the Unit Manager/Officer-In-Charge shall inform the inmate and permit the inmate to order the required items through the commissary. If the inmate's indigent status is verified the Business Manger shall inform the Unit Manger/Officer-In-Charge who then shall notify the Corrections Librarian who shall supply the necessary items.

2.  Postage

    a.  Anticipated Postage

    An inmate who has no money in his/her account shall be permitted to anticipate the deposit of funds into his/her account for **legal mail** only.

        (1) An inmate who must immediately file a legal document with a court shall be permitted to mail legal documents to a court, attorney, or party to a lawsuit by sending a request to the Business Manager/designee and anticipating on his/her account for the cost of mailing such documents.

        (2) The Business Manager/designee shall respond to the request within five working days of receipt.

        (3) An inmate may anticipate on his/her account for legal mail up to $10.00 per month. Under no circumstances, shall the Business Manager/designee approve requests in excess of $10.00 per month.

        (4) One hundred percent (100%) of any monies received in an inmate's account will be used to satisfy the postage debt, after all court-ordered deductions are taken.

　　b. Postage Limitations

　　An inmate will be permitted to anticipate the deposit of funds into his/her account for regular first-class postage only except that:

　　(1) a "Petition for Review" to Respondents is the only legal document required to be served by <u>certified mail, return receipt;</u>

　　(2) an inmate may use, but is not required to use, <u>certified mail, return receipt</u> to file and serve a "Petition for Review" with the Court;

　　(3) an inmate may not be permitted to anticipate the deposit of funds into his/her account to mail documents in any case in which he/she is not a party;

　　(4) any misuse of postage and incomplete or false requests shall be grounds for disapproval of any further anticipation for postage and for discipline; and

　　(5) The inmate may appeal any decision regarding this section as outlined in Department policy **DC-ADM 804, "Inmate Grievances."**

## D. Security

1. Non-privileged correspondence

　　a. The facility's mailroom staff shall open and inspect all incoming non-privileged correspondence.

　　b. Any item or material in non-privileged correspondence (e.g. internet pages, news articles, etc.) that is questionable in nature shall be reviewed by the Incoming Publications Review Committee for possible violations of sections VI-F-4-a and/or VI-F-4-b of this policy.

　　c. Non-privileged correspondence may be read upon the written order of the Facility Manager and reproduced upon written order of the Regional Deputy Secretary of Corrections only when there is reason to believe that the security of the facility may be impaired, that this directive is being violated, or there is evidence of criminal activity or of a misconduct offense.[10]

2. Privileged correspondence

　　a. Privileged correspondence, whether to or from a correspondent, will not be opened, read, censored, or reproduced outside the presence of the inmate, except under the following conditions:

　　(1) with the prior written approval of the Secretary of Corrections or designee.

---

[10] 1-ABC-5D-05

# EXHIBIT B

JUL.16.2001    1:08PM                                      NO.342    P.8

| Form DC-135A **INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania Department of Corrections |
|---|---|
| | **INSTRUCTIONS** Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| | |
|---|---|
| 1. To: (Name and Title of Officer) MR. Capozea, SMU/RHU Manager | 2. Date: 4-16-01 |
| 3. By: (Print Inmate Name and Number) MR. John R. Joe #BQ-5219 _John R. Joe_ Inmate Signature | 4. Counselor's Name MR. Harris |
| | 5. Unit Manager's Name MR. Capozea |
| 6. Work Assignment None | 7. Housing Assignment HB9 |

8. Subject: State your request completely but briefly. Give details.

Mr. Capozea, sir Please reply back to me on this request that (within) on 3-09-01. I sent my request for an Indigent Inmate Legal Pack to Ms. Turner, Librarian. Here & then on 4-18-01 I received such request back from her and she to try and make me comply with DC-ADM #803 VI-C-1.e. and my request for such (Legal Pack) to you, But you me Capozea, told me to you again on March 2001 that we are not following DC-ADM #803-VI-C-1.e., where at that I am still send my request for the legal pack to the Librarian here, & so I request that you get with Ms. Turner & get this matter straight away so I can get my legal pack which I am being denied now I need

9. Response: (This Section for Staff Response Only) what you to do.

Mr. Joe,

I told you that if you need an Indigent Packet, you would need to send me a request for verification, then if you I would forward it to the Law Library. I have verified your Indigent Status as of 4-16-01.

C.C. Law Library

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name   M. Capozza / M. S___ Date   4-16-01
                         Print              Sign

Revised July 2000

JUL. 16. 2001   1:05PM                                    NO. 342   P. 3

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer)<br>The SMU Unit Manager | 2. Date: 4-24-01 |
| 3. By: (Print Inmate Name and Number)<br>MR. John R. Doe #BA-3210<br><br>_John R. Doe_<br><u>Inmate Signature</u> | 4. Counselor's Name<br>MR. HARRIS |
|  | 5. Unit Manager's Name<br>MR. Capezza |
| 6. Work Assignment<br>None | 7. Housing Assignment<br>HB9 |

8. Subject: State your request completely but briefly. Give details.

I need and request an Indigent Inmate's Legal Pack.

1. The date of the Request is Apr. 24, 2001
2. I need & request 50 Sheets of paper & 5 Carbons
3. I do not need a pen
4. My account has a negative balance of $523. So
5. The Case Name/No. is Doe v. Doe et al. C.A. No. 00-1788 which is a habeas corpus case/appeal & the location of items is: Marcia M. Waldron, Clerk U.S. Court of Appeals for the Third Circuit, 21400 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19100-1790. I need this because the paper you gave me is not enough as I must file & serve an original & 10 copies of my Petition for Rehearing on in banc case by FRAP 35 & rule 35.

9. Response: (This Section for Staff Response Only)

Approved

To DC-14 CAR only ☐                    To DC-14 CAR and DC-15 IRS ☐

Staff Member Name   <u>Warman</u>   /   <u>Warman</u>   Date  4/24/01
                        Print                  Sign

Revised July 2000

JUL.16.2001   1:07PM                                                   NO.342   P.7

*H·B·1   BQ3219*

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**

Complete items number 1-8.  If you follow instructions i
preparing your request, it can be responded to more
promptly and intelligently.

