ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,

    Plaintiff

v.                                  No. 1:CV-00-0315

KENNETH D. KYLER, individually, and    (Judge Rambo)
in his official capacity, et al.,

                                             (Magistrate Judge Smyser)

    Defendants

## SURREPLY FOR DEFENDANTS

### INTRODUCTION

This is a civil action for damages brought pursuant to 42 U.S.C. §1983 by an inmate of a state correctional institution against corrections officials challenging his conditions of confinement. One of the pending motions before the Court is plaintiff's motion for an order requiring defendants to permit him to communicate with an inmate at another state correctional institution, Norman Johnston. Defendants opposed plaintiff's motion by memorandum and supporting documents filed June 18, 2001.

By order dated July 19, 2001, the Court disposed of several pending motions. With respect to plaintiff's motion to require defendants to permit him to communicate with Johnston, the Court reviewed the proposed declaration which

plaintiff seeks to send to Johnston and directed defendants to file a surreply addressing their position on permitting plaintiff to send the proposed declaration. This surreply is submitted in accordance with the Court's July 19 order.

**ARGUMENT**

Without conceding the merits of their position opposing plaintiff's motion, after review and discussion defendants are willing to propose a compromise in order to accommodate plaintiff's need and defendants' concerns. Because of the high security custody level of both plaintiff and Johnston,[1] defendants believe that unfettered communication between the two is contrary to the legitimate penological objectives of maintaining the security of the facilities in which these two inmates are incarcerated. Recognizing plaintiff's need, however, and in an effort to eliminate unnecessary decisions by the Court, defendants are willing on a one-time basis to make arrangements through the Administrative Assistants to the Superintendents of the two prisons involved so that plaintiff's declaration may be

---

[1] Besides his convictions for murder, Johnston escaped from the Restricted Housing Unit at SCI-Huntingdon in August 1999 and was at large for over two weeks before his recapture. According to the Pennsylvania Department of Corrections report investigating the escape, several breaches of policy occurred which facilitated the escape; however, Johnston demonstrated creativity in devising ways to avoid detection. See "Report Blames Security Missteps," Harrisburg Patriot News, January 20, 2000 (copy attached). The defendants' concerns about security for Johnston are well-founded.

2

delivered and presented to Johnston for his consideration and signature. In other words, if plaintiff delivers the proposed declaration to the Administrative Assistant at SCI-Greene, he will see that it is forwarded to the Administrative Assistant at SCI-Camp Hill for hand-delivery to Johnston. The process then would be reversed for the document to be returned to plaintiff.

In this way, plaintiff's need would be accommodated and defendants' security concerns would be satisfied with the least inconvenience to all concerned. Defendants make this proposal with the understanding that it would not be a blanket exception to the Department directive governing inmate to inmate correspondence, but as a one-time measure to address the interests of the parties in this case.

## **CONCLUSION**

For the above-stated reasons, the Court should enter an order approving defendants' proposed compromise solution on plaintiff's motion for order compelling defendants to permit communication with another state prisoner.

> Respectfully submitted,
>
> D. MICHAEL FISHER
> Attorney General
>
> BY: *[signature]*
> GREGORY R. NEUHAUSER
> Senior Deputy Attorney General
>
> FOR: MICHAEL L. HARVEY
> Senior Deputy Attorney General

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 783-6896
FAX: (717) 772-4526

DATE: August 6, 2001

```
                                                                    Page
Citation                  Search Result         Rank 15 of 24    Databas
1/20/00 HARPEN B01                                               ALLNEWS
1/20/00 Harrisburg (PA) Patriot & Evening News B01
2000 WL 9331421
```
**(Publication page references are not available for this document.)**

The Harrisburg Patriot
Copyright 2000

Thursday, January 20, 2000

Local/State

Report blames security missteps State believes policy breaches helped Johnston gain freedom
Associated Press

   A convicted quadruple murderer who led authorities on an 18-day manhunt this summer had planned his escape for at least a year, but his escape was made possible when four prison guards failed five times to discover his absence, a state report said.

   The Pennsylvania Department of Corrections has released its completed investigation into Norman Johnston's Aug. 2 escape from the most restrictive wing of the State Correctional Institution at Huntingdon, where he is serving life without parole for four murders. Johnston and his brothers ran a burglary and fencing ring in the 1970s.

   The 73-page document released this week cited numerous breaches of corrections policy, among which were four officers who failed five times in a nine-hour period to discover he was gone.

   It also provided details of Johnston's prison misconduct, evidence that two former SCI Huntingdon employees smuggled him contraband that included implements of escape, and documentation that the prison had tried unsuccessfully for 12 years to transfer the 48-year-old to another facility.

