(149)

8-28-0

SC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :
                                     :
                                     :
           v.                        :        No. 1:CV-00-0315
                                     :
KENNETH D. KYLER, individually, and :        (Judge Rambo)
in his official capacity, <u>et</u> <u>al.</u>,        :
                                     :        (Magistrate Judge Smyser)
           Defendants                :

**FILED
HARRISBURG**

**AUG 2 7 2001**

MARY E. D'ANDREA, CLER
Per_____
DEPUTY CLERK

## MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL

### INTRODUCTION

This is a civil rights action brought pursuant to 42 U.S.C. §1983 by John

Richard Jae, a prisoner in a state correctional institution, complaining that legal and

religious materials were taken from him and that he was subject to cruel and unusual

conditions of confinement.

On or about April 22, 2001, Jae served a second set of interrogatories and a

third request for production of documents. On June 1, 2001, defendants served a

response to the interrogatories. Defendants objected to one interrogatory, No. 18,

requesting the prison address of inmate Robert Adams. A copy of defendants'

response to plaintiff's second set of interrogatories is attached hereto as Exhibit A.

On the same day, defendants responded to plaintiff's third request for production of

documents.  No objections were made to this request.  A copy of the response to the document request is attached hereto as Exhibit B.

On June 18, 2001, the documents identified in defendants' response to plaintiff's request for production of documents were produced for Jae's inspection. This production included all pages of plaintiff's inmate request of November 28, 1999.  Attached here as Exhibit C is the inmate request which was produced. Plaintiff's letter of November 30, 1999 was also produced.  Some of the words along the edges of plaintiff's letter to Mr. Beard were cut out in copying, but this is because Jae left no margins in his letter.  A copy of the letter produced is attached hereto as Exhibit D.  Through a mistake, however, several documents were not produced at the time:  (1)  the written reply to plaintiff's request to then Executive Deputy Secretary Jeffrey Beard; and (2)  the Program Review Committee Periodic Reviews for December 1999, January 2000, February 2000 and March 2000.

Dan Davis, the litigation coordinator at the State Correctional Institution at Greene, informed this counsel of the error in a letter received on June 22, 2001. Attached hereto as Exhibit E is the letter from Mr. Davis.  These documents were subsequently produced the week of July 16, 2001.  Attached hereto as Exhibit F is the counsel's letter to Mr. Davis sending the documents with Davis' handwritten note stating that Jae reviewed the documents.

-2-

Jae filed a motion to compel and supporting brief on June 27, 2001.  In his motion and brief plaintiff seems to request that this court compel defendants to provide him with (1) the current prison address of Robert Adams; (2) the program review committee's periodic reviews for December 1999, January 2000, February 2000 and March 2000; (3) the written response to his letter to Mr. Beard; (4) the complete inmate request dated November 25, 1999; and (5) plaintiff's letter to Mr. Beard without letters in the margin cut off.  This memorandum is submitted in opposition to plaintiff's motion.

## ARGUMENT

As an initial matter, plaintiff's request to compel production of the program committee reviews and the written response to his letter to Mr. Beard is now moot, since he has been provided with these documents.  See Exhibit F.  Likewise, defendants have produced the entire request slip of November 28, 1999.  See Exhibit C.

Defendants concede that some of the letters in plaintiff's letter to Mr. Beard were cut off.  As shown in Exhibit D, however, the loss is slight and it is the best that could be done given the fact that plaintiff failed to leave margins.

As for the prison address of Robert Adams, defendants' objections should be sustained because the requested information is both not relevant and privileged.  It

-3-

is irrelevant because Jae has made no showing whatsoever as to why he needs this information. He has not stated what information Mr. Adams has about the issues of the case. Even, assuming that Mr. Adams has knowledge of relevant matters, it is unclear why plaintiff needs his address. Without permission Jae cannot write to Mr. Adams. Nor is Mr. Adams' address needed to secure his presence at trial. See Beard Declaration, attached as Exhibit G, ¶10.

In addition, this information is protected by governmental privilege. The governmental privilege, sometimes referred to as the deliberative process, executive, or law enforcement privilege, protects documents who disclosure would "seriously hamper the function of government." Siegfried v. City of Easton, 146 F.R.D. 98, 101-02 (E.D. Pa. 1992); Clark v. Township of Falls, 124 F.R.D. 91, 92 (E.D. Pa. 1988); Frankenhauser v. Rizzo, 59 F.R.D. 339, 342 (E.D. Pa. 1973). The governmental privilege is a qualified privilege, which must be evaluated on a case-by-case basis. United States v. O'Neill, 619 F.2d 222, 230-31 (3d Cir. 1980); Frankenhauser, 59 F.R.D. at 342. In each case that the privilege is claimed, the court is required to balance the public interest in having the information remain secret against the litigants' need to obtain discovery. Id.; Clark, 124 F.R.D. at 93 ("[T]he privilege is not absolute, and should be upheld only if the damage to the executive

department or the public interest outweighs the harm to plaintiffs from nondisclosure").

To support a claim for the governmental privilege, at least three requirements must be fulfilled. O'Neill, 619 F.2d at 225. "The head of the agency claiming the privilege must personally review the material, there must be 'a specific designation and description of the documents claimed to be privileged,' and there must be 'precise and certain reasons for preserving' the confidentiality of the communications. Usually such claims must be made by affidavit." Id. at 226 (quoting Smith v. Federal Trace Comm'n, 403 F. Supp. 1000, 1016 (D. Del 1975)).

Here, as set forth in the Declaration of Jeffrey A. Beard, attached as Exhibit G, the Secretary has considered the information sought and believes its disclosure would jeopardize security. An inmate with information about the prison location of another inmate could arrange an attack on that inmate by communicating through a third person outside the prison system. Beard Declaration ¶7.

