"please File In Case"

1 ot

163

11/6/01

nfy

# ORIGINAL

**FILED**
HARRISBURG

NOV 0 5 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
JOHN RICHARD JAE,

PLAINTIFF,

vs.

KENNETH D. KYLER, JOHN A. PALAKOVICH,
LT. WILLIAM J. RHOADES, MARTIN L.
DRAGOVICH, OFFICER RUSNDAL, AND OFFICER RAGER,

DEFENDANTS.

mass forever

NUMBER: 1:CV-00-0315

TYPE OF PLEADING: APPENDIX
OF EXHIBITS TO PLAINTIFF'S
BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT

FILED ON BEHALF OF:
MR. JOHN RICHARD JAE
Plaintiff and Pro Se Counsel

NAME, ADDRESS AND TELEPHONE OF:

☐ Counsel of Record
☒ Individual, if Pro Se

MR. JOHN RICHARD JAE
#BQ-3819
SCI Greene/SMU
175 Progress Drive
Waynesburg, PA. 1530-808

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RICHARD JAE, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No.  1:CV-00-0315 |
| | : | |
| KENNETH D. KYLER, individually, and | : | (Judge Rambo) |
| in his official capacity, et al., | : | |
| | : | (Magistrate Judge Smyser) |
| Defendants | : | |

## ANSWER TO COMPLAINT AND AMENDED COMPLAINT

### First Defense

### Complaint

1.     It is **ADMITTED** that the plaintiff is a Pennsylvania state prisoner confined at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), and that he is presently assigned to the restricted housing unit.  Plaintiff's characterization of this action is also **ADMITTED**. Otherwise, this paragraph states conclusion of law to which require **NO RESPONSE** or, if the remaining averments are deemed factual, they are **DENIED**.

2.     Plaintiff's characterization of this action is **ADMITTED**; otherwise, this paragraph states conclusions of law to which require **NO RESPONSE**.

3.     **ADMITTED.**

4.     **DENIED** in that defendant Kenneth D. Kyler is no longer the Superintendent at SCI-Camp Hill . Otherwise, this paragraph states conclusions of laws to which require **NO RESPONSE.**

17. Defendants are without knowledge sufficient to form a belief as to the truth of this averment. See paragraph 12 of this Answer.

18. **DENIED**, however, Defendant Palakovich has no present recollection of speaking with the plaintiff on December 1, 1999.

19. **DENIED**. DC-ADM 801-2 speaks for itself.

20. It is **ADMITTED** that on November 26, 1999, plaintiff was on restriction and was denied a shower. Otherwise, this paragraph is **DENIED**.

21. It is **ADMITTED** that on November 26, 1999, plaintiff was on restriction and was denied yard. Otherwise, this paragraph is **DENIED**.

22. **ADMITTED**.

23.-28. **DENIED**.

29.-40. These paragraphs state conclusions of law to which **NO RESPONSE** is required. To the extent they are deemed factual, they are **DENIED**.

## Amended Complaint

1. **ADMITTED**, except that plaintiff filed his complaint on January 18, 2000.

2. This paragraph states a legal conclusion which requires **NO RESPONSE**.

3. Defendants hereby incorporate by reference their answers to plaintiff's original complaint.

4. - 5. **ADMITTED**.

6. **DENIED**.

7. This paragraph states conclusions of law which require **NO RESPONSE**.

8.    Defendants are without knowledge or information sufficient to form a belief as to the truth of this averment.

9.    Defendants hereby incorporate by reference their answers to plaintiff's original complaint.

10.-12.  These paragraphs states conclusions of law to which **NO RESPONSE** is required.

### Second Defense

Plaintiff has failed to exhaust his administrative remedies.

### Third Defense

The complaint as amended fails to state a claim upon which relief may be granted.

### Fourth Defense

The defendants are entitled to qualified immunity from plaintiff's claims for damages.

### Fifth Defense

The defendants have not acted or failed to act to violate plaintiff's constitutional rights.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: _____

MICHAEL L. HARVEY
Senior Deputy Attorney General
Attorney I.D. #30098

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Counsel for DEFENDANT
CHRISTOPHER O'BRIEN

OFFICE OF ATTORNEY GENERAL
15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 787-6896
FAX: (717) 772-4526
DATE:  March 7, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,           :

                  :

          Plaintiff,      :     No. 1: CV-00- 0315

                  :

          v.            :

                  :

                  :     (Judge Rambo)

KENNETH D. KYLER, individually,  :

and in his official capacity, <u>et al.</u>,  :     (Magistrate Judge Smyser)

                  :

          Defendants.   :

## ANSWER TO SUPPLEMENTAL COMPLAINT

    Defendants Kyler, Dragovich, Palakovich, Rhoades, Rubendall, and Rager, through their

counsel and pursuant to Federal Rule of Civil Procedure 8, hereby respond to the allegations in

the Supplemental Complaint. Defendants' answers to the Complaint and Amended Complaint in

this action shall be incorporated into this Answer.

## FIRST DEFENSE

    1.     Paragraph 1 is plaintiff's recitation of the contents of the original Complaint, to

which **NO RESPONSE** is necessary.

    2.     Paragraph 2 is plaintiff's recitation of the contents of the Amended Complaint, to

which **NO RESPONSE** is necessary.

    3.     It is **ADMITTED** that Glenn W. Rubendall and Charles W. Rager have been

added as Defendants in this Supplemental Complaint.

    4.     Paragraph 4 is plaintiff's incorporation of claims from the original and amended

complaints. Defendants incorporate their answers to the original and amended complaints.

    5.     **ADMITTED IN PART, DENIED IN PART**. It is **ADMITTED** that the

plaintiff was taken to Holy Spirit Hospital after the plaintiff attempted to harm himself by eating staples. Defendants assert, however, that this incident occurred on April 24, 2000, and not on April 23 as the plaintiff contends. Otherwise, Defendants are without sufficient information to form a belief as to the truth of this averment, because Dr. Laskey could not recall the exact number of staples ingested.

6. **ADMITTED IN PART, DENIED IN PART**. It is **ADMITTED** that Dr. Laskey ordered the removal of all materials with staples. It is **DENIED** that Dr. Laskey ordered the return of those materials on April 24. The incident occurred during the late evening hours of April 24, and the order to remove the materials came the next day.

7. **DENIED**. By way of further answer, this paragraph again refers to April 24, 2000, as a date upon which the materials were allegedly to be returned. The incident leading to plaintiff's hospital treatment occurred late in the evening on April 24.

8. **ADMITTED IN PART, DENIED IN PART**. It is **ADMITTED** that a helmet and shackles were placed on the plaintiff on April 24, 2000. It is **DENIED** that the helmet and shackles remained on the plaintiff until April 27, 2000.

9. Defendants are without sufficient information to form a belief as to the truth of this averment, because Dr. Clark has retired and could not be contacted for this information.

10. **DENIED**.

11. **ADMITTED**.

12. **ADMITTED**.

13 **ADMITTED**.

14. **DENIED**.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
Harrisburg                    Division

JOHN RICHARD JAE,                |        Civil No. 1:CK-00-031
          Plaintiff,             |        U.S. District Judge R
     vs.                         |        U.S. Magistrate Judge Sm
KENNETH D. KYLER,                |
JOHN A. PALAKOVICH,              |
LTZ W. RHOADES, and              |
MARTIN L. DRAGOVICH,             |
          Defendants.            |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

         Pursuant to Fed. R. Civ. P. 33, Plaintiff submits
the following Interrogatories for Defendants to Answer. The Defen
are directed to answer each of the following Interrogatories
under oath within thirty (30) days of service there of. These Inter
shall be deemed continuing so as to require supplemental Ans
new & different Information material izes.

         1. State the duties of Defendant Kenneth D. Kyler, super In
state correctional Institution At Camp Hill ("SCI-Camp Hill")
duties are set forth in any Job Description or other written doc
a copy of such to you answers to these Interrogat

         2. State the Duties of Defendant John A. Palakovich who
Superintendent for Facilities Management, state Correctional In
Camp Hill ("SCI-Camp Hill"). If those duties are set forth in any
or other written Document attach a copy of such to your an
these Interrogatories.

         3. State the duties of Defendant Martin L. Dragovich, S
state correctional Institution At Camp Hill ("SCI-Camp
those duties are set forth in any Job Description o

4. Back in November and December, 1999, was there an written Camp Hill, DOC on RHU Policy Prohibiting DC-Status Inmates the SCI-Camp Hill RHU from possessing their own personal law Books in their RHU Cells?

5. If your answer to Interrogatory No. 4, above is yes, an entire copy of each such policy to your Answers to these Inter-

6. Was the Plaintiff on Restriction on November 26, 19

7. If your answer to Interrogatory No. 6, is yes,

a) state what type of Restriction was the plaintiff o why he was on Restriction on November 26, 1999?

b) State whether such Restriction and the reasons therefor su documented in writing and where such was documented in writing?

c) attach a copy of such written documentation, as above, your answers to these Interrogatories.

8. Did Defendant Palakovich answer Plaintiff's Reques the PRC of 11-29-99, requesting he be approved to have his p soft cover law books in the RHU on DC-Status?

9. If your Answer to Interrogatory No. 8, is yes,

a). State in full what was Defendant Palakovich's answe such 11-29-99, Request of Plaintiff's.

10. Are the Words "will", "shall", "must" all mandatory an limit the discretion and Authority and Act of the Defendants?

11. Are Defendants Kyler, Palakovich and Dragovich e to follow the Directives issued by the Secretary of Corre

12. Does DC-ADM. #801-VI. D. 5, apply to SCI-Camp

13. Does DC-ADM.#801.VI.D.8., apply to SCI-Ca___

HII RHU-

14. Does DC-ADM#801-2. apply to the SCI-Camp#___

15. Does the RHU mm'Law Library have the following l___ books? i.e., the Cite book, the law of Sentencing, caree___ and Prisoner's Rights in a nutshell, Appellate Advocacy___ Secret Tools For Post-Conviction Relief and Title 55 Pa-Code___ welfare Chapter 5100 Mental Health Procedures Pamplet___ now?

16. Did Pt have the above-referred to Law Books in P___ in November and December, 1999?

17. Was it really hot inside the SCI-Camp HII RHU during November and December, 1999?

19. If your answer to Interrogatory No. 18, is yes,

a). State the reasons in detail why such was done here th___

20. Did Defendant Palakovich at any time during November ___ December, 1999, deny Plaintiff permission to have his own pe___ Law Books on DC-Status in the RHU here either verbally and/or___

21. Did Defendant Dragovich on January 12, 2000, and/___ other time deny plaintiff his personal softcover law Books he___ the RHU on DC-Status?

22. During November and December, 1999, was any other RHU___ denied access to their own personal law books here in___ on DC-Status?

23. Did Plaintiff receive his Religious Materials that h___ requested?

24. If your answer to Interrogatory No.23, is yes__ a) State the date and/or dates which the Plaintiff received

25. Did the Plaintiff file any Institution official Inmate grievances and grievance appeals on the issue of his complaint and Amended Complaint herein this Civil Action

RESPECTFULLY SUBMITTED

(S) _____ John Richard Jae
MR. JOHN RICHARD JAE
Plaintiff and Pro Se Counsel

MR. John Richard Jae
#BQ—3219
SCI—Camp Hill
P.O. Box 200
Camp Hill, PA. 17001-0200

Dated= 11th APRIL 2000=

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,           :

          Plaintiff         :

                        :

          v.               :       No. 1:CV-00-0315

                        :

KENNETH D. KYLER, individually, and :    (Judge Rambo)
in his official capacity, <u>et al.</u>,        :

                        :       (Magistrate Judge Smyser)

          Defendants      :

## <u>DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>

Defendants, by their counsel, respond to plaintiff's first set of interrogatories as follows:

1.      See job description for Corrections Superintendent, attached hereto.

2.      See job description for Deputy Superintendent for Facilities Management, attached hereto.

3.      See job description for Corrections Superintendent, attached hereto.

4.      No, as long as an inmate's legal and religious materials together did not exceed one (1) records center box.

5.      Not applicable.

6.      No.

7.      Not applicable.

8.      Defendants are unable to answer the interrogatory because defendant John Palakovich does not presently recall whether he answered plaintiff's request to the Program Review Committee of November 29, 1999, that plaintiff be approved to have his personal soft cover law books in his cell in the restricted housing unit.