1.  To: (Name and Title of Officer)
MR. Capozza, SMU Unit Manager

2.  Date: May 14, 2001

3.  By: (Print Inmate Name and Number)
MR. John R. Doe #BQ-3219
*John R. Doe*
Inmate Signature

4.  Counselor's Name
MR. Harris

5.  Unit Manager's Name
MR. Capozza

6.  Work Assignment
None

7.  Housing Assignment
HB1

8.  Subject: State your request completely but briefly.  Give details.

I need & request an I.D. Agent's legal pack based upon the following
information:
1. The date of this request is: May 14, 2001
2. I need & request 50 sheets of paper and 5 carbons
3. I do not need a pen
4. My Prison Account has a negative balance of at least $5
5. The case name and I.D. are Doe vs. Drapovich, et al., Civil No. 1: CV-00-R83,
which is a Federal Civil Rights Action for which the location of filing will be
The Office of the Clerk, U.S. District Court, 228 Walnut Street, P.O. Box?,
Harrisburg, PA. 17108-0883 and Mr. Michael L. Harvey, SDAG, Office of
the Attorney General of Pennsylvania, 15th Floor Strawberry Square,
Harrisburg, PA. 17120

Inmate verified as indicated. Eligible for legal
Packet.

CC: Library

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name   M. Capozza                    Date  5-17-01
                       Print          /   Sign

H-B-9    B43219

| DC-135A | COMMONWEALTH OF PENNSYLVANIA |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | **DEPARTMENT OF CORRECTIONS** |
| | **INSTRUCTIONS** |
| | Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. |

**1. TO: (NAME AND TITLE OF OFFICER)**
Mr. Capozza, SMU Unit Manager

**2. DATE**
6-18-01

**3. BY: (INSTITUTIONAL NAME AND NUMBER)**
Mr. John R. Doe, #B2-3219    John R. Doe

**4. COUNSELOR'S NAME**
Mr. Harris

**5. WORK ASSIGNMENT**
None

**6. QUARTERS ASSIGNMENT**
HB9

**7. SUBJECT; STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.**

I need to request an Indigent's Legal Pack, based upon the following:

1. The date of this request is June 18, 2001.
2. I need to request 50 sheets of paper & 5 carbons.
3. I do not need a pen.
4. My prison account has a negative balance of at least - $545.00
5. The case name No. & Type of case are Doe vs. Kyler, et al, Civil No. 1 - CV-00-0315, which is a Civil Rights Action, for which the location of filing is 'Office of the Clerk U.S. District Court, 228 Walnut Street, P.O. Box 983, Harrisburg, PA-17108-0983-
Thanks =

**8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)**

Mr. Doe,

It is verified that you are indigent and are eligible for the indigent packet of legal supplies. I will forward this to the library.

CC: Library
RE: Indigent Legal Packet.

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

**STAFF MEMBER**
M. Swoff

**DATE**
6-18-01

**EXHIBIT C**

## INMATE SPECIAL REQUEST/DELIVERY TRACKING LOG

| NAME/DOC NO. | UNIT | DATE (Sent/Delivered) | TYPE OF REQUEST/DELIVERY |
|---|---|---|---|
| Deltjumy | IC-12 | 4-2 | paper 50/5 — |
| Cruz | IC-2 | 4-2 | paper 50/5 — |
| Ford | HC-22 | 4-2 | paper 50/5 — |
| Quilici | ID-20 | 4-2 ① | paper 50/5 — ② |
| McCally | HA-15 | 4/8 | paper 50/5 — |
| Hall | FA-12 | 4/8 | paper 50/5 — |
| Johnson | HD-13 | 4/8 | paper 50/5 — CL1334 |
| Romansky | CDC | 4/8 | paper 50/5 — |
| Joe — | HB-9 | 4/18/01 | paper — 50/5 |
| Allen — 89-6634 | HD-21 | 4/19/01 | paper 50/5    5/23/4 |
| Bulloch | AB14 | 4/23/01 | paper 50/5 |
| ③ Duffy | FD 20 | 5/25/01 | paper 50/5 — No more until 5/25/01 |
| Romansky | EB6 | 4/28/01 | paper 50/5 |
| 23 Pierce | LB31 | — 4/29/01 | 4/30/01 — 50/5 |
| Mari Hernandez — HA 3 | | 5/1/01 — 5/2/01 | 50/5 · AY9420 — x. 2nd pkt 50/5 on 5/20/01 |