   Officials believe Johnston escaped from his first-floor cell shortly after 1 a.m. He had removed several security screws, a wire mesh screen, and a previously cut 7/8-inch diameter window bar. He then broke an outside glass window, climbed through a 1-foot wide by 4-foot tall opening, and used strips of his bed sheet to tie the bar back together to create the appearance that the window was in place.

   Johnston ran along the wall, cut through a fence, crawled under a roll of razor wire, sawed through another fence, and ran around the back of the facility before stealing a vehicle parked in front of a residence and fled the area.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Case 1:00-cv-00315-SHR   Document 143   Filed 08/06/2001   Page 6 of 8

1/20/00 HARPEN B01                                                    Page
(Publication page references are not available for this document.)

   It is unknown how long the entire process took, authorities said.

   Although officers are required to document "flesh and movement" when checking cells at night, Johnston had outsmarted the officers by: Constructing a lifelike dummy out of stuffed bread bags and pillow cases and real human hair. He covered it with a blanket and placed it in a fetal position facing the wall of his cell. At 6 a.m., when breakfast was served, officials simply passed Johnston by. At 10 a.m. "standing count" was also overlooked, reportedly because inmates often refused to comply with the order to stand, choosing instead to remain in bed. Between 10 and 10:30 a.m. corrections staff served the lunch meal, which Johnston once again failed to acknowledge. DOC officials criticized this practice as a "missed opportunity for staff assessment of an inmate's current status."

   Finally, at about 10:35 a.m., two officers entered the cell and discovered the dummy.

   More than one hour earlier, a labor foreman supervising a grass-mowing detail was notified by one of the inmates of a hole in the west fence. Even then, sirens were not sounded.

   Despite all the mistakes in security that day, the DOC report stated that Johnston's escape could have been avoided.

   On June 24, 1999, Johnston refused a change-of-cell assignment, receiving a misconduct for his refusal. Staff members at the time allowed Johnston to remain there to avoid a physical confrontation but failed to execute a search of the cell for precautionary purposes.

   "It is surmised that Johnston was engaged in the pre-escape bar cutting at this time and accepted a misconduct rather than suffer the loss of his invested efforts," the report said.

   After Johnston's escape, a search of his previous cell at the facility also revealed a partially cut bar. Johnston had resisted moving from that cell but had been moved anyway, according to the report.

   Record-keeping at the facility also proved troublesome, investigators said.

   Officials could not effectively determine the date of the last search of Johnston's cell, but an inventory after the escape indicated it had been some time. There were 19 prohibited items, ranging from salt packets to broken spoon handles to a 2 1/2-foot braided rope, were recovered in his empty cell.

              Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1/20/00 HARPEN B01
**(Publication page references are not available for this document.)**

Johnston was transferred to SCI Huntingdon from SCI Graterford in 1987 as a high-risk inmate and to separate him from his brother. Authorities tried to transfer him as part of a general effort to keep inmates from learning the layout of their facility. But because Johnston had to be separated from 22 other inmates at 13 different institutions, each transfer petition was returned without action by the department's central office.

After nearly three weeks on the lam, mostly in southern Chester County, Johnston was apprehended in Mendenhall and returned to custody at the state prison near Camp Hill.

Prosecutors in Huntingdon County are pressing a single felony escape charge against Johnston, who is serving a life sentence. A hearing on pretrial motions, including a change of venue request, is scheduled for March 1.

TABULAR OR GRAPHIC MATERIAL SET FORTH IN THIS DOCUMENT IS NOT DISPLAYABLE

Photo

---- INDEX REFERENCES ----

NAMED PERSON:        JOHNSTON, NORMAN

KEY WORDS:           PENNSYLVANIA; REPORT; PRISON

REGION:              Pennsylvania; Eastern U.S.; United States; North America (PA
USE US NME)

EDITION:             FINAL

Word Count: 781
1/20/00 HARPEN B01
END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,              :
                               :
        Plaintiff              :
                               :
   v.                          :        No. 1:CV-00-0315
                               :
KENNETH D. KYLER, individually, and :    (Judge Rambo)
in his official capacity, et al.,   :
                               :        (Magistrate Judge Smyser)
        Defendants             :

### CERTIFICATE OF SERVICE

I, Gregory R. Neuhauser, Senior Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing, Surreply for Defendants by depositing a copy of the same in the United States Mail, postage prepaid, in Harrisburg, Pa., addressed to the following:

John Richard Jae, BQ-3219
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370-2902

_____
GREGORY R. NEUHAUSER
SENIOR DEPUTY ATTORNEY GENERAL

**DATE: August 6, 2001**