That danger when balanced against the marginal relevance of the information sought weighs in favor of recognizing the privilege here. Courts have recognized in other context that "considerable deference" should be afforded prison officials, Thornburgh v. Abbot, 490 U.S. 401, 407-08 (1989), who have "the expertise and the primary authority for running [state prisons]." Jones v. North Carolina Prisoners'

-5-

Labor Union, Inc., 433 U.S. 119, 137 (1977)(Burger, C.J., concurring).  This court

should uphold the privilege.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel should be denied.

**Respectfully submitted,**

**D. MICHAEL FISHER**
**Attorney General**

BY: _____

**MICHAEL L. HARVEY**
**Senior Deputy Attorney General**
**I.D. No. 30098**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**Office of Attorney General**
**Litigation Section**
**15th Floor, Strawberry Square**
**Harrisburg, PA  17120**
**(717) 783-6896**

**DATED:  August 27, 2001**

**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,         :
                    :

       **Plaintiff**      :
                    :

        v.             :     No. 1:CV-00-0315
                    :

KENNETH D. KYLER, individually, and :     (Judge Rambo)
in his official capacity, <u>et al.</u>,       :
                    :     (Magistrate Judge Smyser)

       **Defendants**     :

### DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Defendants, by their counsel, respond to plaintiff's second set of interrogatories as follows:

1. State the duties of Defendant Lt. William J. Rhoades, as RHU Lt./Unit Manager, State Correctional Institution at Camp Hill ("SCI- Camp Hill"). If those duties are set forth in writing in any job description or other written document, attach a copy of such to your answers to these interrogatories.

**RESPONSE** See job description for Corrections Officer 3 and Corrections Unit Manager, attached hereto

2. State the duties of Defendant Glenn W. Rubendall as the RHU Property Officer, State Correctional Institution at Camp Hill ("SCI-Camp Hill"). If those duties are set forth in any job description or other document in writing, attach a copy of such to your answers to these Interrogatories.

**RESPONSE:** See job description for Corrections Officer 1, attached hereto.

3.     On November 23, 1999, or at any other time in November and/or December,

1999, did Defendant Lt. Rhoades tell/order then RHU Property Officer Charlie Craig and/or

RHU Sgt. Pyles not to give the plaintiff his own personal soft cover law books and/or religious

books (other than a Bible) from his property boxes in the RHU property room?

**RESPONSE:** No.

4.     If your answer to Interrogatory No. 3 is yes,

a.     State in detail why Defendant Lt. Rhoades told/ordered Off. Craig and/or

Sgt. Pyles such.

**RESPONSE:** Not applicable.

5.     On April 28, 2000, did Defendant Off. Rubendall return any of the plaintiff's

personal property to him, that he'd been removed from the plaintiff's RHU B2-57 cell on April

24, 2000?

**RESPONSE** Yes.

6.     If your answer to Interrogatory No. 5 is yes,

a.     State in detail the items Defendant Off. Rubendall returned to plaintiff on

April 28, 2000.

**RESPONSE:** According to the property officer notes, the following items were returned to

plaintiff on April 28, 2000:  2 shorts, 2 under shirts, 1 pair of shower shoes, 1 pair of socks, 9

inches of legal papers, 8 law books, 1 pen, and 1 handbook.

7.     Was Defendant Officer Rager aware that Defendants Dragovich and Palakovich

had ordered that the plaintiff be immediately given back the remainder of his legal, religious and

other property that had been removed from his RHU B2-57 cell on April 24, 2000; on May 2 and

2



3, 2000, respectively?

**RESPONSE:** No, defendants Dragovich and Palakovich did not order that the remainder of plaintiff's property be immediately returned to him.

  8. If your answer to Interrogatory No. 7 is yes,

    a. State the date Off. Rager became aware of such orders;

    b. State in detail why Off. Rager did not comply with such orders until May 12, 2000.

**RESPONSE:** Not applicable.

  9. Is it not true that back in January, 2000, the prison Chaplain, Rev. Vogel had to conduct an investigation into why the plaintiff was not receiving his personal religious materials from his property in the SCI-Camp Hill RHU property room, based upon a letter of complaint which this plaintiff had written and sent to then Executive Deputy Security of Corrections Dr. Jeffrey A. Beard?

**RESPONSE:** No, there was no investigation into why plaintiff was not receiving his religious materials in January, 2000.

  10. What date in November of 1999, did this plaintiff first come to the RHU at SCI-Camp Hill?

**RESPONSE:** November 19, 1999.

  11. What date in November, 1999, did the plaintiff first get to go thru his personal property in the RHU property room at SCI-Camp Hill?

**RESPONSE:** November 26, 1999.

  12. Was Defendant Palakovich a member of the SCI-Camp Hill Program Review

3

Committee ("SCI-Camp Hill Pro") back on December 1, 1997?

**RESPONSE:** Yes.

13.    Was the SCI-Camp Hill plumbers and inmate plumbing workers ever over in the RHU working on the heating system in the RHU at any time(s) at all during the months of November and December 1999?

**RESPONSE:** No.

14.    If your answer to Interrogatory No. 13 is yes, please state each of the date(s) he/they were in the SCI-Camp Hill RHU working on the RHU heating system.

**RESPONSE:** Not applicable.

15.    If the RHU property officer's notes and/or plaintiff's DC-153 inmate personal property inventory form reflect that this plaintiff received property on a certain date, could such not meant that this was something legal and/or religious which came in thru the U.S. Mail for him and was sent to the RHU property officer for disposition and that the date indicated was when the RHU property officer gave such to plaintiff at his cell?