9.      Not applicable.

10.    OBJECTION.  This interrogatory requests a legal conclusion.

11.    Yes.

12.    Yes.

13.    Yes.

14.    Yes.

15.    No.

16.    No.

17.    No.

18.    Yes.

19.    Plexiglass was placed over plaintiff's cell door to prevent plaintiff from disrupting the cell block with his yelling.

20.    Defendants are unable to answer this interrogatory because Defendant John Palakovich does not presently recall whether or not he denied plaintiff permission to have his own personal law books in his cell in the restricted housing unit in November or December, 1999.

21.    No.

22.    Objection.  This interrogatory is objected to because it does not seek information relevant to the subject matter of this action.

23.    To the best of defendants' knowledge, according to the property records, plaintiff did not obtain his religious books from his stored property.  Plaintiff, however, had the opportunity to obtain these books.

24.    Not applicable.

2

25.    Plaintiff submitted an official Inmate Grievance and an appeal related to his claim that he was denied his law books in the RHU.  Plaintiff did not submit either a grievance or an appeal related to any of the other claims asserted in this case.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

BY:    **MICHAEL L. HARVEY**
**Senior Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE:  (717) 783-6896
FAX:  (717) 772-4526

DATE:  June 27, 2000

3

JUN-27-00 TUE 15:12     ATTORNEY GENERAL     FAX NO. 717 772 4526          P. 06/08

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                       :
                                        :
              Plaintiff                 :
                                        :
v.                                      :        No. 1:CV-00-0315
                                        :
KENNETH D. KYLER, individually, and     :        (Judge Rambo)
in his official capacity, et al.,       :
                                        :        (Magistrate Judge Smyser)
              Defendants                :

VERIFICATION

I, Ben C. Livingood, hereby state under penalty of perjury, that I have reviewed the

foregoing answers to interrogatories along with plaintiffs' interrogatories, and the answers are

true and correct to the best of my knowledge, information and belief.

_____
Ben C. Livingood

Date: 6/27/00

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :
                                     :
              Plaintiff,             :        No. 1: CV-00- 0315
                                     :
         v.                          :
                                     :
                                     :        (Judge Rambo)
KENNETH D. KYLER, individually,      :
and in his official capacity, et al.,:        (Magistrate Judge Smyser)
                                     :
              Defendants.            :

## DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants, by their counsel, hereby supplement their response to plaintiff's first set of interrogatories as follows:

22.    During November and December, 1999, was [sic] any other RHU Inmates denied access to their own personal law books here in the RHU on DC-Status?

**RESPONSE**: No. Jae, likewise, was not denied access to his personal law books during that time.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY:    _Michael L Harvey_
       MICHAEL L. HARVEY
       Senior Deputy Attorney General

       SUSAN J. FORNEY
       Chief Deputy Attorney General
       Chief, Litigation Section

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 783-6896
FAX: (717) 772-4526
DATE: September 12, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :

             Plaintiff,        :          No. 1: CV-00- 0315

       v.                               :

                        :          (Judge Rambo)

KENNETH D. KYLER, individually,      :
and in his official capacity, et al.,      :          (Magistrate Judge Smyser)

           Defendants.      :

## VERIFICATION

I Ben C. Livingood, hereby state under penalty of perjury, that I have reviewed the

foregoing Defendants' Supplemental Response to Plaintiff's First Set of Interrogatories and the

answers set forth therein is true and correct to the best of my knowledge, information and belief.

*Ben C. Livingood*
Ben C. Livingood

Executed on ___9/12/06___

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,              :
                                     :

             Plaintiff           :

                                      :

        v.                   :       No. 1:CV-00-0315

                                      :

KENNETH D. KYLER, individually, and :      (Judge Rambo)
in his official capacity, et al.,          :

                                    :      (Magistrate Judge Smyser)

            Defendants       :

## DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Defendants, by their counsel, respond to plaintiff's second set of interrogatories as follows:

1.     State the duties of Defendant Lt. William J. Rhoades, as RHU Lt./Unit Manager, State Correctional Institution at Camp Hill ("SCI- Camp Hill"). If those duties are set forth in writing in any job description or other written document, attach a copy of such to your answers to these interrogatories.

**RESPONSE** See job description for Corrections Officer 3 and Corrections Unit Manager, attached hereto

2.     State the duties of Defendant Glenn W. Rubendall as the RHU Property Officer, State Correctional Institution at Camp Hill ("SCI-Camp Hill"). If those duties are set forth in any job description or other document in writing, attach a copy of such to your answers to these Interrogatories.

**RESPONSE:** See job description for Corrections Officer 1, attached hereto.

3.      On November 23, 1999, or at any other time in November and/or December, 1999, did Defendant Lt. Rhoades tell/order then RHU Property Officer Charlie Craig and/or RHU Sgt. Pyles not to give the plaintiff his own personal soft cover law books and/or religious books (other than a Bible) from his property boxes in the RHU property room?

**RESPONSE:** No.

4.      If your answer to Interrogatory No. 3 is yes,

a.      State in detail why Defendant Lt. Rhoades told/ordered Off. Craig and/or Sgt. Pyles such.

**RESPONSE:** Not applicable.

5.      On April 28, 2000, did Defendant Off. Rubendall return any of the plaintiff's personal property to him, that he'd been removed from the plaintiff's RHU B2-57 cell on April 24, 2000?

**RESPONSE** Yes.

6.      If your answer to Interrogatory No. 5 is yes,

a.      State in detail the items Defendant Off. Rubendall returned to plaintiff on April 28, 2000.

**RESPONSE:** According to the property officer notes, the following items were returned to plaintiff on April 28, 2000:  2 shorts, 2 under shirts, 1 pair of shower shoes, 1 pair of socks, 9 inches of legal papers, 8 law books, 1 pen, and 1 handbook.

7.      Was Defendant Officer Rager aware that Defendants Dragovich and Palakovich had ordered that the plaintiff be immediately given back the remainder of his legal, religious and other property that had been removed from his RHU B2-57 cell on April 24, 2000; on May 2 and

2

3, 2000, respectively?

**RESPONSE:** No, defendants Dragovich and Palakovich did not order that the remainder of plaintiff's property be immediately returned to him.

       8.     If your answer to Interrogatory No. 7 is yes,

            a.     State the date Off. Rager became aware of such orders;

            b.     State in detail why Off. Rager did not comply with such orders until May 12, 2000.

**RESPONSE:** Not applicable.

       9.     Is it not true that back in January, 2000, the prison Chaplain, Rev. Vogel had to conduct an investigation into why the plaintiff was not receiving his personal religious materials from his property in the SCI-Camp Hill RHU property room, based upon a letter of complaint which this plaintiff had written and sent to then Executive Deputy Security of Corrections Dr. Jeffrey A. Beard?

**RESPONSE:** No, there was no investigation into why plaintiff was not receiving his religious materials in January, 2000.

      10.     What date in November of 1999, did this plaintiff first come to the RHU at SCI-Camp Hill?

**RESPONSE:** November 19, 1999.

      11.     What date in November, 1999, did the plaintiff first get to go thru his personal property in the RHU property room at SCI-Camp Hill?

**RESPONSE:** November 26, 1999.

      12.     Was Defendant Palakovich a member of the SCI-Camp Hill Program Review

3

Committee ("SCI-Camp Hill Pro") back on December 1, 1997?

**RESPONSE:** Yes.

13.    Was the SCI-Camp Hill plumbers and inmate plumbing workers ever over in the RHU working on the heating system in the RHU at any time(s) at all during the months of November and December 1999?

**RESPONSE:** No.

14.    If your answer to Interrogatory No. 13 is yes, please state each of the date(s) he/they were in the SCI-Camp Hill RHU working on the RHU heating system.

**RESPONSE:** Not applicable.

15.    If the RHU property officer's notes and/or plaintiff's DC-153 inmate personal property inventory form reflect that this plaintiff received property on a certain date, could such not meant that this was something legal and/or religious which came in thru the U.S. Mail for him and was sent to the RHU property officer for disposition and that the date indicated was when the RHU property officer gave such to plaintiff at his cell?

**RESPONSE:** The inmate's personal property inventory form does not reflect the date property arrives in the mail, but the date in which the property is given to the inmate in his cell.

16.    If the plaintiff received a box or package of religious or legal material and/or books through the U.S. Mail would such usually be sent to the RHU Property Officer for disposition?

**RESPONSE:** Yes.  Correspondence, however, is delivered to the inmate.

17.    Is it true that back in November, 1999, - May 31, 2000, that if an inmate at SCI-Camp Hill filed a grievance and such grievance was rejected by the Grievance Coordinator for

4

whatever reason and such grievance was then returned back to the inmate unprocessed and

without any grievance no. being assigned to such grievance that the prison Grievance

Coordinator would not have any way to track such a grievance?

**RESPONSE:** Yes.

18.   What is the present location and full prison address of inmate Robert Adams,

#CQ-2185?

**RESPONSE:** Defendants object to this interrogatory because it seeks information which is

privileged and not relevant to the subject matter of this action.

<div style="margin-left: 50%;">

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

</div>

BY:   _____

**MICHAEL L. HARVEY**
**Senior Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**PHONE:  (717) 783-6896**
**FAX:  (717) 772-4526**

**DATE: June 1, 2001**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :
                                     :
                Plaintiff,           :        No. 1: CV-00- 0315
                                     :
        v.                           :
                                     :
                                     :
                                     :        (Judge Rambo)
KENNETH D. KYLER, individually,      :
and in his official capacity, et al.,:        (Magistrate Judge Smyser)
                                     :
                Defendants.          :

## VERIFICATION

I, Ben C. Livingood, hereby state under penalty of perjury, that I have reviewed the

foregoing Defendants' Response to Plaintiff's Second Set of Interrogatories and the answers set

forth therein are true and correct to the best of my knowledge, information and belief.

*Ben C. Livingood*

Ben C. Livingood

Executed on __6/1/01__

## JOB DESCRIPTION

| 1. Name of Employe (Last, First, MI) | | | 2. Employe Number | Position Number |
|---|---|---|---|---|
| RHOADES, William J. | | | | 224314 |

| 3. Department | Bureau | Division | Headquarters | Organization |
|---|---|---|---|---|
| Corrections | | | SCI Camp Hill | |

| 4. Class Title | Working Title |
|---|---|
| Corrections Officer 3 | Lieutenant |

**5. Regular Work Schedule**

Start Time: 0600    Lunch Length: *

End Time: 1400    Hours/Week: 40

*As Permitted

**Position is:**

√ Full Time
√ Permanent
Part-Time
Temporary

**Reports to:**

| Name | Class Title |
|---|---|
| Robert E. Stotelmyer | Corrections Officer 4 |
| Gerald E. Kerstetter | Corrections Officer 4 |

Explain any schedule variations:

Rotating Days Off

Days Worked (check all that apply):

| S | M | T | W | Th | F | S |
|---|---|---|---|---|---|---|
| √ | √ | √ | √ | √ | √ | √ |

6. Describe the work assigned to this position, listing the critical duties and responsibilities first. Explain work in familiar terms and include machine or equipment used. Use Additional paper if needed.

A Corrections Officer 3, functioning in a Class 5 State Correctional Institution, with a population exceeding 3,000 inmates, assigned to the RHU on the 6-2 shift. Duties will include the following:

Planning and implementing the daily function of the RHU. Directing the work force assigned to the RHU. Ensure security practices, formal and informal, are adhered to in the operation of the RHU. Ensure Pennsylvania Department of Corrections and institutional policy, procedures, rules and regulations governing the RHU and institutional funtions are followed and adhered to.