JUL.17.2001   7:22AM

MONTH_____

## INMATE SPECIAL REQUEST/DELIVERY TRACKING LOG

| | NAME/DOC NO. | UNIT | DATE (Sent/Delivered) | TYPE OF REQUEST/DELIVERY |
|---|---|---|---|---|
| 4/25 | Burgess | IE15 | 4-2/01 | 5/50 paper |
| 4-25 | Suttej | → ② - 5/7/01 - 5/8/01 - 5/50 paper / burst until 5/6 |
| 4/11/01 | _. Santiago, DE-9101-A/A-21 - 5/16/01 - 5/17/01 - 50/5 paper |
| 4/18/01 | L. Simpkin, JT-5264-H/D-21 - 5/16/01 - 5/17/01 - 50/5 paper |
| 4/24/01 | Young - EL-5221 - F/15-8 - 5/16/01 - 5/16/01 - 50/5 - white - sent one on 5/8/01 |
| 4/2/01 | L. Mitchem, BE-9107 1/B-9 - 5/16/01 - 5/17/01 - 50/5 paper - |
| 5/7/01 | Hughes - DY1806 - FD11 - 5/7/01 - 5/8/01 - 50/5 paper - |
| 5/7/01 | McCarty - DV0437 - FA21 - 5/7/01 - 5/8/01 - 50/5 paper - |
| 5/7/01 | Smith - EJ0319 - FB6 - 5/7/01 - 5/8/01 - 50/5 - paper - |
| 5/7/01 | Brown - V. - CF7228 - EB14 - 5/7/01 - 5/8/01 - 50/5 - paper - ② pkT 7/10 5/22/01 |
| 5/7/01 | Dantzler - DZ4398 - IC 7 - 5/7/01 - 5/8/01 - 50/5 paper - |
| 5/7/01 | Henderson - EJ-7716 - IC 2 - 5/7/01 - 5/8/01 - 50/5 - paper |
| 5/8/01 | Richmond - DB 7852 - HB19  5/8/01 - 5/9/01  50/5 |
| 5/8/01 | Johnson - CL 1334 - HD13 - 5/8/01  5/9/01 - 50/5 |
| 5/9/01 | Stone - DT4594 - HA1 - 5/9/01 - 5/10/01  50/5 |
| 5-9-01 | Pattyway - BW8109 - IC #12 - 5/9/01 - 5/10/01  50/5 - |
| 5-9-01 | Lorenzano - DL 3089? - FC10 - 5/9/01 - 5/10/01  50/5 |
| 5-18-01 | Jae - 6Q3219 - HB1 - 5/20/01 - 5/21/01  50/5 |
| 5-18-01 | Pettis - CN 6034 - HB13 - 5/20/01 - 5/21/01  50/5 - |
| 5/18/01 | Romasky - AY8324 - EB6 - 5/20/01 - 5/21/01  50/5 |
| 5/18/01 | Hall - CX 5319 - FC4 - 5/20/01 - 5/21/01  50/5 |
| 5/18/01 | Gordan - DD1171 - IB17 - 5/20/01 - 5/21/01  50/5 |
| 5/16/01 | Smith DW0529 LA1 5/21/01?  50/5 |
| 5/23/01 | Brown Keith - IA12 - 5/23/01 - 5/23/01 - 50/5  1st for May |
| 5/17/01 | Smith DW5 CF3724 H/51 5/24/01 50/5 - 2nd for Mag |
| 5/17/01 | Pierce GT-6191 LB31 5/24/11 50/5 - 2nd for Mag 5/24/01 |
| 5/25/01 | Duffy - DS.9682 - FD20 - 5/29/01 - 50/5 |

## INMATE SPECIAL REQUEST/DELIVERY TRACKING LOG

| NAME/DOC NO. | UNIT | DATE (Sent/Delivered) | TYPE OF REQUEST/DELIVERY |
|---|---|---|---|
| PARKER AY5335 HB24 | | 5-29/530 | - 50/5 |
| 5/18 McGorder 1210 1174 | | 5/31 | EB57 50/15 |
| 5/18 Gorden | | | |
| 6/3 Johnson CL1334 HD13 | | 6/4 | 50/5 |
| 6/3 Pettis CN6034 NB12 | | 6/14 | 62/8 |
| 6/3 Kowalski AY8331 EB6 | | 6/4 | 58/5 |
| 5/31 HALL NKL658 HA13 | | 6/4 | 62/8 ? |
| 7/04 MC Carty - DV6437 - 6/7/01 -6/8/01 | | | 50/5 Refused on 6/8 needs Appr. |
| 7/04 LOR ENZANO - DL3089 - 6/7/01 - 6/6/01 | | | 59/5 - |
| 7/8 Yeara ESO379 FJD9 | | 6/11/01 | 50/5 |
| 6/15/01 CRUZ BF9294 AB79 - 6/18/01 | | | 50/5 |
| 6/15 Robinson EE1031 FD4 | | 6/13/01 | 52/8 |
| 6/18 Santiago DE9107 HAD1 | | 6/19/01 | 50/5 |
| 6/18 Butler - AS1035 - A6 - 6/18/01 | | | 50/5 |
| 6/19 Jae - BQ3219 - HB9 - 6/19/01 - 6/26/01 | | | 50/5 |
| 6/19/01 Richmond - DB7852 - HA7 - 6/19/01 - 6/20/01 | | | 50/5 |
| 6/19/01 Dantzler - D24398 - IC7 - 6/19/01 - 6/26/01 | | | 50/5 |
| 6/29/01 Smith CY6529 LB329 6/3/01 | | | 50/5 |
| 6/26/01 Simpkins ~~...~~ | | | ? |
| 5/26/01 Roberts AS1032 ~~...~~ | | | |
| 7/2/01 Gorden DD1171 EB57 | | 6/24 | 52/5 |
| 7/2/01 Flores BJ1514 LB31 | | 6/25 | 50/5 no fasting |
| 7/2/01 RADELARD AS1032 IC8 | | 6-27 | 50/5 7/8 |
| 7/2/01 HALL CK5319 FC4 | | 7-2-01 | 50/5 7/8 |
| 7/8 Stricklin EF1101 EB53 | | 50/3 | 7/4 |
| 7/8 MCCarty DV L937 FA31 | | 50/5 | 7/8 |
| 7/8 Kowalski AY8324 EB6 | | 50/5 | 7/8 |
| 7/8 ~~Pettis~~ EL5224 FD8 | | 50/5 | 7/8 |
| 7/8 Yeara | | | |

**EXHIBIT D**

DC-804
Part 1

**HB 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

| FOR OFFICIAL USE ONLY |
|---|
| GRN-1082-2001 |
| GRIEVANCE NUMBER |
| 5-24 |

**OFFICAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms Sharon L DElletto | SCI-Greene | 5/10/01 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: |
|---|---|
| Mr John R. Jae BQ-3819 | John R Jae |

| WORK ASSIGNMENT: None | HOUSING ASSIGNMENT: HB1 |
|---|---|

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B the specific actions you have taken to resolve this matter informally. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

On April 26, 2001, a request approved by Acting SMU Unit Manager Warman was sent to the Law Library here for my second legal Pack to be given to me in accord. with DC-ADM. #803-VI. C-1-(d) (a) and (e)-and I have not yet received such legal Pack & It has been over 5 working days since the Library received such request. This violates DC-ADM #803-VI. C-1-C+#803-VI C-1-(d) (a)-f & (e)-and denies me access to the courts as I have no paper to prepare my legal pleading s in violation of the 1st Amend.; U.S. Const. & Art-1, §20, Pa Const.-

**B.** List actions taken and staff you have contacted, before submitting this grievance. Attach the copy of the DC-135A with the staff member's response of your informal resolution attempt.