**RESPONSE:** The inmate's personal property inventory form does not reflect the date property arrives in the mail, but the date in which the property is given to the inmate in his cell.

16.    If the plaintiff received a box or package of religious or legal material and/or books through the U.S. Mail would such usually be sent to the RHU Property Officer for disposition?

**RESPONSE:** Yes.  Correspondence, however, is delivered to the inmate.

17.    Is it true that back in November, 1999, - May 31, 2000, that if an inmate at SCI-Camp Hill filed a grievance and such grievance was rejected by the Grievance Coordinator for

4

whatever reason and such grievance was then returned back to the inmate unprocessed and

without any grievance no. being assigned to such grievance that the prison Grievance

Coordinator would not have any way to track such a grievance?

**RESPONSE:** Yes.

18.    What is the present location and full prison address of inmate Robert Adams,

#CQ-2185?

**RESPONSE:** Defendants object to this interrogatory because it seeks information which is

privileged and not relevant to the subject matter of this action.

                              **Respectfully submitted,**

                              **D. MICHAEL FISHER**
                              **Attorney General**


                    **BY:**  _[signature]_
                              **MICHAEL L. HARVEY**
                              **Senior Deputy Attorney General**

                              **SUSAN J. FORNEY**
                              **Chief Deputy Attorney General**
                              **Chief, Litigation Section**


**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**PHONE:  (717) 783-6896**
**FAX:  (717) 772-4526**

**DATE: June 1, 2001**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                      :
                                       :
     Plaintiff,                     :      No. 1: CV-00- 0315
                                       :
      v,                           :
                                       :
                                       :      (Judge Rambo)
KENNETH D. KYLER, individually,        :
and in his official capacity, et al.,  :      (Magistrate Judge Smyser)
                                       :
     Defendants.                    :

### VERIFICATION

    I, Ben C. Livingood, hereby state under penalty of perjury, that I have reviewed the

foregoing Defendants' Response to Plaintiff's Second Set of Interrogatories and the answers set

forth therein are true and correct to the best of my knowledge, information and belief.

                                          *Ben C. Livingood*

                                          Ben C. Livingood

Executed on __6/1/01__

 

CORRECTIONS OFFICER 1                                    4721

<u>Definition</u>:  This is journeyman level work in the custody, supervision, and non-professional counseling of inmates at a state correctional institution or facility on an assigned shift.

An employe in this class directs inmate activities in cellblocks, housing units, cottages, work areas, dining and recreation areas; observes inmates from towers, in corridors or in visiting areas ensuring security is maintained and institution rules are adhered to; and provides advice and guidance in assisting inmates in their adjustment to and participation in correctional processes.  Work varies from duties where there is direct involvement with inmates to work where there is limited contact with inmates and visitors.  Direct supervision is normally received and work is reviewed for adherence to institution rules and procedures.

<u>Examples of Work:</u>  Inspects inmate living areas for cleanliness, contraband or stolen goods and escape implements, plans or procedures.
    Observes inmate behavior, looking for signs of duress or escape.
    Quells disturbances and reports inmates involved.
    Informs inmates of changes in rules and regulations and answers their questions.
    Maintains security during exercise and recreation periods.
    Administers first-aid to inmates or other employes when necessary, ensures injured person is taken to dispensary.
    Signs visitors in and out of visiting areas, searches visitors and ensures inmates do not receive contraband.
    Issues laundry, supplies, and clothing to inmates.
    Supervises inmates in dining hall to ensure they are fed in an orderly manner and to maintain security during meal periods.
    Assists other officers in emergency situations.
    Controls access to and egress from inmate cellblocks, cottages, and housing unit
    Moves groups of inmates in an orderly manner from one area of the institution to another.
    Guards inmates during showers to ensure they take showers and do not cause disturbances.
    From guard towers, observes the institution complex ensuring there are no escapes, fires or suspicious persons.
    Checks inmate passes and records inmate movements in and out of an area.
    Operates electronic equipment which opens and closes doors allowing entrance or exit to institution or cells.
    Patrols cellblock area and housing units to ensure there are no fire hazards, suspicious occurences and to ensure inmate living areas are suitable.
    Escorts inmates to community hospitals, court, and special activities.
    Instructs inmates on personal hygiene and general housekeeping duties.
    Performs related work as required.

<u>Required Knowledges, Skills, and Abilities:</u>  Knowledge of Bureau of Corrections and institution's rules, regulations, and procedures.
    Knowledge of the principles of inmate supervision.
    Knowledge and understanding of inmate resocialization procedures.
    Knowledge of individual and group behavior patterns.
    Knowledge of search and inspection procedures.
    Knowledge of basic first-aid practices.

STATE CORRECTIONAL INST.
CAMP HILL, PA

JUL 2 2 1980

RECEIVED

Knowledge of housekeeping activities.
Knowledge of security and fire safety practices.
Skill in the use of firearms.
Ability to cope with crisis situations.
Ability to follow orders explicitly.
Ability to empathize with persons from different backgrounds.
Ability to read, write, and speak English effectively.
Ability to direct the activities of inmates under restraint in an understanding and effective manner.
Ability to observe and report changes in inmate personality, demeanor, attitude and degree of program participation.
Ability to remember names and faces.
Ability to pass a physical examination administered by the Bureau of Correction.

<u>Minimum Experience and Training</u>: One year of experience as a Corrections Officer Trainee

or

One year of experience in corrections security work in a Pennsylvania state or county corrections institution.  (Note: Persons seeking employment under this option may be required to undergo a training program conducted by the Bureau of Correction.)