Develop and institute new guidelines an dpolicies, as needed, to direct new functions of officers' duties assigned to the RHU or to cover new areas of responsibility in the RHU. Develop and institute new guidelines in existing guidelines or policy.

Observe inmate behavior for possible irregular or negative behavior patterns, and determine a course of action to solve such problems.

Participate in non-professional counseling of inmates or situational problems associated with institutional adjustment, including matters of a personal nature.

Observe and report changes in personality, demeanor, and degree of problem participation.

Supervise on a periodic basis inmate counts in the RHU.

Investigate and report all infractions of inmates housed in the RHU and help develop a course of action to solve such infractions.

Receive greivances and complaints, conduct initial investigations into the causes and circumstances surrounding the grievance or complaint, and develop a course of action to resolve the grievance or complaint.

Prepare daily reports on activities. Evaluate subordinate officers on their work performance and conduct within the scope of the Pennsylvania Department of Corrections Code of Ethics.

Supervise special or investigative searches in the RHU for presence of contraband.

Participate in 30 day reviews of RHU inmates as a member of the Unit Management Team.

- Continued -

7. Briefly describe how work is assigned to this position and how the work is reviewed.

The 6-2 Shift Commander(s) supervises the RHU Corrections Officer 3 and the Major of the Guard administers the RHU. The Shift Commander(s) assigns general and specific duties outside the normal daily function duties assigned for this area of responsibility. The Shift Commander(s) will make daily inspections of the RHU and review duty assignments of the assigned Corrections Officer 3 to the RHU.

8. If this is a supervisory position, briefly describe how work is assigned to subordinate personnel and how their work is reviewed.. (If this is not a supervisory position, leave blank)

The assigned Corrections Officer 3 in the RHU supervises the daily functions, formal and informal, of subordinates assigned to the RHU for their duty assignment. The RHU Corrections Officer 3 is responsible for reviewing all work performed by subordinates in the RHU.



9. Attach an Organizational Chart identifying all reporting relationships for this position.

10. Attach a statement identifying the essential functions of the positions.

I certify that to the best of my knowledge all statements contained within the job description are correct. This job description consists of ____ pages (count this form as 1 page).

| | | | | | |
|---|---|---|---|---|---|
| Employe's Signature | *William J. Rhodes* | Class Title | CO3 Lieutenant | Date | 7/22/99 |
| Immediate Supervisor's Signature | *signature* CO4 | Class Title | CO4 Captain | Date | 7/20/99 |
| Reviewing Officer's Signature | *signature* | Class Title | CO5 Major of the Guard | Date | 7/20/99 |

To be completed by the classifying authority

Approved Position Classification  *Corrections Officer 3*

Reviewer's Approving Signature  *Jh R Rone*   Date  7-26-99

*Input on DCS 8/17/99*
*MTB*

**DESCRIPTION OF DUTIES CONTINUED**
RHOADES, William J.
Employee #029574

Develop recommendations for review by the Program Review Committee on inmates' conduct while housed in the RHU.

Issue discipline up to a written reprimand and recommend further disciplinary action to my supervisors. Participate in Pre-Disciplinary Conferences and recommend discipline, as needed.

Attend monthly Commissioned Officers' meetings.

# JOB DESCRIPTION

COMMONWEALTH OF PENNSYLVANIA

| 1. Name of Employe (Last, First, MI) | | | 2. Employe Number | Position Number |
|---|---|---|---|---|
| | | | | 170943 |

| 3. Department | Bureau | Division | Headquarters | Organization |
|---|---|---|---|---|
| Corrections | | | SCI Camp Hill | 1500 |

| 4. Class Title | | Working Title | Class Code |
|---|---|---|---|
| Corrections Unit Manager | | | 47470 |

**5. Regular Work Schedule**

| | | | | | Position is: | |
|---|---|---|---|---|---|---|
| Start Time: | 0800 | Lunch Length: | 30 Min. | | √ Full Time | √ Permanent |
| End Time: | 1630 | Hours\Week: | 40 | | Part-Time | Temporary |

Reports to:  Name  J. R. Carey        Class Title  Major of the Guard

**Days Worked (check all that apply):**

| S | M | T | W | Th | F | S |
|---|---|---|---|---|---|---|
| | √ | √ | √ | √ | √ | |

Explain any schedule variations:

As Directed

6. Describe the work assigned to this position, listing the critical duties and responsibilities first. Explain work in familiar terms and include machine or equipment used. Use Additional paper if needed.

Ensure the Department of Corrections, institution's, and unit's mission, administrative directives and policies are properly enforced. Also, issue interpretation of administrative directives and mission statement whenever confusion arises.

Maintains and updates Unit Manager's manual including directives, policies and procedures that are unique to a specific unit.

Makes daily rounds and inspections of the unit to ensure the proper security and treatment procedures are being implemented. Ensure that staff are alert and adhere to institution and unit policies and procedures, taking into consideration unit maintenance, medical services, treatment programs, food services, unit cleanliness, inmate activities and privileges.

Responsible for the total effective unit operation by supervising Sergeants, CO1's, all assigned treatment staff, and approximately 200 to 250 inmates. Supervision includes input in evaluating job performance.

Develop and maintain programs specific to the unit's purpose taking into consideration security practices, inmate needs, institutional and departmental primary objectives of care, custody and control of inmates.

Stay abreast of new and changing correctional ideas and philosophies.

Resolve inmate grievances at the first step, if possible, or submits them to the Grievance Coordinator for further action.

Assist in formal counseling of inmates with adjustment problems as per established Department of Corrections, institutional and unit policy.

Submits bi-monthly reports to the Major of Unit Management using established forms.

Attends weekly Unit Manager meetings to discuss unit problems and to coordinate various programs with other Unit Mangers.

Plan, organize and assign duties to subordinate staff relative to their assignments in the housing units.

Conduct regular security, safety, and fire inspections of each housing unit to include cell searches and complete cell block searches.

- Continued -

7. Briefly describe how work is assigned to this position and how the work is reviewed.

The Major of Unit Management assigns work with added direction via the telephone or on an as needed basis. The Deputy Superintendent conducts regular inspections of the housing units to ensure that directives, policies, procedures and orders are followed and carried out.

8. If this is a supervisory position, briefly describe how work is assigned to subordinate personnel and how their work is reviewed. (If this is not a supervisory position, leave blank)

Work is visually monitored of the subordinates' work post. Supervision is done by writing memorandums, conducting meetings, and reviewing misconducts, incident reports, and work orders completed by subordinates. Conduct regular housing unit tours and inspections to ensure staff are performing their duties according to institutional and departmental policy. Evaluate staff on their job performance through annual performance evaluation reports.

9. Attach an Organizational Chart identifying all reporting relationships for this position.

10. Attach a statement identifying the essential functions of the positions.

## CERTIFICATION

I certify that to the best of my knowledge all statements contained within the job description are correct. This job description consists of _____ pages (count this form as 1 page).

| | | |
|---|---|---|
| Employee's Signature ~~_____~~ | Class Title _Unit Manager_ | Date _5-2-07_ |
| Immediate Supervisor's Signature ~~_____~~ | Class Title _Major of the Guard_ | Date _5-02-01_ |
| Reviewing Officer's Signature ~~_____~~ | Class Title _Deputy Superintendent_ | Date _5-21-01_ |

### To be completed by the classifying authority

Approved Position Classification _Corrections Unit Manager_

Reviewer's Approving Signature ~~_____~~   Date _5-8-01_

DESCRIPTION OF DUTIES CONTINUED
STEVENS, Robert C.
Employee # 089538

Review misconducts, incident reports, work orders and internal store orders before they are processed

Conduct fact findings and issue discipline up to a written reprimand or recommend a Pre-Disciplinary Conference, depending on the severity of the offense.

Participate in Pre-Disciplinary Conferences and recommend discipline, as needed.

Investigate Union grievances relative to your area of responsibility for presentation at local grievance hearings.

Any other duties as assigned by the Major of Unit Management, Deputy Superintendent or Superintendent.

Any related duties as assigned.



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Harrisburg                    Division

JOHN RICHARD DYE,            )        CIVIL/NO. 1:CV-00-
            Plaintiff         )        U.S. District Judge Rambo
                              )        U.S. Magistrate Judge Smyser
    VS.                       )
                              )
KENNETH D. KYLER,             )
JOHN A. PALAKOVICH,           )
Lt. W. RHADES and             )
MARTIN L. DRAGOVICH,          )
                              )
        Defendants.           )

## PLAINTIFF'S REQUEST FOR ADMISSIONS

Pursuant to Rule 36, Fed. R. Civ. P., Plaintiff requests the Defendants to make the following Admissions within 30 days after the service of this

1. Plaintiff was denied his own personal soft cover [...] in the RHU here from November 26, 1999 to February 13, 2000.

2. Plaintiff was denied his own personal Religious materials [...] here from November 26, 1999 to January 8, 2000 (or thereabouts).

3. On November 21, 1999, a Plexiglass Shield/covering was [...] over Plaintiff's Cell Door.

4. That, this was done due to Plaintiff's exercise [...] his First Amendment Rights to Freedom of sp[...] In talking to other Inmates, as an Officer clai[...] he was yelling.

5. That, Plaintiff was denied his Rights to shower on Nov[...] 26 & 29, 1999, & on December 3, 6 & 13, 1999.

6. That, Plaintiff was denied yard/outside exercise o[...] 26 & 29, 1999.

7. That, Plaintiff was "out/on" restriction on November 26 [...]

8. That, back in November and December, 1999, there was no "written" DOC, SCI-Camp Hill nor RHU Policy prohibiting Inmates in the RHU on DC-Status from possessing their own softcover Personal Law Books.

9. That, back in November and December, 1999, the RHU Mini-Law Library here at SCI-Camp Hill did "not" contain the Law Books/cite book, The Law of Sentencing, Corrections and Prisoner Rights in Nut shell, Appellate Advocacy in a Nutshell, Secret Tools For Post Conviction Relief and/or Title 55-Pa. Code Public Welfare Chapters "Mental Health Procedures Pamplet" in it.

10. That, DC-ADM. #801-VI-D.5, DC-ADM. #801-VI-D. and DC-ADM. #801-2, Policy Directives of the Pennsylvania Department of Corrections apply to SCI-Camp Hill.

11. That, Defendants Kyler, Palakovich and Dragovich are all required to follow and enforce DC-ADM. #801-VI-D.5, DC-ADM. #801-VI and DC-ADM. #801-2, here at SCI-Camp Hill.

12. That, sometimes when RHU Inmates become too noisy, RHU staff will cancel showers and/or yard for all RHU Inmates on the Tier and/or on the side of the RHU where Inmates being too noisy & loud even though not at all Inmates are being too & loud.

RESPECTFULLY SUB
(S)_____
MR. JOHN RICHARD
Plaintiff and Pro S

MR. JOHN RICHARD D
#BR-3219
SCI-Camp Hill
P.O. Box 200

Dated: 11th APRIL 2000.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                          :
                                           :
          Plaintiff                        :
                                           :
     v.                                    :     No. 1:CV-00-0315
                                           :
KENNETH D. KYLER, individually, and :            (Judge Rambo)
in his official capacity, et al.,          :
                                           :     (Magistrate Judge Smyser)
          Defendants                       :

## DEFENDANTS' RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

Defendants, by their counsel, respond to plaintiff's requests for admissions as follows:

1.     DENIED.

2.     DENIED.

3.     ADMITTED.

4.     DENIED, except that it is admitted that the plexiglass shield was placed on plaintiff's cell door because he was yelling and disrupting the cell block.

5.     It is ADMITTED that on November 26, 1999, plaintiff was on restriction and denied a shower. Otherwise this paragraph is DENIED.