I have followed the DC-ADM#803 Policy for Requesting an [   ]nd Been Inmates Legal Pack by sending my request to Acting SMU Unit Warman & then once he approved such, sending the request to library on 4-26-01- I cannot attach a copy of this request to this grievance as the library never returned such request back to me [Sharon] working days since they received it.

Your grievance has been received and will be processed [in accordance with DC-ADM-8]04.

*Need to give you some info on this? [mAK]*

_Sharon D Elott_
Signature of Facility Grievance Coordinator

05/11/01
Date

WHITE - Facility Grievance Coordinator Copy   CANARY - File Copy   PINK - Action Return Copy   GOLDENROD - Inmate Copy

Revised
July 2000

*DC-ADM 804, Inmate Grievance System*                          *Attachment B*

**DC-804**
**Part 2**

### COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS
### P.O. BOX 598
### CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE                    GRIEVANCE NO.    | GRN-1082-2001 |
INITIAL REVIEW RESPONSE

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| John Jae, BQ-3219 | SCI Greene | H/B-9 | May 11, 2001 |

The following is a summary of my findings regarding your grievance:

I am in receipt of your grievance #GRN-1082-2001 dated May 11, 2001.

Your grievance states that April 26, 2001, Acting Unit Manager Warman approved your request for a second "Legal Pack" (Indigent Packet) that you did not receive.

Per DC ADM 803, Section VI, C., d. 2, "Upon approval, the inmate shall be provided free of charge a packet of fifty sheets of clean paper and five sheets of carbon paper. Paper must be 8 ½ x 11 inches in size. Should the quantity of paper or carbon paper provided prove to be insufficient, the inmate may submit a request for one more additional packet per month. Although Mr. Warman approved your request, he was in error. He should have informed you of the following: You are permitted only one packet of paper (50 sheets and five (5) carbons) per month, **not per open legal case**. Requests for an additional packet are to be submitted on an Inmate Request to Staff to the Facility Manager for approval.

As you had been provided with this information when the DC ADM 803 dated February 19, 2001, was distributed to you, this grievance is denied.

KW/plr

cc:     Deputies
        Captain Martim
        Grievance Coordinator
        DC-15 Records File
        Tracking Clerk
        Mr. Capozza
        File

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| Kent Warman<br>Capital Case Unit Manager | *Warman* | May 24, 2001 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RICHARD JAE, | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | No. 1:CV-00-0315 |
| | : | |
| KENNETH D. KYLER, individually, and | : | (Judge Rambo) |
| in his official capacity, <u>et al.</u>, | : | |
| | : | (Magistrate Judge Smyser) |
| **Defendants** | : | |

## UNSWORN DECLARATION OF MARK CAPOZZA

I, **Mark Capozza**, hereby declare under penalty of perjury that the following is true and correct based upon my personal knowledge and my review of prison records:

1.     I am the Unit Manager for D-Block, which houses general population inmates. As Unit Manager, I am responsible for the overall operation of the housing unit, including security, counseling service and case management.

2.     In April and May, 2001, I held the position of Unit Manager for the Special Management Unit (SMU) at the State Correctional Institution at Greene.  The Special Management Unit is a housing unit for inmates who exhibit behavior that is continually disruptive, violent or dangerous and who have been repeatedly disciplined.  The unit is designed to provide each inmate with the opportunity to demonstrate a stable behavior so that they can be safely returned to general population or another suitable status.

3.     On May 1, 2001, Jae began a course of misbehavior which resulted in his removal from his cell to a security cell and placed on property restriction.  On May 1, 2001, Jae verbally abused and threatened a corrections officer.  That evening Jae ate staples in front of a staff member

and claimed that he had cut his wrist. Jae was then removed to the security cell without his property to prevent him from hurting himself.

4.    On May 2, 2001, Jae continued to use abusive language to staff and to make death threats. He threw liquid medication on a member of staff. He used his food tray to break the light in his cell and threw his feces and urine around the cell. Attached hereto as **Exhibit A** are the first pages of each of the reports of Jae's misconduct written during these two days. Attached hereto as **Exhibit B** is a letter from Mr. Jae to Superintendent Conner Blaine admitting that Jae swallowed staples, threw medication out his cell door, smeared feces and urine over his cell floor and walls, broke his light, and threatened staff.

5.    To curb this behavior, Jae was placed on property restriction which prohibited him from having any of his own property, including legal materials. On May 8, 2001, a meeting was held with various staff members to develop a behavior management plan for Mr. Jae. Jae was present at the meeting and accepted the terms of the plan. The plan provided that Jae's property would be gradually returned to him as long as he continued to demonstrate appropriate behavior. On May 9, 2001, his box of legal materials was returned to him. Attached hereto as **Exhibit C** is a copy of the behavior management plan for Jae.

6.    As a consequence of this action, Jae did not have access to his legal materials from May 2, 2001, to May 8, 2001. The purpose in taking these materials from him was to prevent him from using them to hurt himself — by eating staples from the documents or otherwise — and to provide an incentive for Jae to improve his behavior.

7.    On May 30, 2001, I received a written request from John Jae asking that I either permit Jae to have an hour and 15 minutes to go through his stored property boxes or that the boxes

2

be placed in the SMU mini-law library for his review on his next visit there.  Jae said the reason he needed this time to go through his boxes was because he could not find his legal papers needed to prepare a petition for writ of certiorari to the United States Supreme Court in his criminal case.

8.      I denied the request because Jae had been given an hour to go through his stored boxes on May 22, 2001, eight days prior to this request.  From the request, I understood that Jae knew about his June 23, 2001, deadline since March 23, 2001, the date the Third Circuit entered its order for which Jae was seeking Supreme Court review.  I felt that Jae should have known what documents he needed on May 22, 2001, and obtained them from his property box then.  Jae had also had an opportunity to review his stored legal material earlier on April 26, 2001.   Attached hereto as **Exhibit D** is a true and correct copy of Mr. Jae's request and my response.