JUN 80

# JOB DESCRIPTION

| 1. Name of Employe (Last, First, MI) | | | 2. Employe Number | Position Number |
|---|---|---|---|---|
| **RHOADES, William J.** | | | **029574** | **224314** |

| 3. Department | Bureau | Division | Headquarters | Organization |
|---|---|---|---|---|
| Corrections | | | SCI Camp Hill | |

| 4. Class Title | Working Title |
|---|---|
| Corrections Officer 3 | Lieutenant |

**5. Regular Work Schedule**

Start Time: 0600   Lunch Length: *

End Time: 1400   Hours/Week: 40

*As Permitted

**Position is:**

√ Full Time    √ Permanent

Part-Time    Temporary

Reports to:  Name          Class Title
Robert E. Stotelmyer   Corrections Officer 4
Gerald E. Kerstetter   Corrections Officer 4

Explain any schedule variations:

Rotating Days Off

Days Worked (check all that apply):

| S | M | T | W | Th | F | S |
|---|---|---|---|---|---|---|
| √ | √ | √ | √ | √ | √ | √ |

**6. Describe the work assigned to this position, listing the critical duties and responsibilities first. Explain work in familiar terms and include machine or equipment used. Use Additional paper if needed.**

A Corrections Officer 3, functioning in a Class 5 State Correctional Institution, with a population exceeding 3,000 inmates, assigned to the RHU on the 6-2 shift. Duties will include the following:

Planning and implementing the daily function of the RHU. Directing the work force assigned to the RHU. Ensure security practices, formal and informal, are adhered to in the operation of the RHU. Ensure Pennsylvania Department of Corrections and institutional policy, procedures, rules and regulations governing the RHU and institutional funtions are followed and adhered to.

Develop and institute new guidelines an ppolicies, as needed, to direct new functions of officers' duties assigned to the RHU or to cover new areas of responsibility in the RHU. Develop and institute new guidelines in existing guidelines or policy.

Observe inmate behavior for possible irregular or negative behavior patterns, and determine a course of action to solve such problems.

Participate in non-professional counseling of inmates or situational problems associated with institutional adjustment, including matters of a personal nature.

Observe and report changes in personality, demeanor, and degree of problem participation.

Supervise on a periodic basis inmate counts in the RHU.

Investigate and report all infractions of inmates housed in the RHU and help develop a course of action to solve such infractions.

Receive grievances and complaints, conduct initial investigations into the causes and circumstances surrounding the grievance or complaint, and develop a course of action to resolve the grievance or complaint.

Prepare daily reports on activities. Evaluate subordinate officers on their work performance and conduct within the scope of the Pennsylvania Department of Corrections Code of Ethics.

Supervise special or investigative searches in the RHU for presence of contraband.

Participate in 30 day reviews of RHU inmates as a member of the Unit Management Team.

- Continued -

7. Briefly describe how work is assigned to this position and how the work is reviewed.

The 6-2 Shift Commander(s) supervises the RHU Corrections Officer 3 and the Major of the Guard administers the RHU. The Shift Commander(s) assigns general and specific duties outside the normal daily function duties assigned for this area of responsibility. The Shift Commander(s) will make daily inspections of the RHU and review duty assignments of the assigned Corrections Officer 3 to the RHU.

8. If this is a supervisory position, briefly describe how work is assigned to subordinate personnel and how their work is reviewed. (If this is not a supervisory position, leave blank)

The assigned Corrections Officer 3 in the RHU supervises the daily functions, formal and informal, of subordinates assigned to the RHU for their duty assignment. The RHU Corrections Officer 3 is responsible for reviewing all work performed by subordinates in the RHU.



9. Attach an Organizational Chart identifying all reporting relationships for this position.

10. Attach a statement identifying the essential functions of the positions.

I certify that to the best of my knowledge all statements contained within the job description are correct. This job description consists of _____ pages (count this form as 1 page).

| | | |
|---|---|---|
| Employee's Signature _William J. Rhodes_ | Class Title ____CO3 Lieutenant___ | Date _7/22/99_ |
| Immediate Supervisor's Signature _Pikustillo   cole_ | Class Title ____CO4 Captain___ | Date _7/20/99_ |
| Reviewing Officer's Signature _nnison_ | Class Title ____CO5 Major of the Guard__ | Date _7/20/99_ |

To be completed by the classifying authority

Approved Position Classification  _Corrections Officer 3_

Reviewer's Approving Signature  _Jh R Kome_                    Date _7-26-99_

_Input on JCS 8/17/99_
_MTB_

**DESCRIPTION OF DUTIES CONTINUED**
RHOADES, William J.
Employee #029574

Develop recommendations for review by the Program Review Committee on inmates' conduct while housed in the RHU.

Issue discipline up to a written reprimand and recommend further disciplinary action to my supervisors. Participate in Pre-Disciplinary Conferences and recommend discipline, as needed.

Attend monthly Commissioned Officers' meetings.

# JOB DESCRIPTION

| 1. Name of Employe (Last, First, MI) | | | | 2. Employe Number | | Position Number |
|---|---|---|---|---|---|---|
| ████████ | | | | ████ | | 170843 |

| 3. Department | Bureau | Division | Headquarters | Organization |
|---|---|---|---|---|
| Corrections | | | SCI Camp Hill | 1500 |

| 4. Class Title | Working Title | Class Code |
|---|---|---|
| Corrections Unit Manager | | 47470 |

**5. Regular Work Schedule**

| | | | | |
|---|---|---|---|---|
| Start Time: | 0800 | Lunch Length: | 30 Min. | |
| End Time: | 1630 | Hours/Week: | 40 | |

**Position is:**

| √ | Full Time | √ | Permanent |
|---|---|---|---|
| | Part-Time | | Temporary |

**Reports to:** Name: J. R. Carey  Class Title: Major of the Guard

**Days Worked (check all that apply):**

| S | M | T | W | Th | F | S |
|---|---|---|---|---|---|---|
| | √ | √ | √ | √ | √ | |

**Explain any schedule variations:** As Directed

**6.** Describe the work assigned to this position, listing the critical duties and responsibilities first. Explain work in familiar terms and include machine or equipment used. Use Additional paper if needed.