6.     It is ADMITTED that on November 26, 1999, plaintiff was on cell restriction and denied yard. Otherwise this paragraph is DENIED.

7.     It is ADMITTED that on November 29, 1999, and December 3, 6 and 13, 1999, plaintiff was not on cell restriction. Otherwise this paragraph is DENIED.

8.     It is ADMITTED that in November and December 1999, DC-ADM 801-2 was in effect and allowed inmates to maintain religious, as well as legal materials, in one (1) records center box.

9.     It is ADMITTED that no books with the titles listed in this request for admission are retained in the RHU mini law library.

10.     It is ADMITTED that DC-ADM 801 is applicable to SCI-Camp Hill, as well as the other state correctional institutions.

11.     Because this request is unclear, defendants can neither admit nor deny it. <u>See</u> answer to request for admission Number 9.

12.     ADMITTED.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY: _____
MICHAEL L. HARVEY
Senior Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE:  (717) 783-6896
FAX:  (717) 772-4526

DATE:  June 27, 2000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                      :
                                       :
        Plaintiff,          :       No. 1: CV-00- 0315
                                       :
                                       :
     v.                   :
                                       :
                                       :       (Judge Rambo)
KENNETH D. KYLER, individually,        :
and in his official capacity, et al.,  :       (Magistrate Judge Smyser)
                                       :
       Defendants.       :

## DEFENDANTS' SUPPLEMENTAL RESPONSE TO
## PLAINTIFF'S REQUEST FOR ADMISSIONS

     Defendants, by their counsel, hereby supplement their response to plaintiff's request for admissions as follows:

    11.    That defendants Kyler, Palakovich and Dragovich are all required to follow and enforce DC-ADM 801. VI. D. 5, DC-ADM 801. VI. D.8 and DC-ADM 801-2.

**RESPONSE**: It is admitted that, under the policy of the Pennsylvania Department of Corrections, defendants Kyler, Palakovich and Dragovich are generally required to follow and, where appropriate, enforce DC-ADM 801. VI. D. 5, DC-ADM 801. VI. D. 8 and DC-ADM 801-2. It is denied that defendants are required to follow or enforce these sections by federal or state law.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY: _____
MICHAEL L. HARVEY
Senior Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE:  (717) 783-6896
FAX:  (717) 772-4526
DATE:  September 12, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                          CRPI NO.1: CV-00-03
    Plaintiff,                          U.S. DISTRICT Judge
        Vs.                          Magistrate Judge Smys

KENNETH D. KYLER,
JOHN A. PALAKOVICH,
LT. WILLIAM J. RHOADES,
MARTIN L. DRAGOVICH,
OFFICER RUBENDALL and
OFFICER RAGER,
      Defendants.

AFFIDAVIT OF PLAINTIFF JOHN RICHARD JAE

I, Plaintiff John Richard Jae, Pro Se Cansel, hereby aA
& declare under penalty of perjury & pursuant to 28 U.S.C

1. On November 19, 1999, Plaintiff John Richard Ja
taken to & placed in the Restricted Hausing U
("RHU") at SCI-Camp Hill, where I remained unti
6, 2000 and I was again placed & confined in the
Hill RHU from July 18, 2000, — octoeber 24,

2.   On November 26, 1999, Defendant Lt. Rhoade[s]
told RHU Property Officer Craig & RHU Sgt. Ryle[s]
not to give me my personal law books as the P.R[.C.]
had not approved such for me yet.

3.   On November 29, 1999, I wrote and sent an
Inmate Request Form To the P.R.C. (Defendant Palata[vich])
requesting there In writing that they approve [my]
personal softcover law books for me.

4.   On December 1, 1999, I verbally discussed [the]
above-matter with Defendant Palatovich, Deputy Super[intendent]
For Facilities Management and Program Review Committee [Chairman]
and verbally requested that he approve me my own [personal]
softcover law books for me.

5.   On December 1, 1999, Defendant Palatovich, after discuss[ing with]
me, Illegally denied me my own personal softcover law books while [?]

6.   Also, on November 30, 1999, I wrote & sent a Written In[mate Request]
Form to Defendant Kyler, Superintendent, complaining therein [of my]
being denied my own personal law books herein the RHU (among [?])

7.   However, Defendant Kyler never responded back to me my I)30/99[?]
to him.

Rhoades refused to do his job & refused to listen to and/or discuss this matter with me then here.

9. That, also on December 1, 1999, I verbally discussed the matter of the denial of my religious materials with Defendant Blakov & reminded him of Doc Policy DC-ADM.#801-S, on such & verbally as him to order the RHU Staff to give me my religious mate

10. That, on December 1, 1999, Defendant Blakovich after discussing me, illegally failed to order RHU Staff to give me my religious mat although he had the legal responsibility & authority to do so and the I wrote & complained about such to Defendant Kyler, he likewise fa do anything about such, although he could have.

11. That, DC-ADM.#801-S, of August 16, 1995, specifically permi RHU Inmate on DISCIPLINARY Custody Status, such as I was then tha have his religious as well as legal materials in the one (1) Reanse of allowable property in his RHU cell.

12. That, altogether as to this, I was illegally denied my personal softcover law books from November 26, 1999, – Februar and was also illegally denied my religious materials from November – January 30, 2000.

13. That, the personal softcover law books I was illegally during the above reffered to time period were/are: The Crimi The Law of Correctins, Sentencing and Prisoners Rights In A Nutshe Advocacy In A Nutshell, Secret Tools for Post-Convi Relief, Prisoner's Self-Help Litigation Manual CRPM P.D Procedure In A Nutshell, Federal Rule s

Civil Procedure Pamplet, Federal Rules Of Appellate Procedure
Pamplet, U-S- Constitution Pamplet, Pa- Constitution Pamplet,
Titles 55- Pa-Code Public Welfare Chapter 5100-Mental Health
Procedures, all of which were "not" contained nor available
the SCI-Camp Hill RHU Mini Law Library during the above referred to time

14. That, the personal Religious materials which I was
illegally denied during the above-referred to time period were
my Daily Guide Post 2000, my Strong's Exhaustive Concordance
Bible, my Smith's Bible Dictionary and my Discovery Series Bible Study B

15- That, the denial of my own personal Soft-cover Law B
placed me at extreme risk of missing a court-ordered filing d
in one or more of my active/pending State & Federal Criminal
Court Cases & If I am preparing a legal pleading in one of such
Cases & I need to look up a Court-Rule and/or some legal inform
/research a case cite or Topic/issue from one or more of my person
then I was unable to do so as I did "not" have access to/posse
Such personal law books as the Defendants denied such

16. That, the denial by the Defendants of my personal Strong's
Exhaustive Concordance of the Bible, Smith's Bible Diction
Discovery Series Bible Study Booklets and Daily Guid
religious materials illegally denied me my religious ma
which I need & use for my religious study to me to
further information on different subjects topics
verses/chapters of the Bible and

meditational/Devotional Time in communing with God and

a daily Religious study and Devotional/Meditation Time is cr

to the very Foundation of my Religious beliefs and that witho

Stengls Exhaustive Conard ance of the Bible, Smith's Bible Diction

Discovery Series Bible Study Booklets and Daily Guidepost 2000 Re

materials, I had no Religious study/devotional Material & was una

& was denied my daily Religious study and devotational/meditation T

In violation of the basic tenets at the very foundation of my Religio

17. That, during this Same above-Referred time period I only

the Prison Protestant Chaplain 3 or 4 times (If even that man

18. That, on November 26 & 29, 1999, & on December 3, 6 &/o

was illegally denied my shower by Defendant Lt. Rhoades & t

officers, based upon other RHU Inmates making too much noise &

the RHU, although I was at my cell door already for a shower ins

19. That, when I complained to Defendants kyler & palakovich a

they did nothing about such, although they both could h

20. That, the denial of my shower in the above-Referred to c

me to develop skin sores from not being able to shower & there

clean & wash my body.

21. That, on November 26 & 29, 1999, I was illegally denied my

exercise/recreation time(s) by Defendant Lt. Rhoades & the RHU of

upon other RHU Inmates making too much noise & disrupting the o

I had signed up for such on each above-date(s) when the sign-up s

22. That, when I complained in writing to Defendant

kyler & Palakovich about such, they did nothing, although they both could ha

23. That, on November 21, 1999, a Plexiglass covering/shield w

placed over my cell door by RHU officers, thus causing poor ventilation

and excessive heat in my RHU cell.

24. That, this was done in retaliation for my exercis

my First Amendment Rights to Freedom of Speech.

25. That, I complained verbally and/or in writing to Defen

kyler, Palakovich & Rhoades about this, but they did nothing at

about such, although they each could have.

26. That, I was "not" yelling & disrupting the RHU on

November 21, 1999, and it was documented in writing in

in's on medical files that I am part deaf and hard of hea

in my right ear & that I talk loud as a result.

27. That, on December 1, 1999, Defendant Palakovich & the o

members of the P.R.C. improperly told Defendant Lt. Rhoad

RHU officers not to open up any of the RHU windows, but to leave the he

28. That, this caused the temperature in the RHU & in the RH

to become excessively hot & around/close to 100° (if not hotter) &

me to suffer & sweat excessively & unnecessarily & be extremely unc

physically & mentally.

29. That, when I wrote & complained to Defendant kyler about

failed to respond back to me and/or to do anything at all about such, alth

both the legal responsibility & authority to do so & he further complain

30. That, on or About January 10, 2000, Defendant Dragovich replaced Defendant kyler as the superintendent at SCI-Camp H...

31. That, on January 12, 2000, Defendant Dragovich also illegally... me my own personal soft cover law books in the RHU at SCI-Camp H...

32. That, on April 23, 2000, I had a mental health relapse... tried to kill myself by swallowing Nine (9) open staples from... legal work/legal materials in my RHU B2-57 cell, began to s... up blood & had to be taken out to the Emergency Room o... Spirit Hospital in Camp Hill, PA.

33. That, as a direct result of the above, Dr. Marth... medical director there, ordered that all of my legal, religio... personal property which I had in my B2-57 cell, be removed from... & checked for staples which were to be removed & then all... property from my RHU B2-57 cell, was to be returned to m... next day (April 24).

34. However, Defendant Officer Ruben dall (the SCI-Camp... property officer) did "not" comply with Dr. Lueky's order... staples from & return all of my property from my RHU B2... to me on April 24, 2000, before he left for the day at 4:00 P...

35. At approximately 4:30 P.m. on April 24, 2000, I was pl... hand cuffs, a black box, a steel waist chain & a padlock per the orde... Clark, chief psychiatrist as he had been told that I was hanging... my cell wall, & I remained in such restraints until Thursday, April 2...

36. On Thursday, April 27, 2000, Dr. Clark ordered that I be given back all of my legal, Religious & my other property from my RHU B2-57 cell on the next day (April 28, 2000).

37. However, again Defendant RHU Property Officer Rubendall disobeyed this order of Dr. Clark's also & only gave a little bit of my legal property, my T-Shirts, socks, undershorts and a couple law books of mine back then & failed to give me my Bible & the rest of my legal papers & law books which were the ones I really need to enable me to complete a legal pleading which was due to be filed in this Federal court, in Joe vs. Laskey, Civil No. 1:CV-99-160, by May 8, 2000, which he was aware of as I had verbally informed him of such then on this date of April 28th.

38. That, then when I spoke with Defendant Dragovich on this May 2, 2000, about the foregoing & the legal pleading due to be filed in Joe vs. Laskey, Civil No. 1:CV-99-160, by May 8, 2000, Defendant Dragovich ordered that I be given the remainder of my Legal, Religious & other Property which had been taken from my B2-57 cell back then.