9.      Under DC-ADM 803, an inmate is permitted to obtain legal material not more than once every thirty days except upon special approval.  Such requests are a drain on prison staff resources because a staff member must stay with the inmate while he reviews his property.  Because of the imposition Jae's request made on staff time and the likelihood that the request was not necessary, I denied Jae's request.

Executed on ___7-17-01___                    _Mark G._____
                                             **MARK CAPOZZA**

3

# EXHIBIT A

JUL.16.2001  1:22PM                                    NO.343   P.13

FORM DC-141  PART I        COMMONWEALTH OF PENNSYLVANIA              A 318929
Rev. 6-84
☒ MISCONDUCT REPORT ☐ OTHER    DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| B93219 | John Joe | Greene | 14.25 | 5-1-01 | 5-1-01 |

| Quarters | Place of Incident |
|---|---|
| H-B-9 | H Unit |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | C O T Blevins | | ✓ | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** A Class 1 Charge No #33 Using abusive, obscene or inappropriate language to an employee. A Class 1 Charge No #15 Threatening an employee or their family with bodily Harm.

**STAFF MEMBER'S VERSION** Upon making my rounds inmate John Joe called me over to his cell and started making false statements about officer Connor. I informed John Joe to write his Grievance and I will answer it. He then went off saying you Gray Hair Mother Fucker if you can't do your job I will write you up. He then informed officer Blevins to tell me that if I did not watch myself he would write someone and take my T.V's box off of me and said he would file a lawsuit against me.

SANCTION: 90 DAYS DC  10-29-2012 TO 1-26-2013

**IMMEDIATE ACTION TAKEN AND REASON** INVESTIGATED, NO FURTHER INQUIRY INDICATED. REFER TO HEARING EXAMINER DUE TO SERIOUSNESS OF CHARGES.

**PRE-HEARING CONFINEMENT** REMAIN IN PRESENT STATUS, INMATE INFORMED

IF YES

| ☐ YES | TIME | DATE |
|---|---|---|
| ☒ NO | Already confined | |

**REPORTING STAFF MEMBER SIGNATURE AND TITLE** C OTH ADn Webner

☒ REQUEST FOR WITNESSES AND REPRESENTATION    ☒ INMATE'S VERSION

**ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY    SIGNATURE AND TITLE** _____ COM

| DATE AND TIME INMATE GIVEN COPY | |
|---|---|
| DATE | TIME 24 HOUR BASE |
| 05-01-01 | 1630 |

FORMS GIVEN TO INMATE

**YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER**

| DATE | TIME |
|---|---|
| 050201 | 2200 |

**Misconduct Category**  ☒ CLASS I  ☐ CLASS 2

**Signature of Person Serving Notice** J. Saylor

**NOTICE TO INMATE**

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

JUL.16.2001   1:21PM                                    NO.343   P.12

| FORM **DC-141**   **PART I** | | COMMONWEALTH OF PENNSYLVANIA | | | **A** 318931 |
|---|---|---|---|---|---|
| Rev. 5-86 | | | | | |

☒ MISCONDUCT REPORT ☐ OTHER   DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| BQ 3219 | JAE  JOHN | GRN | 1925 | 5-01-01 | 5-01-01 |

| Quarters | Place of Incident |
|---|---|
| HB- #9 | H BLK  B POD  #9 CELL |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| STAFF | BLEVINS | | ✓ | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION**   SANCTION: 180 DAYS DC  4-21-2014 TO 10-17-2014

CLASS A ART. 35 REFUSING TO OBEY AN ORDER, CLASS A ART. 27 TATTOOING, OR OTHER FORMS OF SELF MUTILATION, CLASS B ART. 42 LYING TO AN EMPLOYEE

**STAFF MEMBER'S VERSION** AT THE ABOVE TIME AND DATE AND LOCATION WHILE MAKING A ROUND I/M JAE #BQ 3219 ADVISED ME THAT HE HAD CUT HIS WRIST AND WAS GOING TO SWALLOW A HAND FULL OF STAPLES. UPON LOOKING IN I/M JAES' CELL HE SHOWED ME WHAT APPEARRED TO BE DRIED BLOOD ON HIS WRIST. JAE THEN SHOWED ME A HAND FULL OF STAPLES WHICH HE THEN SWALLOWED AND DRANK A MILK CARTON FULL OF WATER. JAE THEN OPENED HIS MOUTH SHOWING THAT HE HAD SWALLOWED THE STAPLES. AT THIS TIME MEDICAL WAS CALLED AND THE RHU. LT. WARNER WAS NOTIFIED AND CAME TO JAES' CELL. JAE WAS GIVEN THE ORDER TO CUFF UP AND COME OUT OF HIS CELL TO BE TAKEN TO THE MEDICAL TRIAGE TO BE SEEN. JAE REFUSED TO CUFF UP AND COME OUT OF HIS CELL. CAPT. WINFIELD WAS NOTIFIED AND ATTEMPTED TO GET JAE TO COME OUT TO BE SEEN BY MEDICAL AND HE REFUSED

**IMMEDIATE ACTION TAKEN AND REASON** _(handwritten, illegible)_

**PRE-HEARING CONFINEMENT** _(handwritten, illegible)_

| | IF YES | | | |
|---|---|---|---|---|
| ☐ YES | TIME | DATE | ☒ REQUEST FOR WITNESSES AND REPRESENTATION   FORMS GIVEN TO INMATE | ☒ INMATE'S VERSION |
| ☐ NO | | | | |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| _D.F. Blevins_ | _J. C. ___ CSA_ | DATE 5-1-01 | TIME 24 HOUR BASE 21:37 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE 5-2-01 | TIME 1925 | ☒ CLASS 1   ☐ CLASS 2 | _(signature)_ |

**NOTICE TO INMATE**
You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/ examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be revoked.