Ensure the Department of Corrections, institution's, and unit's mission, administrative directives and policies are properly enforced. Also, issue interpretation of administrative directives and mission statement whenever confusion arises.

Maintains and updates Unit Manager's manual including directives, policies and procedures that are unique to a specific unit.

Makes daily rounds and inspections of the unit to ensure the proper security and treatment procedures are being implemented. Ensure that staff are alert and adhere to institution and unit policies and procedures, taking into consideration unit maintenance, medical services, treatment programs, food services, unit cleanliness, inmate activities and privileges.

Responsible for the total effective unit operation by supervising Sergeants, CO1's, all assigned treatment staff, and approximately 200 to 250 inmates. Supervision includes input in evaluating job performance.

Develop and maintain programs specific to the unit's purpose taking into consideration security practices, inmate needs, institutional and departmental primary objectives of care, custody and control of inmates.

Stay abreast of new and changing correctional ideas and philosophies.

Resolve inmate grievances at the first step, if possible, or submits them to the Grievance Coordinator for further action.

Assist in formal counseling of inmates with adjustment problems as per established Department of Corrections, institutional and unit policy.

Submits bi-monthly reports to the Major of Unit Management using established forms.

Attends weekly Unit Manager meetings to discuss unit problems and to coordinate various programs with other Unit Mangers.

Plan, organize and assign duties to subordinate staff relative to their assignments in the housing units.

Conduct regular security, safety, and fire inspections of each housing unit to include cell searches and complete cell block searches.

- Continued -

7. Briefly describe how work is assigned to the position and how the work is reviewed.

The Major of Unit Management assigns work with added direction via the telephone or on an as needed basis. The Deputy Superintendent conducts regular inspections of the housing units to ensure that directives, policies, procedures and orders are followed and carried out.

8. If this is a supervisory position, briefly describe how work is assigned to subordinate personnel and how their work is reviewed. (If this is not a supervisory position, leave blank)

Work is visually monitored of the subordinates' work post. Supervision is done by writing memorandums, conducting meetings, and reviewing misconducts, incident reports, and work orders completed by subordinates. Conduct regular housing unit tours and inspections to ensure staff are performing their duties according to institutional and departmental policy. Evaluate staff on their job performance through annual performance evaluation reports.

9. Attach an Organizational Chart identifying all reporting relationships for this position.

10. Attach a statement identifying the essential functions of the positions.

## CERTIFICATION

I certify that to the best of my knowledge all statements contained within the job description are correct. This job description consists of _____ pages (count this form as 1 page).

Employee's
Signature ███████████    Class
Title _Unit Manager_    Date _5-2-01_

Immediate Supervisor's
Signature ███████████    Class
Title _Major of the Guard_    Date _5-02-01_

Reviewing Officer's
Signature ███████████    Class
Title _Deputy Superintendent_    Date _5-21-01_

| To be completed by the classifying authority |
|---|

Approved Position Classification    _Corrections Unit Manager_

Reviewer's Approving Signature ███████████    Date _5-8-01_

DESCRIPTION OF DUTIES CONTINUED
STEVENS, Robert C.
Employee # 069538

Review misconducts, incident reports, work orders and internal store orders before they are processed

Conduct fact findings and issue discipline up to a written reprimand or recommend a Pre-Disciplinary Conference, depending on the severity of the offense.

Participate in Pre-Disciplinary Conferences and recommend discipline, as needed.

Investigate Union grievances relative to your area of responsibility for presentation at local grievance hearings.

Any other duties as assigned by the Major of Unit Management, Deputy Superintendent or Superintendent.

Any related duties as assigned.

JOB DESCRIPTION CONTINUED



 

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :
                                     :
           **Plaintiff**            :
                                     :
    v.                             :    No. 1:CV-00-0315
                                     :
KENNETH D. KYLER, individually, and :    (Judge Rambo)
in his official capacity, et al.,    :
                                     :    (Magistrate Judge Smyser)
           **Defendants**          :

## CERTIFICATE OF SERVICE

    I, Michael L. Harvey, Senior Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing, Response to Plaintiff's Second Set of Interrogatories by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, Pa., addressed to the following:

John R. Jae, #BQ-3219
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370-2902

                                                              **MICHAEL L. HARVEY**
                                                              **SENIOR DEPUTY ATTORNEY GENERAL**

**DATE: June 1, 2001**

**EXHIBIT B**

 

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                            :
                                             :
              Plaintiff                      :
                                             :
     v.                                      :      No. 1:CV-00-0315
                                             :
KENNETH D. KYLER, individually, and :       (Judge Rambo)
in his official capacity, et al.,            :
                                             :      (Magistrate Judge Smyser)
              Defendants                     :

## DEFENDANTS' RESPONSE TO PLAINTIFF'S THIRD REQUEST
## FOR PRODUCTION OF DOCUMENTS

Defendants, by their counsel, hereby respond to plaintiff's third request for production of documents as follows:

1.      Any and all request forms written by plaintiff Jae and sent to defendants Kyler and/or Palakovich, during the months of November and December, 1999, about the denial of his own personal law books and religious materials, showers and outside exercise in the RHU and/or about excessive heat/poor ventilation problems in the RHU and/or about the plexiglass shield being placed over the plaintiff's RHU cell door.