39. That, because I still had not received such Legal, Religious property back here yet, on May 3, 2000, I discussed such matter with Defendant Deputy Superintendent Palakovich on my 30-day with Defendant Palakovich also ordered all of my Legal, Religious property from my RHU B2-57 cell be immediately returned to

40. Defendant Officer Rager is the RHU officer who assists Property Officer Rubendall with RHU Inmate Property & my about 12, 2000, he was the RHU officer processing property, when I working, as Defendant RHU Property Officer Rubendall was away on

leave during this above-referenced time frame & I was the one who received Defendants Dragovich's & Palakovich's orders to return my property to me as stated above.

41. That, Defendant Rager failed to follow & comply with the above-orders of Defendants Dragovich's & Palakovich's & did not actually return rest of my Legal, Religious & other Property back to me until May 12, 2000, causing me to miss my court-ordered filing deadline for the Legal Pleading in the case of State vs. Laskey, CRTNo. 1:CV-99-166, of May, 2000, which he, too, was aware of as I told him of such.

42. That, this here two week delay in the return of most of my legal materials & law books by Defendants Rubendall & Rager, also caused me to be at an increased risk of missing filing deadlines in my other State court cases or, at least, delaying the filing of pleadings in such cases because I did not have the case files in such other cases and as I am preparing a legal pleading in one of such other court cases & I look up a court rule and/or some legal information/research on a certain topic/issue from one or more of my personal law books, I was unable to do so as I did "not" have access to/possession of such law books of mine as Defendants Rubendall & Rager had disobeyed the order to return all of such back to me.

43. That, this here two week delay in the return of all of my legal materials completely denied me my rights to a/the freedom to practice a religion of my choice, as I had been illegally denied access to my religious materials by Defendants Rubendall & Rager & I did not have a Protestant minister or chaplain at all during such two week time period.

44. That Defendants Drago vich _and_ Palakovich failed to enforce their orders of May 2 & 3, 2000, although I wrote to each of them on May 4, 2000, & advised them of Defendant Roger's failure to comply with their orders & that I was about to miss my May 8, 2000 Filing deadline of which I had informed them both of on May 2 & 3 & that if I did miss such I would sue & they both still failed to do anything about such & thus they both also caused me to miss my filing deadline of May 8, 2000.

45. By failing to enforce their Orders of May 2 & 3 for the return of such Religious property of mine (my Bible, Bible Study Pamphlets), Defendants Drago vich & Palakovich each compounded the delay of such, as well as each compounded the violation of my Religious Freedom Rights as to such.

46. On May 31, 2000, I verbally informed Defendant Deputy Palakovich at my 30-day PRC Review that I was being transferred to the SAU at SCI-Waymart on Tuesday, June 6, 2000, & that I have Religious Materials as well as Legal Materials down in my RHU Property Boxes that I want to take with me to Waymart & could I have such before my transfer.

47. That Defendant Deputy Palakovich then replied, "You'll be lucky to get your legal materials to take with you." Quote/Endquote.

48. Also, on November 26, 1999, I was denied my personal religious Books from my stored property by Defendant Lt. Rhoads

49. That, Plaintiff avers & states that, just because it is indicated on the RHU Property Officer's Notes on my property that on the date listed that legal and/or religious materials (property) was was exchanged does "not" necessarily mean that I actually went to go down stairs to the RHU Property Room to go through my stored Property Boxes & exchange legal and/or religious materials (property). It could also mean and refer to the times when the R H U Property Officer would bring me up legal and/or religious materials and & I would give him some from my cell for those ones and/or when something came in through the mail for me & he brought such up to me. The only dates that I actually went downstairs to the RHU Property Room to go through my boxes of stored property exchange legal and/or religious materials was on 11-26-99, 1-30-00, 2-13-00, March 2000, and on May 25, 2000, all other dates indicated on the Property Officer's Notes was when he brought legal and/or religious materials to my cell to exchange for some of the ones in my cell.

50. That, I either have fully exhausted my "available" administrative remedies as to all issues & claims raised in this case in the complaint, and attempted to exhaust such _____ administrative remedies issues and me but I was illegally prevented from doing so by the Defendant's Grievance Coordinator Ben C. Livingood, at SCI-Camp Hill.

"I, Plaintiff & Pro Se Counsel John Richard Joe, hereby affirm under penalty of perjury pursuant to 28 U.S.C. §1746, that the above & foregoing is true & correct to the best of my knowledge, information and belief."

Signed this 2nd day of OCTOBER, 2001 (S) _____

John Richard Joe

Executed At: Waynesburg, Pennsylvania:

MR. JOHN RICHARD JOE, #BQ-3019

SCI-Greene/SMU

175 Progress Drive

Waynesburg, PA 15370-806

Plaintiff and Pro Se Cou

Plaintiff's Exhibit — E

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,

    PLAINTIFF,

    VS.

KENNETH D. KYLER,
JOHN A. PALAKOVICH,
Lt. WILLIAM J. RHOADES,
OFFICER RUSSENDALL and
OFFICER RAGER,
    Defendants.

CIVIL No. 1:CV-00-0[...]
U.S. District Judge Ra[...]
Magistrate Judge Smys[...]

PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

Plaintiff John Richard Jae avers, deposes & states, under penalty of perjury & pursuant to 28 U.S.C. 81746, that, Def[...] have moved for Summary Judgment herein the above-entitled Civil Rights Action. Pursuant to Local Rule M.D. LR 56.1 o[...] this court, the Plaintiff submits the following list of genuine issues of disputed material facts that require the denial of Defe[...] Summary Judgment Motion, herein this case.

1. Whether Defendant Lt. Rhoades order the RHU Prope[...] officer & RHU sergeant not to give this Plaintiff hi[...] personal softcover Lawbooks or his own Religious mat[...] other than a Bible, on November 26, 1999?

2. Whether Defendant Palakovich Denied Plaintiff his own personal softcover Law Books on December 1, 1999?

3. Whether Defendant Lt. Rhoades denied Plaintiff his own Religious materials on December 14, 1999?

4. Whether Defendant Palakovich denied Plaintiff his Religious materials on December 1, 1999, by failing to order the RHU staff to give such to Plaintiff?

5. Whether Plaintiff was denied his own personal softcover books from November 26, 1999, — February 13, 2000?

6. Whether Plaintiff was denied his own religious materials other than a Bible from November 26, 1999 — January 20, 2000?

7. Whether Plaintiff had an opportunity to get his other religious materials from his property on November 26, 1999?

8. Whether Plaintiff was denied a Shower on November 26 & on December 3, 6 & 13, 1999?

9. Whether Plaintiff was denied outside exercise/recreation on November 28 & 29, 1999?

10. Whether Plaintiff was yelling and disrupting the RHU on November 21, 1999?

11. Whether Plaintiff's cell was extremely hot in Novem
and December, 1999?

12. Whether the placing of the plexiglass over the
Plaintiff's cell Door caused Poor ventilation in the Plaintiff
RHU cell?

13. Whether Defendants have prohibited the Plaintiff fr
exchanging his legal and religious materials every 30days fro
his stored Property in the RHU?

14. Whether Plaintiff attempted to exhaust his avail
Prison Administrative Remedies?

(S) _____ John Richard Ja

MR. JOHN RICHARD JAE
#BQ-3219
SCI-Greene/smu
175 Progress Drive
Waynesburg, PA. 15370-8

Dated/Executed on:

1st OCTOBER 2001:

At: Waynesburg, Pennsylvania:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,
          Plaintiff,

     vs.

KENNETH D. KYLER,
JOHN A. PALAKOVICH,
LT. WILLIAM J. RHOADS
MARTIN L. DRAGOVICH,
OFFICER RUBEN ALL and
OFFICER RAGER,
          Defendants.

CIVIL No. 1:CV-00-

U.S. District Judge

Magistrate Judge Smy...

PLAINTIFF'S DECLARATION IN OPPOSITION TO DEFENDA...
MOTION FOR SUMMARY JUDGMENT AND
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Plaintiff John Richard Jae, pursuant to M.D.L...
M.D.LR56.1 now files his Plaintiff's Declaration In Oppo...
to Defendants' Motion For Summary Judgment And Defend...
of Undisputed Facts, herein this case & avers, deposes & sta...

A. Plaintiff's Opposition To Defendants' Motion For
Summary Judgment

That, he opposes Defendants' Motion For Summary J...

herein, based upon that which he states, argues ...
forth in his accompanying Plaintiff's Brief In...
Opposition To Defendants' Motion For
Summary Judgment And Memorandum...
Law In Support, submitted here with...

B. Plaintiff's Opposition To Defendants' Statement of Undispute

1. Plaintiff, by way of response, states that he ac/does not dispute/oppose Paragraph No. 1, of Defendants' State of Undisputed Facts, except that he disputes that he was transfered to the Restricted Housing Unit on 19, 1999, as the date that the Plaintiff was transfered to the Restricted Housing Unit at SCI-Camp Hill was November 19, 1999, May 19, 1999, as Defendants claim/state.

2. Plaintiff, by way of response, states that he dispute /opposes Paragraph No. 2 of Defendants' Statement of Un Facts, except he admits/does not oppose that the plexiglass was placed on Plaintiff's cell door on November 21, 1999. Further Plaintiff avers & submits that, he was "not" yelling & disrupti cell block, on November 21, 1999, as he was talking to other inmates RHU in a tone of voice which is normal for him as he talks he is part deaf & hard of hearing in his right ear, which in writing in his Prison Medical Records/File. [1]/

3. Plaintiff, by way of response, states that he admits/do dispute/oppose Paragraph No. 3, of Defendants' Statement of Undis

4. Plaintiff, by way of response, states that he admits/be not di Paragraph No. 4, of Defendants' Statement of Undisputed Facts,

[1]/ See Plaintiff's Exhibit I-3 —, of the a ccompany of Exhibits, which is the RHU property office's statement

disputes, as untrue, any indication that religious mater
and/or legal materials exchange was permitted to him e
30 days in the SCI-Camp Hill RHU.

5. Plaintiff, by response, states that he disputes/oppos
paragraph No. 5, of Defendants' Statement of Undisputed facts. Plain
avers that he disputes/opposes such paragraph No. 5, becau
Defendants "lie" & knowingly, willfully & maliciously commit fa
therein, as Plaintiff was "not" on cell restriction on November
1999, a fact which Defendants have previously admitted,
herein this case, although it "is" true that Plaintiff
was denied a shower & yard on November 26, 1999, and he d
dispute/oppose that.

6. Plaintiff, by response, states that he admits/deni
paragraph No. 6 of Defendants' Statement of Undisputed Fa

7. Plaintiff, by response, states that he disputes/opposes p
No. 7, of Defendants' Statement of Undisputed Facts. Plaintiff ave
disputes/opposes such paragraph No. 7, because that stated there
untrue, as this Plaintiff "was" indeed actually prohibited from po
the exchange procedure and obtaining any legal or religious books
from his stored property, given the facts that the Defendants denied
own personal soft cover law books from November 26, 1999,— Febr
and also denied him his religious materials from November 26, 1999, January 3,

Cont'd — to me and why would I have a hearing and medically proceed?
if I was not part deaf/hard of hearing in my right e
2/see Defendants' Answers to Plaintiff's First Set of Interro
Interrogatory No. 6.

fact that I was not actually taken downstairs to the RHU Property Room to go through my stored property as required by DOC Policy, except on November 26, 199_ and on January 30, 2000, & then again on Februrary 13, & March 16, 2000, & on May 25, 2000. [3] Furthermore, Plaintiff avers that If it is true, as Defendants claim, that I was not prohibited from following the exchange procedure and obtaining any legal or religious books or papers from his stored property, then how's come Plaintiff "was" denied his personal law books from 11-26-09 — 2-13 his religious books/materials from 11-26-99 — 1-30 & why did Plaintiff not go downstairs to the RHU Property to exchange his legal and religious materials for all 2½ months from March 16, — May 25, 2000, as "IS" shown by the RHU Property Officer's Notes, although he require such? This "IS" proof that the Defendants "lied" in their statement of Undisputed Facts, at Paragraph No. 7.