WHITE - Inmate Clerk    PINK - Staff Member Reporting Misconduct    GOLDENROD - Deputy Superintendent

Case 1:00-cv-00015-SHR    Document 130    Filed 07/17/2001    Page 39 of 52

| FORM **DC-141** PART I | COMMONWEALTH OF PENNSYLVANIA | **A** 269614 |
|---|---|---|

Rev. 5-94
☐ MISCONDUCT REPORT ☐ OTHER    DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| BQ32 19 | JAE, JOHN | SCI GRN | 1945 | 5-01-01 | 5-01-01 |

| Quarters | Place of Incident |
|---|---|
| HB09 | "H" BLK "B" POD |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
|  | NURSE HARMON |  | ✓ |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

**MISCONDUCT CHARGE OR OTHER ACTION**   A. CLASS I CHARGE #1 ASSAULT

**STAFF MEMBER'S VERSION**   WHILE ESCORTING NURSE HARMON FOR PILL LINE, INMATE JAE (BQ3219) STATED THAT HE WILL ACCEPT HIS MEDICATION. INMATE JAE (BQ3219) THEN THROUGH HIS LIQUID MEDICATION ONTO MY RIGHT LOWER EXTREMITY. END OF REPORT.

SANCTION: 90 DAYS DC  7-31-02 TO 10-28-2012

**IMMEDIATE ACTION TAKEN AND REASON**   Place on restricted movement Due to seriousness hearing to be held. Hearing Exam Afran

| PRE-HEARING CONFINEMENT | | | ☑ REQUEST FOR WITNESSES AND REPRESENTATION | |
|---|---|---|---|---|
|  | **IF YES** | | FORMS GIVEN TO INMATE | |
|  | TIME | DATE | ☑ INMATE'S VERSION | |
| ☐ YES ☐ NO | AlREADY | Confined |  |  |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| CHUN ____ COT4 | RANKING C.O. ON DUTY  SIGNATURE AND TITLE | DATE | TIME 24 HOUR BASE |
|  | COL | 05-01-01 | 21 45 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE  5-2-01 | TIME  2000 | ☑ CLASS I  ☐ CLASS 2 | Taylor COL |

**NOTICE TO INMATE**

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

JUL.16.2001   1:20PM                                    NO.343   P.11

| FORM  DC-141    PART I | COMMONWEALTH OF PENNSYLVANIA | | | | **A 269655** |

Rev. 6-84

☒ MISCONDUCT REPORT ☐ OTHER     DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| BQ 3217 | JAE JOHN | SCI GRN | 0635 | 3-2-01 | 3-2-01 |

| Quarters | Place of Incident |
|---|---|
| H B 2 | H-Block   B-Pod |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| OTC. | BLAKE | ✓ | | | | | |
| | | | | | | | |
| | | | | | | | |

MISCONDUCT CHARGE OR OTHER ACTION CLASS I #38 Destroying or damaging Property
CLASS I #33 Using abusive Language.  CLASS I #15 Threating
an Employee with Bodily Harm

STAFF MEMBER'S VERSION    On This Date and Time Inmate, JAE BQ3217
Broke The Light in H B2. After this Inmate Jae stated
you Pussy mother Fucker I'm telling The Feds on you and
I'll have your SGT. Stripes you Dick eaten Bitch.
This Inmate used his Food Tray To Break the Cell Light

SANCTION: 270 DAYS DC   7-26-2013 TO  4-20-2014

IMMEDIATE ACTION TAKEN AND REASON  INVESTIGATED, NO FURTHER INQUIRY INDICATED.
REFER TO HEARING EXAMINER DUE TO SERIOUSNESS OF CHARGES.

PRE-HEARING CONFINEMENT

IF YES

|  | TIME | DATE |  |
|---|---|---|---|
| ☐ YES |  |  |  |
| ☐ NO | ALREADY | CONFINED | ☐ REQUEST FOR WITNESSES AND REPRESENTATION   FORMS GIVEN TO INMATE   ☐ INMATE'S VERSION |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| Smith W.S. C.o. II | | DATE | TIME 24 HOUR BASE |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS I  ☐ CLASS 2 | |
| 050301 | 3200 | | |

**NOTICE TO INMATE**

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

JUL.16.2001   1:20PM                                    NO.343   P.10

| FORM DC-141   PART I | COMMONWEALTH OF PENNSYLVANIA | | | A 269686 | |
|---|---|---|---|---|---|

Rev. 6-84

☑ MISCONDUCT REPORT ☐ OTHER    DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| BQ 3319 | JAE JOHN | GRN | 0650 | 5/2/01 | 5/2/01 |

| Quarters | Place of Incident |
|---|---|
| H15 2 | H B POD |

### OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

MISCONDUCT CHARGE OR OTHER ACTION   A Class 1 #15 Threatening An employee or Their family with bodily harm. Class 1 #38 Destroying or Damaging Property

STAFF MEMBER'S VERSION

While picking up trays inmate Jae BQ3319 started to this officer The first chance he got he was going to Kill me. At this time inmate Threw feces and urine around the cell.

SANCTION: 60 DAYS  12-17-2014 TO 2-14-2015

Misconduct was read. to inmate on 5-2-01  1102

IMMEDIATE ACTION TAKEN AND REASON  INVESTIGATED, NO FURTHER INQUIRY INDICATED. REFER TO HEARING EXAMINER DUE TO SERIOUSNESS OF CHARGES.