**RESPONSE:** Defendants will produce plaintiff's written request to Defendant Palakovich in November and December 1999.  None exist for Defendant Kyler.

2.      Any and all letters which the plaintiff wrote and sent to Executive Deputy Secretary of Corrections Beard and/or to Deputy Secretary of Corrections William Love, concerning the denial of his own personal law books and religious materials, showers and outside exercise in the SCI-Camp Hill RHU and/or about excessive heat/poor ventilation problems in the RHU and/or about the plexiglass shield being placed over the plaintiff's RHU cell door, back in

November and/or December, 1999 and the written replies sent to this inmate/plaintiff on each of

such letters.

**RESPONSE:** Defendants will produce plaintiff's written request to Beard, Secretary of

Corrections.  No letters to Love from plaintiff were found.

       3.     A copy of each of the DC-141 Part III 30 day Periodic PRC Review papers on this

plaintiff for the months of December, 1999, and January, February, March, April and May 2000.

**RESPONSE:** Defendants will produce plaintiff's Program Review Committee's Periodic

Reviews from December 1999 to May 2000.

       4.     An entire copy of the SCI-Camp Hill General Rules and Regulations for RHU as

put out by Defendant Deputy Superintendent for Facilities Management Palakovich in either

August or September 1999.

**RESPONSE:** Defendant will produce plaintiff with General Rules and Regulations Governing

the RHU.

       5.     A copy of any and all work orders that was turned in from the RHU concerning

any and all problems with the heating system during the months of November and December

1999.

**RESPONSE:** None exist.

Defendants will make the documents available for review at a mutually convenient time.

Plaintiff may make arrangements for the inspection by submitting a request slip to the assistant to

the Superintendent.  Photocopies may be secured at the plaintiff's expense at the usual

institutional charge.

 

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY: _____
MICHAEL L. HARVEY
Senior Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE:  (717) 783-6896
FAX:  (717) 772-4526

DATE: June 1, 2001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN RICHARD JAE,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **No. 1:CV-00-0315** |
| | : | |
| **KENNETH D. KYLER, individually, and** | : | **(Judge Rambo)** |
| **in his official capacity, et al.,** | : | |
| | : | **(Magistrate Judge Smyser)** |
| **Defendants** | : | |

### CERTIFICATE OF SERVICE

I, Michael L. Harvey, Senior Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing, Response to Plaintiff's Third Request for Production of Documents by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, Pa., addressed to the following:

John R. Jae, #BQ-3219
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370



**MICHAEL L. HARVEY**
**SENIOR DEPUTY ATTORNEY GENERAL**

**DATE: June 1, 2001**

**EXHIBIT C**

DC-135A

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF CORRECTIONS

DEC 1 1999

DEPUTY SUPERINTENDENT
FOR CENTRALIZED SERVICES

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

TO: (NAME AND TITLE OF OFFICER)
The Program Review Committee

2. DATE
11-28-99

BY: (INSTITUTIONAL NAME AND NUMBER)
R. Todd R. Master 3019? John R. Doe

4. COUNSELOR'S NAME
Mr. Kerstetter

WORK ASSIGNMENT
None

6. QUARTERS ASSIGNMENT
RHU A2-34

SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.  GIVE DETAILS.

On 11-24-99, I saw & spoke with you & inquired as to whether I could have my soft cover law books in my RHU cell as I need to have such available to me when I am preparing a court pleading in one of my current/pending state & federal court cases & need to legally research an issue I am working on and/or when I need a case cite for such and I cannot afford to wait till the RHU staff gets ready to take me to the RHU Law Library here because of the delay involved for such—and you told me to submit a Request to RHU Lt. Rhodes and give him a list of my law books I wanted from my property, which I did do. However on 11-26-99, when I was finally permitted to go thru my property here in the RHU & RHU property officer Craig illegally

DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Mr. Joe,
Deputy Palakovic
addressed these issues with
you today -

☐ TO DC-14 CAR ONLY

☑ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER

DATE
12-1-99

age/ Form: two

DC-135A

## COMMONWEALTH OF PENNSYLVANIA

### DEPARTMENT OF CORRECTIONS

## INMATE'S REQUEST TO STAFF MEMBER

### INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing
your request, it can be disposed of more promptly and intelligently.*

| TO: (NAME AND TITLE OF OFFICER) The Program Review Committee | 2. DATE 11-28-99 |
|---|---|
| BY: (INSTITUTIONAL NAME AND NUMBER) 1R. John R. Joe #BA-3219 John R. Joe | 4. COUNSELOR'S NAME MR. Lenstetter |
| WORK ASSIGNMENT None | 6. QUARTERS ASSIGNMENT RHU A2-24 Cell |

SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

denied me my softcover Law Books from my property here.
stating that the P.R.C. had not approved such for me ?
    Also, on: 11-26-99, RHU property officer Craig Small
denied me my other religious material books beside
my bible. despite the fact that DC-ADM #804.2-
states that I am allowed to have such in my one(1) Records center
property I am allowed to have in my cell on DC Status in the RHU.
    therefore, I request that you, the P.R.C. approve my our
personal soft cover 'law books' & religious materials for me t
ive here in my RHU cell & that you order RHU property officers Craig
Small to Immediately give such to me here. for to deny me such is to
te the Constitutional Rights of Access to the Courts & to Freedom of Religion

DISPOSITION: (DO NOT WRITE IN THIS SPACE)