8.  Plaintiff, by response, states that he disputes Paragraph No. 8, of Defendants' Statement of Undisputed because such "IS" untrue, as in November and Decem Plaintiff Jones cell "was" excessively hot.

(W) HEREFORE, Plaintiff and Pro Se Counsel John Richard Jae, affirms & declares under penalty of perjury and pursuant to 28 U.S.C. §1746, that the foregoing is true & correct to the best of his knowledge, information and Belief:

RESPECTFULLY SUBMITTED

(S) _____ John Richard Jae
MR. JOHN RICHARD JAE,
#BQ-3319
SCI-Greene/SMU
175 Progress Drive
Waynesburg, PA. 15370-8

Plaintiff and Pro Se Counsel

Dated/Executed On:
1st OCTOEBER 2001:
At: Waynesburg, Pennsylvania:

**DC-153**

# INMATE PERSONAL PROPERTY INVENTORY

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

☐ Transfer  ☑ Hold  ☐ Initial Disposition  ☐ Other

Method of Disposition
S-Ship    R-Return to Inmate
D-Destroy    H-Hold for Inmate

**A 134708**

| DC Number | Name |
|---|---|
| BQ 3219 | JAE |

| CLOTHING & ACCESSORIES | | | GROOMING ITEMS | | | TOBACCO ITEMS | | | MISCELLANEOUS ITEMS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ITEM | NO. | METH. | ITEM | NO. | METH. | ITEM | NO. | METH. | ITEM | NO. | | ITEM | NO. |
| Ath. Shorts | | | T-Shirt | | | Ash Tray | / | | Bag-Laundry | / | | Playing Cards | |
| Ath. Supports | | | Undershirt | 6 | | Cigarette Papers | | | Basin | | | Posters | |
| Belt | | | Undershorts | 5 | | Cigarette Roller | | | Batteries | | | Religious Books | 6 |
| Cap STATE | / | | Underwear Bot. | / | | Cigarettes-Car. | | | Books | 31 | | Religious Mat. | |
| Coat | | | Underwear Lg. | | | Cigarettes-Pkg. | | | Bucket | | | Religious Metal | |
| Coat-Rain | | | Underwear Top | | | Cigars | | | Carbon Paper | 2 pks | | Rug | |
| Coat-Top | | | Vest | | | Lighters | | | Checkers | | | Ruler | |
| Gloves | | | GROOMING ITEMS | | | Matches | | | Chess | | | Spoon | |
| Handkerchief | | | | | | Pipe | 2 | | Cup | / | | Tablet Paper | |
| Hat STATE | / | | ITEM | NO. | METH. | Pipe Cleaners | | | Dictionary | 4 | | Thread | |
| Jacket | | | Brush | | | Pipe Filters | | | Earphones | | | Tissue | |
| Overcoat | | | Comb | / | | Tobacco-Chew | | | Envelopes STATE | 10 | | Tub | |
| Pajamas | | | Dental Floss | | | Tobacco-Cig. | | | Erasers | | | Typing Paper | 2 |
| Robe | | | Denture Cup | | | Tobacco-Pipe | / | | Extension Cord | | | Wallet | 2 |
| Scarf | | | Dentures | | | Tobacco-Pouch | | | Eyeglass Case | | | Wastebasket | |
| Shirt | | | Deodorant | | | Tobacco-Snuff | | | Eyeglasses | / | | Writing Paper | |
| Shoe Brush | | | Hair Dressing | | | FOOD ITEMS | | | Eyeglasses-Sun | | | Lgl Envelopes | |
| Shoe Polish | | | Hair Pick | | | | | | Games | | | Photo ID | |
| Shoes-Boots (3) | / | 22 | Lotion-Shave | | | ITEM | NO. | METH. | Glass | | | | |
| Shoes-Dress | | | Lotion-Body | | | Candy-Bag | | | Gym Bag | | | | |
| Shoes-Over | | | Lotion-Hand | | | Candy-Bars | | | Headset | | | Rec 11, 23-99 | |
| Shoes-Shower | / | PR | Mirror | / | | Chips | | | Key Ring | | | U-Shirt | |
| Shoes-Sandal | | | Nail Clippers | / | | Coffee | | | Keys | | | U-Shorts | |
| Shoes-Sneakers | | | Petroleum Jelly | | | Cookies | | | Lamp | | | Socks | |
| Shoes-Tennis | | | Razor | | | Crackers | | | Legal Books | 32 | | Comb | |
| Shoes-Work | | | Razor Blades | | | Creamers | | | Legal Material ALL | | | Razor Blades | |
| Shower Cap | | | Shampoo | | | Drink Mix | | | Lock | | | Ipk tobacco | |
| Slippers | | | Shaving Cream | | | Hot Chocolate | | | Loose-leaf Bnd. | | | Bible | |
| Socks | 2 PR | | Soap | / | | Peanuts | | | Magazines | 10 | | Dictionary | |
| Suit | | | Soap Dish | | | Pretzels | | | Neck Chain | | | Sh Sorts | |
| Sweat Belt | | | Talcum Powder | | | Sugar | | | Needles | | | Legal not | |
| Sweat Pants | | | Toothbrush | / | | Tea | | | Notebook | | | | |
| Sweat Shirt | / | | Toothpaste | / | | | | | Pencils | | | | |
| Sweat Suit | | | Towel | | | | | | Pencil Shrp. | | | | |
| Sweaters | | | Tweezers | | | | | | Pens | 2 | | | |
| Tie | | | Washcloth | | | | | | Photo Album | | | | |
| Trousers | | | Bismatol | | | | | | Photographs | | | | |
| | | | Folders 16 | | | | | | Catalogs | 2 | | | |

| ITEM | DESCRIPTION OR SERIAL NO. | NO. | METH. | DESCRIPTION OR SERIAL NO. | |
|---|---|---|---|---|---|
| Briefcase | PAPER | | 41 | 4 Legal Boxes Containing All | |
| Calculator | | | | Legal And All Misc Papers | |
| Footlocker | NO TV | | | All paper's Limited By Inmate | |
| Guitar | | | | JAE. | |
| Guitar Case | No Jewelry | | | | |
| Guitar Strings | | | | 3 Library Books Returned to t | |
| Medical Bracelet | | | | Library     1. ANNE Perry with | |
| Phone # 990626 | FAN W/Cord | / | | 2. Prince Charming | |
| Ring | | | | 3. The 10th Commandm | |
| T.V. | | | | | |
| T.V. Antenna | | | | 12-20-99 EXCHanged Legal Mater | |
| Typewriter | | | | 12-24-99 1 Hrd Bk Book Mled in Pro | |
| Typewriter Case | | | | 2-13-00 Exchanged legal material | |
| Watch | | | | 2-14-00 3/4 of Box Stored After legal m | |
| | | | | 2-15-00 1/2 of White Paper given to inmate | |

| MAIL TO | | Articles marked "S" mailed (signature and title) | Date |
|---|---|---|---|
| ID CARD | 4 Boxes | — | |

The property described above was inventoried and processed as indicated

Signature of Property Officer — Craig    x _John Rd_
Institution — SCIC

Signature of Inmate — 11-23-99
Date

The property above was received and processed

Signature of Property Officer — _____    x _John Ba_
Institution — SCTC

Signature of Inmate
Date

EXCHANGED Rel & Legal Rudall
1-30-00

ISSued 20 Sheets of Typing
Paper per Lt funk

2-29-00 Rudall
2-13-00 Property Exchange Rudall

3 BROWN file BRIEFCASE (CARdBOARd)
Placed IN Property 3-10-00
Rudall

3-16-00 Legal + Rel Exchange Rudall
Returned 3 Religion Books Wants
Rudall 3 in place When they come in
3-21-00 Placed March Issue of Globe En Prop.
4-27-00 Globe placed In Prop Rudall

4-27-00 Placed EyeGlasses In Property Rudall

4-28-00 Started Removing Staples from
All of Joe's Cell Property ( per Lt Rhoades)

5-3-00
Returned 6"
Of loose legal
Papers, He now
~~Has Box of legal~~
Returned ~~the~~
~~legal lamp onto vat~~
to Vac 5-12-00
Roger

4-28-00 Returned
2 Shorts
2 Used Shirts
1 Pr Shower Shoes
1 Pr Socks
9" legal
8 Law Books
1 Pen
hard Books

( Has a full Box now )

5-25-00  Spent 30 min looking thru legal
         boxes   per PRC Def Palakovich

6-3-00  JAE started to sort property for T.T
        Rundall    Time 1/2 (officer Torres escort)

_____

6-4-00 (Raber & Resendoll) Had JAE down to
finish sorting property. JAE did agree
to 4 Box limit on property per policy.
He placed misc. papers & booklets, books
in trash bag. Then later refused
to sign the confiscation items
slip.
              6-4-00  Rundall
_____

7-18-00 Ret to RHU.  left with 2 boxes ret with 3 boxes
7-25-00 Received Hearing Aid  Per Lt. Lady

7-27-00 JAE downstairs going thru legal
        picking his mat. out 1-Box (legal + rel)
        stated that some may be in
        his bed at Walmart
7-27-00 Re issue 1-box legal mat.
        2 shirts  1 shower shoes
        2 shorts 2 socks Bible, 1 comb
        mailed 1 box out now back to 4 per policy
7-29-00 Received 2" of misc papers trash for disposal
7-30-00 Issued approx. 2" legal paper + rec. 2" also 2 folders email
        to place in property
7-28-00 placed 1 prison pursuit envelope in his (post pd)

8-28-00 per PRC Plokevick JAE to look for legal papers
        JAE assured property officer did not get
        legal papers

**DC-804**
**PART 1**

RECEIVED
DEC - 8 1999

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. Ben C. Livingood | SCI-Camp Hill | 12-05-99 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| MR. John R. Doe, #BQ-3219 | (s) John R. Doe | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| None | RHU A2-34 cell | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

This Grievance concerns conditions in the RHU here & is lodged against RHU Lieutenant/Unit Manager Lt. Rhoades & the RHU.
I am being illegally denied my U.S. constitutional Rights to have my religious material in my RHU cell here in violation of the 1st Amendment to U.S. Constitution and also DC-ADM. #801-2. of August 16, 1995. I am also being illegally denied my right to showers three times a week & outside exercise/recreation one(1) hour per day, 5 days per week in violation the 8th Amendment to the U.S. Constitution and also DC-ADM #801. VI. D.8 to other inmates here in the RHU being loud, although I am not. I have also been unconstitutionally subjected to poor ventilation & excessive heat in the RHU officers have placed a plexiglass covering over my cell door in retal for my exercising my rights to freedom of speech and refusing to open the window but leaving the heat on, which violates the 1st & 8th Amendments of U.S. Con. I bring this grievance under DC-ADM #801. VI. A. 5. I request I be given permission

B. Actions taken and staff you have contacted before submitting this grievance:

I have first tried to informally resolve the above matter by discussing or attempting to discuss such with the on 12-01-99 and/or with RHU Lt. Rhoades on 12-01-99 & 12-04 but to no avail. I have also discussed such with the RHU sgts. & officers

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                    _____
Signature of Grievance Coordinator                    Date

**COMMONWEALTH OF PENNSYLVANIA**
**SCI-CAMP HILL**

DATE   :   *12/8/99*

SUBJECT:  Consolidated Inmate Grievance Review System

TO    :   *John Jae    BQ-3219*
          *D*

FROM  :   *[signature]*
          Ben Livingood
          Corrections Superintendent Assistant

I am returning your grievance because you have not complied with the following provision(s) of DC-ADM 804 (Consolidated Inmate Grievance Review System):

_____    All grievances shall be in writing and in the format provided by the forms supplied at the institution. Forms are available on all cell blocks. (Section VI, A1)