PRE-HEARING CONFINEMENT    REMAIN IN PRESENT STATUS. INMATE INFORMED.

| | TIME | DATE | |
|---|---|---|---|
| ☐ YES | | | FORMS GIVEN TO INMATE |
| ☐ NO | ALREADY | CONFINED | ☑ REQUEST FOR WITNESSES AND REPRESENTATION    ☑ INMATE'S VERSION |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY   SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY | |
|---|---|---|---|
| | | DATE | TIME 24 HOUR BASE |
| Blake COI | C.O. Martin Scott | 5-2-01 | 1102 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | Misconduct Category | Signature of Person Serving Notice |
|---|---|---|---|
| DATE | TIME | ☑ CLASS 1   ☐ CLASS 2 | COI M. Merlo |
| 050301 | 2200 | | |

### NOTICE TO INMATE

You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent, if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

WHITE —DC-15      YELLOW—Inmate Cited      PINK—Staff Member Reporting Misconduct      GOLDENROD—Deputy Superintendents

JUL.16.2001  1:19PM                                      NO.343  P.9

| FORM DC-141 Rev. 8-84  PART I | COMMONWEALTH OF PENNSYLVANIA | | A 269666 |
|---|---|---|---|

☒ MISCONDUCT REPORT ☐ OTHER    DEPARTMENT OF CORRECTIONS

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| BQ-3219 | Jae, John | GRN | 12:25 | 5-02-01 | 5-02-01 |

| Quarters | Place of Incident |
|---|---|
| H13-02 | Special Management Unit - R.H.U. |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | Dr. Rathore | X | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** Class A-1-15 Threatening an employee or their family with bodily harm. Class A-1-33 Using Abusive or Obscene language.

**STAFF MEMBER'S VERSION** This staff member was called to H-Block to see I/M Jae. He was making suicidal wounds and trying to convince staff that he needed to go to Psychiatric observation. Dr. Rathore, psychiatrist, was already informed of these behaviors. He did not see any need to place I/M Jae in P.O.C. Mr. Jae was informed of this. I/M Jae responded in a loud voice "You can tell that sand nigger that he's dead!" I terminated contact at this point and walked away. I/M Jae then continued yelling "and you're fucking dead too Mr. Valka!" - End of report

SANCTION: 180 DAYS DC  1-27-2013 TO 7-25-2013

**IMMEDIATE ACTION TAKEN AND REASON** INVESTIGATED, NO FURTHER INJURY INDICATED, REFER TO HEARING EXAMINER DUE TO SERIOUSNESS OF CHARGES, REMAIN IN PRESENT STATUS, INMATE INFORMED.

| PRE-HEARING CONFINEMENT | | |
|---|---|---|

| IF YES | TIME | DATE |
|---|---|---|
| ☐ YES ☐ NO | ALREADY | CONFINED |

FORMS GIVEN TO INMATE
☒ REQUEST FOR WITNESSES AND REPRESENTATION    ☒ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY    SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| Crin J. Valka - PSA | W. Marta COII | DATE 5-2-01    TIME 24 HOUR BASE 1305 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | |
|---|---|---|
| DATE | TIME | |
| 050301 | 2200 | |

Misconduct Category  ☒ CLASS I  ☐ CLASS 2

Signature of Person Serving Notice
E. Murray Jr.
E. Murray COI

**NOTICE TO INMATE**   Read to Inmate by EJ
You are scheduled for a hearing on this allegation on the date and the time indicated or as soon thereafter as possible. You may remain silent. If you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law if the matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class I misconduct, any pre-release status you have will be revoked.

WHITE —DC-15        YELLOW—Inmate Cited        PINK—Staff Member Reporting Misconduct        GOLDENROD—Deputy Superintendents

# EXHIBIT B

To:- Superintendent Blaine,
     SCI-Greene                          May 6, 2001

                Supt. Blaine, Sir,
                    I am writing & sending you this
letter to advise that Mr. Capozza & the
SMU staff are Illegally continuing to deny me
access to the court's freedom to correspond, Free
to practice the Religion of my choice and are
showing a deliberate indifference to my serious
medical and Dental Needs and discriminating against
me/denying me equal protection/treatment of the
law without the due process of the law, under the
1st, 8th & 14th Amendments of the U.S. Constitution,
and & they will not even let me have requests and
grievance forms to write such up on and that
is why I am writing such up on this Inmate ver
form / The facts concerning this matter are as
follows. on-5-01-01, I ~~~~~~~~ swallowed over 30
staples and threw my psych. meds. out my
cell door and received Misconduct Reports for such &
Capt. Gainey had me moved over to the Hard
cell #B2 because he was afraid I would hurt myself
if I was left in my SMU HB9 cell with my papers
and then on-5-02-01, I lost it again because c/o
Blake, my B2 officer, illegally denied me
Toilet Paper when I had none at all in my cell &
needed such and I smeared feces and urine all
over my cell door or floor & walls & broke my cell light
& threatened c/o Blake & Sgt. Smith & the psychiatric
& received 3 more Misconducts then and then later on
on-5-02-01, the psychiatrist said he felt that I
was not suicidal & then on-5-03-01, I had a hearing on
misconduct on all my misconducts I had received on 5-0
5-02-01 & was given Sanctions for such Misconducts.
          However Mr. Capozza still Illegally Refuses to make

May 18, 2001

Page Two

back to my HB9 cell once I was determined not to be suicidal by the Psychiatrist and to had all of my Misconducts Hearings held as he had down with every other Phase S inmate here while living moved to a hard cell in HB Bd when they had received misconduct reports) and Mr. Carezza also illegally refused to let me have all of my legal & religious correspondence materials property in my one (1) records center property box back here after my misconduct Hearings when I held as he has done with all other inmates here in HB Bd and this is a showing of discrimination and a denial of my U.S. Constitution 14th Amendment Rights to _____ equal protection treatment of the law without due process of law.

The illegal denial of my legal, religious & correspondence materials papers denies me my first amendment rights to have adequate, effective & meaningful access to the courts, to freedom of religion/right to possess religious materials & my rights to freely correspond (send & receive mail) without the due process of the law by the fourteenth amendment. Such denial also violate DC-ADM # 801 VI-m 3 & 5 of the Pa. Dept of Corrections and I have a court pleading filing dead line of May 9, 2001.