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

FF MEMBER _____    DATE _____

THIS ● ● A List of My Pers●●l Law Books
I Need And Request From My Property Here

1. Prisoners' Self-Help Litigation Manual
2. Federal Rules of Civil Procedure Phamplet
3. Federal Rules of Appellate Procedure Phamplet
4. Federal Rules of Evidence Phamplet
5. U.S. Supreme Court Rules Phamplet
6. U.S. Constitution Phamplet

7. Pa. Constitution
8. Secret Tools of Post-Conviction Relief (2)
9. Criminal Procedure In A Nutshell
10. Appellate Advocacy In A Nutshell
11. The Law of Corrections, Sentencing And Prisoners'
Rights In A Nutshell
12. The 55 PA. Code Phamplet

**EXHIBIT D**

From The Desk Of

MR. John R. Doe,
#BQ-3219
SCI-Camp Hill
P.O. Box 200
Camp Hill, PA-17001-0200
November 30, 1999

OFFICE OF
THE SECRETARY

DEC 0 6 1999
Galen Miller
REFERRED

To: DR. Jeffrey Beard,
Executive Deputy Secretary
Pennsylvania Department of Corrections
P.O. Box 598/2520 Lisburn Road
Camp Hill, PA- 17001-0598

DEAR Executive Deputy Secretary Beard:

I am writing & sending you this here letter to advise
you of several problems/rights/DOC policy violations that are
going on here at SCI- Camp Hill, which are as follows:

i) MR. R. Gimble, SCI-Camp Hill Business Manager,
is refusing to comply with and follow the provisions of DC-ADM
#803-VI-C-1-f in that he illegally refuses to provide this inmate
with a Indigent's Legal Pack, when this Inmate's "is" clearly indicated
as his Prison Account has a negative balance of $218
(or thereabouts) or, if he does provide this Inmate with a Indigent
Legal Pack he only does so once a month, although DC-ADM#803
VI-C-1-d-(2)-i clearly states that if one legal Pack is not
enough I may request and receive one more additional pack
per month.

MR. Gimble "lies" & claims he never receives my
Inmate Request Forms to him for such Legal Pack(s), but yet
all other staff members here receive my Request Forms to
them when I write and send such to them. This interferes with
Preparing & Filing Legal/Court Pleadings in my 16 active
State & Federal Court Cases and delays such and at times even
causes me to miss Court-Ordered Filing deadlines, etc.

DR. Jeffrey Beard, Commission Secretary,
Pennsylvania Department of Corrections
November 30, 1999
Page - two -

2) I have been illegally denied my rights under Federal
Law/Federal Court Decisions to have other inmates here at
SCI - Camp Hill (when I was still in general population here)
assist me with my legal/court cases, in that, I have been
illegally denied my rights to have other inmates possess/review
my legal papers & other legal materials, as when I gave
such to another inmate here, such was illegally confiscated
& destroyed by the officers & the security office here and I
was told that if any more legal materials of mine were found in
another inmate's possession in another block/housing unit, the
such would be confiscated & destroyed again here & I could be
given a misconduct for such - This violates numerous U.S.
Supreme Court and other Federal courts case decisions & Federal
Laws, especially since I do not qualify/meet the criteria for legal
assistance from the Institution Paralegal here.

3) I am currently being housed in this Prison's RHU here on
DC Custody Status, and I am being illegally denied my state/federal
constitutional rights to freedom of speech, in that, when I
talk to other inmates here in the RHU I am told to get off my
door and shut up by the RHU officers & if I do not do so
then I am subject to a misconduct Report by RHU officers
for refusal to obey an order.

4) The RHU staff are illegally denying me access to my own personal
law books which will fit in one (1) Records Center Box in violation of DC-ADM
01-VI-D-5, & because I need to be able to have immediate access to such when I am
preparing legal pleadings in any of my 16 active court cases to look up legal research
& cites, such also violates my state & Federal constitutional rights of access to the courts
could be able to choose what goes in such box, so long as such is legal in nature, & is not contra-
5) The RHU staff here illegally deny me my constitutional to outside exercise/shower, just
like other inmates receive here -
Superintendent Tyler here is/was aware of all of the above, but fails to do anything about
Dr. Beard, I Request your intervention here on all of the above & the

**EXHIBIT E**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI GREENE**
724-852-2902
June 18, 2001

**SUBJECT:**   Jae v. Kyler, et al.
No. 1:CV-00-0315

**TO:**   Michael L. Harvey
Senior Deputy Attorney General
Office of the Attorney General

**FROM:**   Dan Davis
Litigation Coordinator

RECEIVED
Office of Attorney General

JUN 2 2 2001

Litigation Section

Inmate John Jae, BQ-3219, was afforded the opportunity today, June 18, 2001, to review the packet of documents forwarded to this institution by your office. Mr. Jae requested to copy by hand the following documents from that packet. The pages in the entire packet were numbered for ease of identification. The following pages 3, 4, 8, 9, 16, 17, 18, and 19 were the documents requested by Mr. Jae that he be allowed to copy by hand. Mr. Jae also asked about the response to the letter to now Secretary Beard marked as page number 8, 9 and 10. As per our conversation today, June 18, 2001, we agreed that Mr. Jae would be given the opportunity to copy by hand these documents. It is anticipated he will be given this opportunity during the week of June 18, 2001.

Please do not hesitate to contact this office if future assistance is required in the case.