_____    All grievances shall be presented individually.  Group grievances are prohibited.  (Section VI, A2)

_____    Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance. (Section VI, A3)

_____    Grievances must be signed. (Section VI, A3)

_____    All grievances must be presented in good faith.  They shall include a brief statement of the facts relevant to the claim.  The text of the grievance must be legible and presented in a courteous manner. (Section VI, A4)

_____    Grievances based upon different events should be presented separately, unless necessary to combine to support the claim. (Section VI, A5)

*✓*    Section VI, <u>Initial Review</u>, E, states that any inmate grievance may be addressed to the Inmate Grievance Coordinator except issues related to the following:

(1.)    DC-ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures.
       *PRC matter.*

2.     DC-ADM 802 - Administrative Custody Procedures.

3.     DC-ADM 805 - Policy and Procedures for Obtaining Pre-Release Transfer.

4.     DC-ADM 814 - Incoming Publications.

5.     Other kinds of issues for which review procedures have been previously established by administrative memorandum or policy statement.

continued – reverse side

**DC-804**
**PART 1**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

RHU-L1

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | CAm-0295-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. Pence - LWilliams Jr. | SCI-Camp Hill | 5-08-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| MR. John R. Jne #BA-3219 | (S) John R. Jne | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| None | RHU B1 04-Cell | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance: This grievance is lodged against RHU Property office Ruben dill & Roger here for their deliberate & malicious game playing & failure to do their job here & give me back all of my legal, religious & other property which was removed from RHU-2 cell at 4-23-00-8 which was ordered to be all given back to me on 4-27-00 by SCI-Camp Hill & Chief Psychiatrist Clark & my P.R.C. & for their illegal & deliberate & malicious denial of all of such legal, religious & other property of mine here 11 days later after such was ordered returnt me. Such denial of my legal papers here caused me to miss a court-ordered filing date in Jne docket Civil No.1:CV-00-1610 of May 8 &2000, & illegally denied me access to legal materials & access to the courts in violation of 1st Amend. U.S. Const. denial of my religious books & Bible violated my religious freedom rights under 1st Amend. U.S. Const. Such a violation of DC-ADM 801.V1. M.S. I request a personal interview on this gr...

B. Actions taken and staff you have contacted before submitting this grievance:
I first tried to informally resolve the above-matter by complaining about such both verbally & in writing to Supt. Dragovich on 5-01-00 & 5-01-00-01. Deputy Supt. Palakovich & the P.R.C. on 5-3... I also discussed this with Unit Manager Spork, my counselor & 3 different CO's of...

Your grievance has been received & will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator

**COMMONWEALTH OF PENNSYLVANIA**
**State Correctional Institution at Camp Hill**

**DATE**:        August 11, 2000

**SUBJECT:**    Appeal to Superintendent
              Grievance No. CAM-0295-00

**TO:**         John Jae
              BQ-3219
              D Unit

**FROM:**       Martin L. Dragovich
              Superintendent

Receipt of your Appeal to Superintendent of Grievance CAM-0295-00 is acknowledged.  In preparing this response, I have reviewed your original grievance, the grievance officer's response, and your appeal to this office.

Again, as in Grievance CAM-0346-00, a response was prepared upon your return from the SAU at SCI-Waymart.  As noted earlier in the previous grievance, this did not have a consequential effect on the processing of your grievance as your grievance appeal has been accepted for processing.

As for the grievance itself, it is noted that you did not cooperate by accepting the papers in question when officers attempted to give you your legal property, but instead became hostile and threw your papers on the tier.  You have admitted as much in your appeal to this office.  While you claim their actions were deliberate, it may very well have been accidental or you did not provide them with enough information.  Either way, your actions were inappropriate, and your must accept some of the responsibility for any delays you may have incurred.

Based on the foregoing, your appeal is denied.

MLD/lp

cc:     Deputy Novotney
        Deputy Palakovich
        Mr. Livingood
        Mr. Spirk
        DC-15
        File – CAM-0295-00

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1451 N. MARKET STREET**
**ELIZABETHTOWN, PA 17022**

**OFFICE OF THE**
**CHIEF HEARING EXAMINER**

September 8, 2000

John Jae, BQ-3219
SCI Camp Hill

Re:    DC-ADM 804 - Final Review
       Grievance Nos. CAM-0295-00 & CAM-0346-00

Dear Mr. Jae:

This is to acknowledge receipt of your appeal to final review of the above numbered grievances.

In accordance with the provisions of DC-ADM 804, VI D, as amended effective November 1, 1997, I have reviewed the entire record for each of these grievances, including your initial grievance, the Grievance Officer's response, your appeal from initial review and the Superintendent's response. I have also carefully reviewed the issues you raise to final review.

Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. I find the issues raised for final review have been addressed by the Grievance Coordinator and the Superintendent, and their responses are reasonable and appropriate.

I concur with the responses already provided at the institution level. Accordingly, your appeals to final review must be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:bjk

pc:    Superintendent Dragovich

xo /Form = One
35A

DEC 1 1999

DEPUTY SUPERINTENDENT
FOR CENTRALIZED SERVICES

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

NMATE'S REQUEST TO STAFF MEMBER

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing
your request, it can be disposed of more promptly and intelligently.*

(NAME AND TITLE OF OFFICER)
he Program Review Committee o

2. DATE  11-28-99

(INSTITUTIONAL NAME AND NUMBER)
Stood R. Moore BR 3019p John Te. Joe

4. COUNSELOR'S NAME
MR. Kerstetter

RK ASSIGNMENT  None

6. QUARTERS ASSIGNMENT  RHU A2-34

JECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.  GIVE DETAILS.

on = 11-24-99, I saw & spoke with you & inquired as to
ether I could have my soft cover law books in my RHU
ll as I need to have such available to me when I am
=paring a court pleading to one of my current/pending
state & federal court cases & need to legally research an iss
working on and/or when I need a case cite for such and I
ot afford to wait til the RHU staff gets ready to take me to the RH
Law Library here because of the delay involved for such and you
me to submit a Request to RHU Lt. Rhodes can give him a list
my law books I wanted from my property, which I did do on
ever, on 11-26-99, when I was finally permitted to go thru m
party here in the RHU - RHU Property Officer Craig illegally

OSITION: (DO NOT WRITE IN THIS SPACE)

Mr. Joe:
Deputy Palakovich
addressed these issues with
you today -

O DC-14 CAR ONLY

☑ TO DC-14 CAR AND DC-15 IRS

EMBER

DATE 12-1-99

e/ Form=-two-

35A

## COMMONWEALTH OF PENNSYLVANIA

### DEPARTMENT OF CORRECTIONS

**INMATE'S REQUEST TO STAFF MEMBER**

### INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| (NAME AND TITLE OF OFFICER) | 2. DATE |
|---|---|
| he Program Review Committee, | 11-28-99 |

| (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
|---|---|
| R- John R. Joebba-32199, John R. Inc | Mr. Lenstetter |

| RK ASSIGNMENT | 6. QUARTERS ASSIGNMENT |
|---|---|
| None | RHU A2-34 Cell |

JECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

enied me my softcover Law Books from my property here,
ating that the P.R.C. had not approved such for me (?)
Also, on 11-26-99, RHU Property Officer Craft/Small
enied me my other religious material books beside
y bible, despite the fact that DC-ADM #801-2-P
tes that I am allowed to have such in my cell) records center to
h property I am allowed to have in my cell on DC Status in the RHU.
Therefore, I request that you, the P.R.C. approve my own
soap/soft cover law books & religious materials for me t
e here in my RHU cell & that you order RHU Property Officers Craft &
mall to immediately give such to me here - to deny me such is t
CONSTITUTIONAL Rights of Access to the Courts & to Freedom of Religion &

OSITION: (DO NOT WRITE IN THIS SPACE)

☐ DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

EMBER                    Plaintiff's Exhibit -L-                    DATE

This ☻ A List of My Federal Law Books
I Need And Request From My Property Here

1. Prisoners' Self-Help Litigation Manual
2. Federal Rules of Civil Procedure Phamplet
3. Federal Rules of Appellate Procedure Phamplet
4. Federal Rules of Evidence Phamplet
5. U.S. Supreme Court Rules Phamplet
6. U.S. Constitution Phamplet

7. Pa. Constitution
8. Secret Tools of Post-Conviction Relief (2)
9. Criminal Procedure In A Nutshell
10. Appellate Advocacy In A Nutshell
11. The Law of Corrections, Sentencing And Prisoners'
    Rights In A Nutshell
12. The 55 PA Code Phamplet

OFFICE OF
THE SECRETARY

DEC 0 6 1999

REFERRED

November 30, 1999

Dr. Jeffrey Beard,
Executive Deputy Secretary
Pennsylvania Department of Corrections
P.O. Box 598, 2520 Lisburn Road
Camp Hill, PA. 17001-0598

Dear Executive Deputy Secretary Beard:

I am writing & sending you this here letter to advise
you of several problems/rights/DOC policy violations that are
going on here at SCI-Camp Hill, which are as follows:

1) Mr. R. G-Imler, SCI-Camp Hill Business Manager
is refusing to comply with and follow the provisions of DC-ADM
302-VII-C-1, in that he illegally refuses to provide/disburse
me with indigent legal pads, when this inmate clearly indigent
in his prison account has a negative balance of funds
in the red box, of the above provided this inmate with a indigent
legal pack he only does so once a month, although DC-ADM 802
II-C-1-d-(a)-2 clearly states that if one legal pack is not
enough I may request and receive one more additional pack
per month.

Mr. G-Imler illegally & claims he never receives my
inmate request forms to him for such legal pack(s), but yet
all other staff members have receive my request forms to
them when I write and send to them. This indicates that he
is perpetrating bringing legal/court pleadings in my life active
state & federal court cases and delays such and at times even
causes me to miss court-ordered filing deadlines on ...

Page - two -

2) I have been illegally denied my rights under federal law/federal court decisions to have other inmates here at SCI-Camp Hill (when I was still in general population) assist me with my legal/court cases, in that, I have been illegally denied my rights to have other inmates possess my legal papers & other legal materials, as when I am such to another inmate here, such was illegally contrast to destroyed by the officers & the security/officers here and was told that if any more legal material is brin/be/found in another inmates possession in another block/housing unit such would be confiscated & destroyed again, here & I could't given a misconduct for such. This violates numerous U.S. Supreme Court and other federal courts cases decisions & federal laws, especially since I do not yet/haven't met the criteria for legal assistance from the institution/an final legal here.

3) I am current being housed in this prison's RHU here in DC custody status, and I am being illegally denied my state/federal constitutional rights to freedom of speech, in that, when I talk to other inmates here in the RHU I am told to get off my door and shut-up by the RHU officers & that I don't do so then I am subject to a misconduct report by RHU officer for refusal to obey an order.

[further lines illegible]

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P. O. BOX 598
P. HILL, PENNSYLVANIA 17001-0598

RECEIVED
Office of Attorney General
JUN 2 5 2001
Litigation Section

Litigation Section

OFFICE OF THE
SECRETARY OF CORRECTIONS

December 9, 1999

John Jae BQ-3219
SCI-Camp Hill
P.O. Box 200
Camp Hill, Pa 17001-0200

Dear Mr. Jae:

Your letter to Executive Deputy Secretary Beard was referred to my office for response. There are specific procedures and guidelines for you to follow so you may obtain legal materials required for meeting active court deadlines. I am forwarding your letter to Superintendent Kyler and his staff will address your concerns.

The complaints that you are expressing should be addressed at the institutional level. Your Unit Management Team or Program Review Committee is more than capable of addressing your concerns.