Mr. Carozza & the SMU staff have also interfered with and denied my prescribed medical & dental treatment/care to me and have shown a deliberate indifference to my serious medical & dental needs by denying me my doctor prescribed back brace for my curvature of the spine medical condition and my toothbrush & toothpaste to brush my teeth in violation of the 8th amendment and thus I request that you immediately upon receipt of this letter order Mr. Car return all of my legal, religious and correspondence

- page - three -

materials, my toothpaste & tooth brush, my
back brace, my SMU leisure library book &
other allowable cell property from my HB9 cell
back to me. Or to move me back to HB9 cell with
such and I also request that you immediately get
back to me in writing on this note letter &

Thank you very much &

John R. Doe
#BO-3219
SMU HB1 cell
on-5-06-01-

# EXHIBIT C

JUN.25.2001    1:11PM

**Commonwealth of Pennsylvania**
**Department of Corrections**
**S.C.I. Greene**
**(724) 852-2902**
**May 8, 2001**

**Subject:**    Behavioral Management Plan
        Re: John Jae, BQ-3219

**To:**    Mark Capozza
        SMU Unit Manager

**From:**    Eric Valko *[signature]* **Through:**    Marc Markiewicz, Ed.D.
        Psychological Services Associate        Licensed Psychological Manager

Inmate Jae is currently on property restriction in H/B-1 observation cell due to numerous aggressive, destructive, oppositional, and manipulative behaviors. The following is a list of property to be returned to inmate Jae following resolution of his most recent misconduct on May 7, 2001.

Day 1        Legal Work and Stationary / Back Brace
Day 2        Religious Materials
Day 3        Pillow
Day 4        Laundry Bag
Day 5        Blanket
Day 6        Return to lower tier regular cell / Hearing Aid

Return of property is contingent upon Mr. Jae's demonstration of appropriate behavior. He must refrain from behavior which could result in a misconduct, achieve positive block reports, and refrain from writing inappropriate requests/grievances.

Additionally, if positive behavior is maintained through his July PRC Review, he may request to be moved to A-Pod.

EV:MM/sl

cc:    File

*If inmate Jae receives subsequent misconducts, an Alternative Behavioral Management Plan may be developed.**

# EXHIBIT D

Page/form: one

BQ3219  H·B·9

| | |
|---|---|
| **Form DC-135A**<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | **Commonwealth of Pennsylvania**<br>**Department of Corrections**<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

1. To: (Name and Title of Officer)
MR. Capozza, SMU Unit Manager.

2. Date: 5-30-01

3. By: (Print Inmate Name and Number)
MR. John R. Joe #BQ-3219
_John oe Joe_
Inmate Signature

4. Counselor's Name
MR. Hoופס

5. Unit Manager's Name
MR. Capozza

6. Work Assignment
None

7. Housing Assignment
HB9

8. Subject: State your request completely but briefly. Give details.

We've got a problem, as I have to prepared have in the mail by no later than June ? 2001, my petition for writ of certiorari in my criminal case ~~~~ to got to be filed in the U.S. Supreme Court as such is due to be filed by no later than June 23, 2001, all that I do not have a court order stating this, such is regulated by the rules of the U.S. supreme court governing Petition's for writ of certiorari state such petition must be filed no later than 90 days from the judgment on the the court of appeals or the judgment's date of the U.S. Court of Appeals for the third circuit was entered on march 23, 2001.  Now the problem is that I cannot find the legal papers I need them out of my criminal case properly boxes here in the amount of a half time they allow me to have to go thru my preparation my 30 day exchange (usually only around 20 minutes) as such legal papers are scattered through the 8 boxes I have my criminal case papers that just am nearest the minute is the center that I got the an hour and 15 minutes to go

9. Response (This Section for Staff Response Only)

Mr. Jae,

I have spoke to Sgt. Neylon regarding this. — on 5-22-01 you ~~were~~ was ~~also~~ conducted a property exchange. He reported that his exchange was conducted in the P.R.C. room and lasted approximately 1 hr. So Surely, knowing what you needed, you would have retrieved the required documents. Additionally on 3-7-01, we spent approximately 1½ hrs in my office. with you separating legal/civil legal paperwork

To DC-14 CAR only ☐                To DC-14 CAR and DC-15 IRS ☐

Staff Member Name  M. Capozza  /  M. Sr oe  Date  5-31-01
Print                    Sign

Revised July 2000

Case 1:00-cv-00315-SHR   Document 139   Filed 07/17/2001   Page 51 of 52

BQ3219   H-B-9

| Form DC-135A | Commonwealth of Pennsylvania |
| --- | --- |
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   MR. Caprezo, SMU Unit Manager

2. Date: 5-30-01

3. By: (Print Inmate Name and Number)
   MR. John R. Doe #BQ-3219

   _John R. Doe_
   Inmate Signature

4. Counselor's Name
   MR. Harris

5. Unit Manager's Name
   MR. Caprezo

6. Work Assignment
   None

7. Housing Assignment
   HB9

8. Subject: State your request completely but briefly. Give details.

thru such criminal case property boxes of mine a that these three(2) ~~criminal~~ case property boxes of mine be placed in the SMU unit Law Library (with me the next time I go to the law library here on that you make whatever other special arrangement as you see fit to get this deal t with at the same care of here A.S.A.P. I need at least one week to write a prepare my petition to writ of Centorari. thanks.

Response to this Search by Staff Response Only

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
| --- | --- |

Staff Member Name _____ / _____ Date _____
                        Print                Sign

Revised July 2000

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                       :

       Plaintiff                        :

            v.                        :       No. 1:CV-00-0315

                       :

KENNETH D. KYLER, individually, and :     (Judge Rambo)
in his official capacity, et al.,       :

                       :     (Magistrate Judge Smyser)

       Defendants                       :

## CERTIFICATE OF SERVICE

    I, **Michael L. Harvey**, Senior Deputy Attorney General, hereby certify

that on this date I caused to be served the foregoing, **Defendants' Brief in**

**Opposition to Plaintiff's Motion for Court Order Requiring Prison Officials to**

**Return Plaintiff's Legal Materials and Provide Him with Writing Materials**, by

depositing a copy of the same in the United States Mail, postage prepaid, in

Harrisburg, Pa., addressed to the following:

**John Richard Jae, BQ-3219**
**SCI-Greene**
**175 Progress Drive**
**Waynesburg, PA 15370-2902**

                                       **MICHAEL L. HARVEY**
                                       **Senior Deputy Attorney General**

**DATE: July 21, 2001**