DD:djk

Attachments: As described

cc:    Other SCI—Litigation

**EXHIBIT F**



*Mike,
Joe review all
and copied all –
week of July 16, 2001
Dan*

COMMONWEALTH OF PENNSYLVANIA
**OFFICE OF ATTORNEY GENERAL**

**July 13, 2001**

MIKE FISHER
ATTORNEY GENERAL

**REPLY TO:**
15ᵗʰ Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 783-6896
FAX: (717) 772-4526

**Dan Davis**
**Administrative Officer/Litigation Coordinator**
**SCI-Greene**
**169 Progress Drive**
**Waynesburg, PA 15370-2902**

RE:    <u>**Jae v. Kyler, et al.**</u>
       **No. 1:CV-00-0315**

Dear Mr. Davis:

Enclosed are the documents which had been omitted from the documents produced for John Jae, BQ-3219 on June 18, 2001.

They include:

(1)    Letter from James D. Morris to John Jae, dated December 9, 1999;

(2)    Program Review Committee Periodic Reviews dated December 15, 1999, January 12, 2000, February 9, 2000 and March 8, 2000.

I am unclear as to whether Mr. Jae had an opportunity to examine the reviews dated February 9, 2000 or March 8, 2000, earlier. I have enclosed them to ensure he has had the chance to review them.

Please notify Mr. Jae that you now have the documents that were missing and make the necessary arrangements for him to view and hand-copy them.

If you have any questions, please call me. Thank you.

Very truly yours,

**MICHAEL L. HARVEY**
Senior Deputy Attorney General

MLH/cmt
Enclosures

**EXHIBIT G**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN RICHARD JAE,** | : | |
| | : | |
| | : | |
| **v.** | : | **No. 1:CV-00-0315** |
| | : | |
| **KENNETH D. KYLER, individually, and** | : | **(Judge Rambo)** |
| **in his official capacity, et al.,** | : | |
| | : | **(Magistrate Judge Smyser)** |
| **Defendants** | : | |

## UNSWORN DECLARATION OF JEFFREY A. BEARD, PH.D.

I, **Jeffrey A. Beard**, hereby declare under penalty of perjury that the following information is true and correct and form my personal knowledge:

1.    I am presently the Secretary of the Pennsylvania Department of Corrections.  I was appointed acting secretary of corrections effective December 30, 2000.  In February, 2001, I was confirmed by the Pennsylvania Senate.

2.    As Secretary of Corrections, I am responsible for all aspects of the administration of the Department of Corrections, including budget development, labor relations, legislative relations, information systems, security, planning and capital construction.

3.    Before my appointment as Secretary, I served as the executive deputy secretary of the department since December, 1997.  Immediately prior to that, I was

employed as the Regional Deputy Commissioner for the Central Region. In my region of responsibility were seven state correctional institutions and the Boot Camp at Quehanna. I served in that position, first in an acting capacity, since May 1, 1994.

4.      Immediately prior to that I was the Superintendent of SCI-Camp Hill. I was appointed in the immediate aftermath of the October 1989 riots at SCI-Camp Hill. Prior to that I had been the Superintendent at SCI-Cresson from the inception of that institution. I began my employment in corrections at SCI-Rockview in July 1972 as a counselor II and worked my way up through the treatment ranks, becoming the Deputy Superintendent for Treatment in January 1977.

5.      I hold a Bachelor of Science degree in psychology conferred on me in December 1969, by Pennsylvania State University and both a Masters and Ph.D. in counseling also conferred by Penn State. I received my Masters in 1972 and my Ph.D. in 1980. I am licensed by the Commonwealth of Pennsylvania as a psychologist, a license I have held since 1977.

6.      I have been informed that John Richard Jae, BQ-3219 has requested as part of discovery in a case the present location of another inmate, Robert Adams, CQ-2185.

7.      It is the Department policy that staff do not disclose the whereabouts of one inmate to another, and it is my firm belief that disclosure of such information to

2

another inmate poses a serious risk to prison security. I believe that disclosure of the location of Mr. Adams to Mr. Jae presents a risk to prison security.

8. Often, an inmate seeks the location of another inmate in order to engineer an attack against that inmate, in retaliation for a prior wrong or for other reasons.

9. An inmate can make such arrangements by writing to an individual out of prison, request him to forward instructions to another inmate in the prison where the target is housed. Prison staff do not read outgoing mail, nor do staff generally read incoming mail, although the mail is checked for contraband. So, it is possible to arrange a strike against an inmate if that inmate's location is known.

10. In addition, it is difficult to see how an inmate would benefit from the knowledge of the location of another inmate in pursuing a lawsuit. Under Administrative Directive DC-ADM 803, Part VI.A.3, inmates are prohibited from corresponding with inmates, except upon written approval of the Superintendent. So, even with a location, Jae may not be able to communicate with this inmate. Further, if an inmate is needed at trial, he will be produced upon the Court's issuance of a subpoena, without regard to his location.

11. Because the inmate location is unnecessary for a lawsuit, Jae's request is all the more suspicious, and I believe that providing this information will jeopardize institutional security.

3

Jeffrey A. Beard
Secretary of Corrections

Executed on: _8/27/01_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,              :

                                 :

                                 :

         v.                    :       No. 1:CV-00-0315

                                 :

KENNETH D. KYLER, individually, and :     (Judge Rambo)
in his official capacity, et al.,       :

                                 :       (Magistrate Judge Smyser)

         Defendants         :

## CERTIFICATE OF SERVICE

I, **MICHAEL L. HARVEY**, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on August 27, 2001, I caused to be served a copy of the foregoing document entitled **Memorandum in Opposition to Plaintiff's Motion to Compel,** by depositing same in the United States Mail, first class, postage prepaid, in Harrisburg, Pennsylvania, upon the following:

**John Richard Jae, BQ-3219**
**SCI-Greene**
**175 Progress Drive**
**Waynesburg, PA  15370-2902**

**MICHAEL L. HARVEY**
**Senior Deputy Attorney General**
**I.D. No. 30098**