Sincerely,

James D. Morris
Inspection Team Lieutenant
Specialized Facilities and Programs

JDM

cc: Superintendent Kyler (w/attachment.)
    Central Files
    File

PLAINTIFFS EXHIBIT—M—

To: Superintendent Dragovich,
SCI-Camp Hill

Re: "My 5-21-00 Letter Advising You of
Violation of DC-ADM.#801-VI.M.S.In the RHU"



RECEIVED
SUPT. SCIC

MAY 23 2000

Referred _____
pc

Mr Jee—
Your request
has been referred
to PRC to be addressed
w/RHU staff during
their weekly
liveision
5/24/00
M Dragovich

Superintendent Dragovich, Sir,—

I am writing & sending you this
here letter to advise you here in writing that there
"is" an ongoing & Repeative Violation of DC-ADM.#
VI.M.S.— being committed in the RHU here by RH
Property Officers Rubendall & Rager, who refuse to a
me to go down to my property to exchange Legal and
Religious Materials once every thirty days, as is sho
proven by the absolute fact that I have "not" been d
to my property here in the RHU Property Room and have "
been allowed to exchange my legal and Religious mat
since March 15, 2000, although I had submitted
seperate written Inmate Request Forms to go an
to them and to the RHU Lt. Rhoades on April 12, 200
on May 11, 2000. on May 12, 2000 the rest of my prop
removed from RHU B2 S17-cell here was returned
here, however, I was "not" allowed to go to my prop
and exchange legal and ~~and~~ religious material
I had requested in writing on 5-11-00 and in
of DC-ADM.#801-VI.M.S.

Now it has once again became crucial for me to
down to my property here to do so as I have a Cour
that certain pleadings are due to be filed in federal Ca
Joe vs. White, Civil Action No. 96-612, by June 2, ___
extensions of time will be granted and the case papers I
to enable me to meet such filing deadline are down
property here in the RHU Property Room and thus, I reque
you order RHU Property Officer Rubendall to have me bru
to my property this here week to do so & I request your wri
back to me on this here letter to you:   (s)—MR.—————————



**POLICY STATEMENT**

Commonwealth of Pennsylvania ● Department of Corrections

| Policy Subject: | | Policy Number: |
|---|---|---|
| INMATE DISCIPLINARY AND RESTRICTED HOUSING PROCEDURES (DC-ADM 801) | | DC-ADM 801 |
| Date of Issue: May 20, 1994 | Authority: | Effective Date: Sept. 20, 1994 |

## I.    Authority

The authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901 (b) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 175, as amended.

## II.   Purpose

A consistently applied system of sanctions in response to inmate violations of Department of Corrections rules and regulations is established to ensure the safe and orderly operation of institutions and Community Corrections Facilities.

## III.  Applicability

This policy shall be applicable to all inmates and staff in all Department of Corrections' facilities and Community Corrections Centers.

## IV.  Definitions

For the purpose of this policy, the following definitions shall apply:

A.  Central Office Review Committee (CORC) - A panel of at least three (3) Central Office staff members appointed by the Commissioner, including an attorney from the Office of Chief Counsel, which conducts final reviews of institution grievance and misconduct appeals.

B.  Disciplinary Custody - The maximum restrictive status of confinement to which inmates guilty of Class I misconducts may be committed. Inmates shall be placed in disciplinary custody status for periods no longer than ninety (90) days per misconduct report.

C.  Hearing Examiner - An employe of the Department of Corrections Central Office who conducts inmate misconducts hearings. The hearing examiner reviews evidence. determines relevance of witnesses, interviews witnesses, determines guilt or innocence, and imposes sanctions consistent with this policy.

D.  Misconduct - Any violation of Department of Corrections Rules, Regulations or Policies as outlined in Section VI of this policy.

E.  Pre-Hearing Confinement  -  A temporary administrative status of confinement  in the inmate's general population cell or the RHU pending the outcome of a misconduct hearing.

EXHIBIT 4

801-1

DC-ADM 801

The Superintendent or PRC may change an inmate from DC status to AC status only upon expiration of the DC sanction and only if proper notice and hearing procedures are provided as outlined in DC-ADM 802.

At any time, the Superintendent's designee may reduce the disciplinary sanction imposed on any inmate other than those with misconducts involving bodily injury, attempts to commit bodily injury or use of a weapon, based on the security needs of the institution in accordance with the "Administration of the Restricted Housing Unit" policy. When this occurs, the Superintendent shall notify the Regional Deputy Commissioner via Weekly Status Report.

8. In cases of multiple misconduct sanctions, the Superintendent may reduce the total amount of disciplinary time based upon positive adjustment by the inmate. Disciplinary time cannot be reduced beyond the longest sanction imposed per misconduct report for Category A charges or half of the longest sanction imposed for other category charges.

9. The PRC or the superintendent will have the discretion to reduce disciplinary sanctions for mental health cases.

**D.   RHU Procedures for Disciplinary Custody Status Inmates**

1. Disciplinary custody status inmates are housed in separate cells from general population and administrative custody status inmates.

2 . Smoking in the disciplinary custody status housing area will be limited to one pack of cigarettes every two (2) weeks, to be purchased from the institution commissary. Indigent inmates may be provided with cigarettes consistent with policy 15.3.6, VI. D., Smoking in Department of Corrections Buildings and Facilities.

3. Inmates in disciplinary custody status will not have the privileges of radios, televisions, telephone calls, personal property or commissary (except cigarettes toilet articles, legal/correspondence materials, and prescribed medications).

4. Visits are limited to one (1) non-contact visit per month with immediate family only. Legal visits will be permitted. In cases of emergencies, a telephone call may be approved by the Unit Manager or a Commissioned Officer.

5. Disciplinary custody status inmates will be permitted legal materials that may be contained in one (1) records center box. Any additional legal material will be stored and available upon request on an even exchange basis. A personal Bible, a Holy Koran, or equivalent religious publication is permitted.

6. Inmates will be provided access to the institution law library by requesting legal materials in accordance with Departmental policy. Other library books may be requested on a weekly basis.

7. Inmates in disciplinary custody status will be provided with an R.H.U. jumpsuit and footwear. Basic issue toilet articles will be provided on request. Two (2) pair of personal undergarments are permitted. No other personal property is permitted. Outerwear for exercise will be provided as needed.

8. Disciplinary custody status inmates will receive one (1) hour exercise per day, five (5) days per week, and shall be permitted a minimum of three (3) showers and three (3) shaves per week.

9. The Program Review Committee will interview all disciplinary custody cases every thirty (30) days.



| | |
|---|---|
| **To:** Superintendents<br>Boot Camp Commander<br>Executive Staff<br>Regional Directors | **Policy Subject:** DC-ADM 801<br>Inmate Disciplinary and Restricted Housing Procedures |
| | **Policy Number:** DC-ADM 801-2 |
| | **Policy Issue Date:** May 20, 1994 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| 8-16-95 | *Raymond Clymezder* | 8-16-95 |

Section VI.D.5., RHU Procedures for Disciplinary Custody Status Inmates, is amended by this Bulletin to allow inmates to maintain religious, as well as legal materials, in one(1) records center box.



| POLICY STATEMENT |
| Commonwealth of Pennsylvania • Department of Corrections |

| Policy Subject: | Policy Number: |
|---|---|
| INMATE DISCIPLINE | DC-ADM 801 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| March 8, 2000 | *Martin F. Horn* <br> **Martin F. Horn** | April 17, 2000 |

## I.  AUTHORITY

The Authority of the Secretary of Corrections to direct the operations of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.  PURPOSE

The purpose of this policy is to establish procedure for addressing inmate violations of Department of Corrections rules and regulations.

## III.  APPLICABILITY

This policy is applicable to all inmates and staff in all facilities under the jurisdiction of the Department of Corrections.[1]

## IV.  DEFINITIONS

### A.  Administrative Custody (AC)

A status of confinement for non-disciplinary reasons, which provides closer supervision, control, and protection than provided in general population.

### B.  Calendar Days

Any number of consecutive days, including weekends and holidays.

---

[1] 3-4217, 3-ACRS-3C-01

EXHIBIT 12 C

   c. The Chief Hearing Examiner will review and respond to all misconduct appeals to final review within seven (7) working days of receipt of all necessary records for review. The Chief Hearing Examiner will review the misconduct, the hearing report, and all appeals therefrom, and the issue raised to final appeal.

   d. Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the facility is upheld.

   e. In all cases where the action of the Hearing Examiner, PRC or the Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Secretary for review and signature.

## M. Disciplinary Custody Status Inmates

   1. DC status inmates are housed in separate cells from general population and AC status inmates.

   2. Inmates in DC are prohibited from using, purchasing, or possessing any tobacco products while confined in the RHU.

   3. Inmates in DC status will not have the privileges of radios, televisions, telephone calls, personal property or commissary (except toilet articles, legal/correspondence materials and prescribed medications).

   4. Visits are limited to one (1) non-contact visit per month, which may be limited to weekdays only, with immediate family. Legal and religious advisor visits will be permitted, in accordance with Department policy **DC-ADM 812, "Inmate Visiting Privileges."** In case of a verified emergency, the Unit Manager or a Commissioned Officer may approve a telephone call. All approved emergency telephone calls must be logged in the RHU Log Book and in the inmate's **DC-17x, "Adjustment Record for Administrative and Disciplinary Custody Inmates."**

   5. DC status inmates will be permitted to retain religious, as well as legal materials that may be contained in one (1) records center box. Any additional legal or religious materials will be stored and made available upon request on an even exchange basis not more than once every thirty (30) days unless approved by PRC.

   6. Inmates will be provided access to the facility law library by requesting legal materials in accordance with Department policy **DC-ADM 007, "Access to Provided Legal Services."** Other library books may be requested on a weekly basis.

   7. Inmates in DC status will be provided with an orange RHU jumpsuit and slip on canvas footwear. Basic issue toilet articles will be provided on request. Three (3)



| | POLICY STATEMENT |
|---|---|
| | Commonwealth of Pennsylvania • Department of Corrections |

| Policy Subject: | | Policy Number: |
|---|---|---|
| Consolidated Inmate Grievance Review System | | DC-ADM 804 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| July 20, 1994 | Joseph D. Lehman Commissioner | Oct. 20, 1994 |

## I. AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of this Administrative Directive to establish policy regarding the Consolidated Inmate Grievance Review System and to ensure that inmates have an avenue through which resolution of specific problems can be sought.

This directive sets forth procedures for the review of Inmate Grievances not already covered by other Administrative Directives and policies. It also provides the method through which review procedures established by other directives are to be integrated with the procedures outlined in this directive.

## III. APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

## IV. DEFINITIONS

### A. Grievance -

The formal written expression of a complaint submitted by an inmate related to a problem encountered during the course of his/her confinement.

### B. Grievance Coordinator -

The Corrections Superintendent's Assistant in an institution or the Assistant to the Regional Director in Community Corrections who is responsible for the overall administration of the Inmate Grievance System in that facility\region. This includes all data collection, tracking and statistical reporting. At the direction of the Facility Manager or Community Corrections Regional Director, the Grievance Coordinator may be called upon to provide Initial Review of certain grievances.

DC-ADM 804

D. Final Review

1. Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of rece ... the decision, ... any issue related to non-compliance with the ICU Consent D ... ce, ot ... directive, or policy, for final review. Only issues raised at the Init al Review and Appea level may be referred for Final Review.

2. Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

3. Final Review of all appeals will be sent directly to the CORC except the following:

   a. Medical Grievances which will be reviewed by COMRC.

   b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801. These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee (CORC) for further reviews.

The address of the CORC/COMRC is:

> PA DEPARTMENT OF CORRECTIONS
> CENTRAL OFFICE REVIEW COMMITTEE
> PO BOX 598/2520 LISBURN ROAD
> CAMP HILL, PA  17001-0598

4. Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

5. The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

6. The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

7. For all Appeals receiving Final Review, the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal. The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision. The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

8. The Chief Counsel will notify counsel for the ICU class of disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

E. Exceptions

Initial Review and Appeal from Initial Review of issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

1. DC ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.

2. DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I

3. DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI, B, 1, 2. Appeal from Initial Review, see DC-ADM 802, VI, B, 4, a.